**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM SULLIVAN, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>ALL WEB LEADS, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, William Sullivan, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, as and for his Complaint against Defendant, All Web Leads, Inc. ("All Web Leads"), alleges the following based upon personal knowledge as to himself and his own action, and, as to all other matters, respectfully alleges, upon information and belief and investigation of his counsel, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

1. This case involves Defendant All Web Leads' use of deceptive marketing practices in order to gain access to consumers' cellular telephone phone numbers for purposes of placing "tens of thousands" of autodialed phone calls to those consumers for the benefit of Defendant and its insurance industry customers. As described more fully below, Defendant owns and operates various websites that are devoted to offering insurance quotes for specific types of insurance that consumers search for over the Internet. Through one of Defendant's websites, Defendant tricked Plaintiff and the Class (as defined below) into providing their cell phone numbers so that Defendant could make phone calls to Plaintiff and the Class using an automatic telephone dialing

system ("autodialer") without their prior express written consent for the benefit of Defendant and its insurance industry customers in plain violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. Plaintiff now brings this action for damages and other legal and equitable remedies, resulting from the conduct of Defendant in negligently, knowingly, and/or willfully placing phone calls to Plaintiff's and other class members' telephone numbers assigned to a cellular telephone service using an autodialer without their express written consent in violation of the TCPA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs, as each member of the proposed Class of at least thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff and Defendant are citizens of different States.

4. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

5. The Court has personal jurisdiction over All Web Leads because the conduct at issue in this case occurred, among other locations, in Illinois.

6. Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7. Plaintiff, William Sullivan, is a citizen of the State of Illinois residing in the City of Park Ridge, and is a member of the Class defined herein.

8. Defendant, All Web Leads, is a corporation existing under the laws of the State of Delaware with its principal place of business in Austin, Texas.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

11. Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an autodialer includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

14. On February 15, 2012, the FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA. Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed or prerecorded telemarketing calls to wireless numbers. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (2012) ("2012 FCC Ruling") (emphasis added).

15. In the 2012 FCC Ruling, the FCC further clarified that a consumer's written consent to receive telemarketing robocalls "must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future autodialed calls or calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *See also* 47 C.F.R § 64.1200(f)(8). Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1844 (emphasis added).

## FACTUAL ALLEGATIONS

*All Web Leads' "affordable-health-insurance" Website Tricks Users*
*Into Receiving Phone Calls Via the Use of an Autodialer in Violation of the TCPA*

16. Defendant All Web Leads advertises itself as the premier Customer Acquisition Marketing business in the U.S. insurance industry that delivers consumers or "leads" to its insurance industry customers every day. Specifically, Defendant specializes in generating leads

4

by placing calls to consumers looking for insurance and then transferring those calls to customers of All Web Leads, who are typically insurance agents.

17. Defendant's business practices include making "tens of thousands" of autodialed phone calls to leads **every day** in order to verify the accuracy of their contact information, the legitimacy that the consumer requested the quote, and the consumer's intent to speak with an agent about their insurance needs. After Defendant "qualifies" the lead, Defendant completes a live transfer of the consumer's phone call to one of its insurance industry customers.

18. One of the methods in which Defendant generates leads is through the utilization of Internet marketing. Defendant owns and operates various websites that are devoted to offering insurance quotes for specific types of insurance that consumers search for over the Internet. Once the consumer reaches the website owned and operated by Defendant, the consumer is directed to fill out a detailed quote request form that is specific to the type of insurance they are interested in buying. Defendant's "advanced [] technology" then distributes the lead and call to its customers.

19. One of the websites that Defendant owns and operates is www.affordable-health-insurance-plans.org. Defendant deceptively designed the website to appear, similarly to the government-run "Healthcare.gov" marketplace website, as though it will generate health insurance quotes online. As indicated in the screenshot below, the website contains the text "Compare Affordable Health Insurance Plans Right Now! The Fastest Way to Get On & Off Exchange Quotes!":

5



20. After inserting their zip code, the web user is then transferred to another webpage that requires the user to fill out an insurance quote form in order to purportedly generate health insurance quotes. Again, the subsequent webpage contains the misleading tag "The Fastest Way to Get Free Health Insurance Quotes!" along the top of the page. Below is a screenshot of the quote form displayed on the webpage:



21. After the consumer fills out the quote form and then clicks "Submit," the consumer is not presented with any health insurance quotes. Rather, the consumer is immediately contacted at the phone number the consumer provided by a representative from All Web Leads via the use of an autodialer. Once the phone call is connected, an All Web Leads representative asks a few

7

preliminary questions to "qualify" the lead, and then transfers the lead to one of All Web Leads' customers.

22. Defendant's website contains a "Terms of Use" link at the bottom of the homepage. An investigation confirms that the applicable "Terms of Use" contained on the homepage do not mention the use of an autodialer in connection with the website's services. A true and correct copy of Defendant's "Terms of Use" is attached hereto as Exhibit A.

23. A further investigation into Defendant's website reveals that on the webpage displaying the quote form is the following statement hidden at the bottom of the page **beneath** the "Submit" button in tiny white font:

> By clicking "Submit" I provide my signature, expressly authorizing up to eight insurance companies or their agents or partner companies to contact me at the number and address provided with insurance quotes or to obtain additional information for such purpose, via live, prerecorded or autodialed calls, text messages or email. I understand that my signature is not a condition of purchasing any property, goods or services and that I may revoke my consent at any time.

24. As demonstrated on the screen shot image provided in Paragraph 20 of the Complaint, it is not at all clear to the consumer that he or she will be called – let alone called via an autodialer – by Defendant when the consumer merely clicks "Submit."

25. As further shown in Paragraph 20 of the Complaint, the quote form is set up in such a manner that the consumer is tricked into filling out the form and clicking "Submit" without ever receiving notice that the consumer is agreeing to be contacted "by up to eight insurance companies or their agents or partner companies" via prerecorded or autodialed calls. That is because the statement is inconspicuously hidden in tiny white font at the bottom of the webpage beneath the "Submit" button. The only way the consumer could conceivably discover the autodialer authorization is if the consumer scrolls all the way to the bottom of the webpage and closely examines the "fine print" before clicking "Submit".

26. The consumer further has no reason to suspect that he or she is agreeing to be contacted via autodialed calls because the webpage displaying the quote form does not contain any

clear and conspicuous text referencing terms of agreements, nor does it instruct users that they are assenting to agreements by requiring, for example, the consumer to "check a box" or click "I Agree". Instead, the webpage merely has a button that states "Submit."

27. Thus, consumers, including Plaintiff and other Class members, do not receive proper notice of the autodialer authorization.

28. Defendant's purported autodialer authorization thus fails to meet the thresholds of a valid browsewrap agreement and is therefore unenforceable, which means that no consumer who filled out the quote form provided their consent to receive phone calls via an autodialer.

29. For similar reasons, Defendant violates the TCPA's prior express consent requirements because Defendant does not provide consumers "clear and conspicuous disclosure" of the consequences of providing their phone numbers on the aforementioned quote form, *i.e.*, that the consumer will receive future calls via an autodialer, such that Defendant obtains their prior express written consent to receive phone calls via the use of an autodialer.

30. Finally, Defendant's improper attempt to obtain consumers' prior express written consent to receive phone calls via the use of an autodialer is invalid for yet another reason. Notwithstanding the boilerplate language to the contrary, Defendant's website, in fact, requires that users consent to receive phone calls via the use of an autodialer as a condition to using their services in violation of the FCC's 2012 Ruling. *See supra* at ¶ 15.

*Plaintiff's Experience with All Web Leads' "affordable-health-insurance" Website*

31. Due to the recent spike in health insurance premiums, Plaintiff decided to shop around on the Internet for more affordable health insurance for the 2017 calendar year. In his search, Plaintiff came across Defendant's aptly titled website, www.affordable-health-insurance-plans.org. Defendant visited that website on or about January 13, 2017.

9

32. In accordance with the process described above, Plaintiff entered his zip code and then was directed to the webpage displaying the quote form.

33. Plaintiff proceeded to fill out the personal information fields, including his name, address and phone number. Plaintiff entered his cell phone number and then clicked the "Submit" button in anticipation of being directed to health insurance quotes.

34. Shortly after filling out the insurance quote form, Plaintiff received an autodialed phone call from a representative at All Web Leads from telephone number (773) 796-4858. Due to the Chicago area code, Plaintiff answered the call, unsuspecting that it was a representative of All Web Leads calling.

35. Upon answering the call, there was an immediate pause on the other end, followed by a distinct "clicking" noise before the connection with the representative was made.

36. The All Web Leads' representative asked Plaintiff a series of questions, confirmed that Plaintiff was seeking information about health insurance, and then informed Plaintiff that he would be transferred to a health insurance agent.

37. Once Plaintiff was transferred, Plaintiff informed the agent that he was seeking an insurance quote for a health insurance plan that was compliant with the Patient Protection and Affordable Care Act ("Obamacare"), 42 U.S.C. § 18001 *et seq*.

38. Despite Plaintiff's request to receive an insurance quote for a health insurance plan that was "Obamacare-compliant," the health insurance agent attempted to persuade Plaintiff to enroll in a limited benefit non-major medical plan, and suggested that it was a better option than an "Obamacare-compliant" plan. When it became clear that the health insurance agent had no intention of actually offering Plaintiff the opportunity to review and compare "Obamacare-compliant" health insurance quotes, Plaintiff ended the call.

39. All in all, Plaintiff spent close to an hour on the phone and did not receive any meaningful opportunity to review "Obamacare-compliant" health insurance quotes.

40. To compound matters, Plaintiff continued to receive additional phone calls over the next several days as a result of using All Web Leads' deceptive website.

41. In sum, Plaintiff was never aware that he would be receiving autodialed calls to his cell phone as a result of using Defendant's website. The calls were annoying and harassing to Plaintiff, and an invasion of his privacy. The calls violated the TCPA because they were made without Plaintiff's prior express written consent.

### *All Web Leads Harmed Plaintiff in a Manner Identical To the Manner in Which All Web Leads Harmed the Class*

42. Plaintiff is in the same Class as all other consumers who utilized Defendant's "affordable-health-insurance" website during the relevant time period. Plaintiff and the Class clicked "Submit" on Defendant's quote form and then subsequently received autodialed phone calls without proper authorization or disclosure.

### **CLASS ACTION ALLEGATIONS**

43. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

45. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who filled out and submitted an insurance quote form on Defendant's website www.affordable-health-insurance-plans.org and then received a non-emergency telephone call from All Web Leads, or any party acting on its behalf, to a cellular telephone through the use of an automated telephone dialing system or an artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of the Class.

46. Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

47. Plaintiff does not know the exact number of members of the Class, but Plaintiff reasonably believes the Class members number, at minimum, in the thousands.

48. Plaintiff and all members of the Class have been harmed by the acts of Defendant.

49. This Class Action Complaint seeks injunctive relief and money damages.

50. The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

51. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

52. Further, the Class can be identified easily through records maintained by All Web Leads and/or its marketing agents.

53. There are well-defined, nearly identical, questions of law and fact affecting all parties.

54. The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

55. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant used an automatic telephone dialing system in making non-

emergency calls to Class members' cell phones;

b. Whether Defendant gave proper notice to consumers that filled out a quote form that Defendant intended to place calls using an automatic telephone dialing system to the phone numbers provided by Class members;

c. Whether Defendant's website requires that users consent to receive phone calls via the use of an autodialer as a condition to using their services in violation of the 2012 FCC Ruling;

d. Whether Defendant can meet its burden of showing it obtained prior express written consent to make such calls;

e. Whether Defendant's conduct was knowing and/or willful;

f. Whether Defendant is liable for statutory damages; and

g. Whether Defendant should be enjoined from engaging in such conduct in the future.

56. As a person who received a non-emergency telephone call via an automatic telephone dialing system, without providing his prior express consent to Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

57. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

58. Plaintiff has no interests which are antagonistic to any member of the Class.

59. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

60. A class action is the superior method for the fair and efficient adjudication of this controversy.

61. Class wide relief is essential to compel Defendant to comply with the TCPA.

62. The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

63. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

64. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

65. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

**Statutory Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *ET SEQ*.**

66. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

67. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

68. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in

violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

69.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

70.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## Count II

### Knowing and/or Willful Violations
### of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *ET SEQ.*

71.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

72.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

73.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

74.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

75.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C. As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class; and

G. Such other relief as the Court deems just and proper.

Dated: February 21, 2017  Respectfully submitted,

WILLIAM SULLIVAN

/s/ Gary M. Klinger_____
Gary M. Klinger (ARDC # 6303726)
Ryan F. Sullivan (ARDC # 6314103)
**Kozonis & Associates, Ltd.**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com
rsullivan@kozonislaw.com