**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **William Sullivan, individually and on behalf of all others similarly situated** | ) ) ) | **Case No.  1:17-cv-01307** |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE PLAINTIFF'S PROPOSED CLASS** |
| **ALL WEB LEADS, INC.** | ) ) | <u>**AND MEMORANDUM IN SUPPORT**</u> |
| **Defendant.** | ) | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... 2

TABLE OF AUTHORITIES ........................................................................................ 3

I.      INTRODUCTION ............................................................................................ 5

II.     SUMMARY OF THE COMPLAINT ............................................................ 6

III.    ARGUMENT .................................................................................................... 7

   A.    MOTION TO DISMISS .............................................................................. 7

      1.   Legal standard ....................................................................................... 7

      2.   This Court should dismiss Sullivan's complaint because he provided All Web Leads prior express consent to call his cell phone. .................................................. 8

      3.   This Court should dismiss Sullivan's complaint because he does not adequately plead that prior express written consent applies to the calls at issue. ...................... 13

      4.   This Court should dismiss Sullivan's complaint because he provided All Web Leads his prior express written consent to call his cell phone. ................................ 15

   B.    MOTION TO STRIKE PROPOSED CLASS ............................................. 16

      1.   Legal standard ..................................................................................... 16

      2.   This Court should strike the class allegations as Sullivan does not establish typicality under Rule 23(a)(3). ............................................................................ 17

      3.   This Court should strike the class allegations as Sullivan does not establish commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3). .......... 20

IV.    CONCLUSION .............................................................................................. 23

CERTIFICATE OF SERVICE ................................................................................. 24

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591, 624 (1997) ........................................................................... 21

*Ashcroft v. Iqbal*
556 U.S. 662, 678 (2009) ........................................................................ 8, 14

*Balschmiter v. TD Auto Fin. LLC*
303 F.R.D. 508 (E.D. Wis. 2014) ........................................................... 21, 22

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 555 (2007) ........................................................................ 8, 14

*Bohn v. Boiron, Inc.*
No. 11-cv-08704, 2013 U.S. Dist. LEXIS 107928, at *14 (N.D. Ill. Aug. 1, 2013) ............... 17

*Cholly v. Uptain Grp., Inc.*
No. 15-cv-05030, 2017 U.S. Dist. LEXIS 14449 (N.D. Ill. Feb. 1, 2017) ........................ 16, 18

*Conley v. Gibson*
355 U.S. 41, 47 (1957) .................................................................................. 8

*De La Fuente v. Stokely-Van Camp, Inc.*
713 F.2d 225, 232 (7th Cir. 1983) ............................................................... 18

*Gibson v. City of Chi.*
910 F.2d 1510, 1520 (7th Cir. 1990) ............................................................. 7

*Greene v. DirecTV, Inc.*
No. 10-cv-00117, 2010 U.S. Dist. LEXIS 118270, at *9 (N.D. Ill. Nov. 8, 2010) ................ 12

*Harper v. Sheriff of Cook Cty.*
581 F.3d 511, 513 (7th Cir. 2009) ............................................................... 17

*Harriston v. Chicago Tribune Co.*
992 F.2d 697, 703 (7th Cir. 1993) ............................................................... 17

*Hill v. Wells Fargo Bank, N.A.*
946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ................................................. 16, 17

*Jackson v. Safeway, Inc.*
No. 15-cv-04419, 2016 U.S. Dist. LEXIS 140763 (N.D. Cal. Oct. 11, 2016) ..................... 11

*Jamison v. First Credit Servs., Inc.*
290 F.R.D. 92, 107 (N.D. Ill. 2013) .............................................................. 21

*Jamison v. First Credit Servs.*
No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *24-26 (N.D. Ill. July 29, 2013) .......... 23

*Kasalo v. Harris & Harris, LTD.*
656 F.3d 557, 563 (7th Cir. 2011) ............................................................... 16

*Kolinek v. Walgreen Co.*
No. 13-cv-04806, 2014 U.S. Dist. LEXIS 91554, at *12 (N.D. Ill. July 7, 2014) ................ 12

*McCauley v. City of Chi.*
671 F.3d 611, 615-19 (7th Cir. 2011) ............................................................. 8

*Messner v. Northshore Univ. HealthSystem*
669 F.3d 802, 815 (7th Cir. 2012) ........................................................... 20, 21

*Muro v. Target Corp.*
580 F.3d 485, 492 (7th Cir. 2009) ........................................................... 17, 18

*Oshana v. Coca-Cola Co.*
225 F.R.D. 575, 586 (N.D. Ill. 2005) ............................................................ 22

*Oshana v. Coca-Cola Co.*
    472 F.3d 506, 513 (7th Cir. 2006) ............................................................ 17, 18
*Parko v. Shell Oil Co.*
    739 F.3d 1083, 1085 (7th Cir. 2014) ............................................................... 21
*Payton v. Kale Realty, LLC*
    164 F. Supp. 3d 1050, 1063 (N.D. Ill. 2016) .................................................. 14
*Quality Mgmt. & Consulting Servs. v. SAR Orland Food Inc.*
    No. 11-cv-06791, 2013 U.S. Dist. LEXIS 155727 (N.D. Ill. Oct. 30, 2013) ..................... 19, 20
*Szabo v. Bridgeport Machines, Inc.*
    249 F.3d 672, 676 (7th Cir. 2001) .................................................................. 17
*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*
    274 F.R.D. 229, 238 (S.D. Ill. Mar. 11, 2011) .................................................. 23
*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338, 349 (2011) ....................................................................... 17, 20
*Williams v. Chartwell Fin. Servs.*
    *Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000) ........................................................ 17
*Wright v. Family Dollar, Inc.*
    No. 10-cv-04410, 2010 U.S. Dist. LEXIS 126643, at *2 (N.D. Ill. Nov. 30, 2010) ................. 16

**Statutes**
47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................ 8, 19
Patient Protection and Affordable Care Act ("Obamacare")
    42 U.S.C. § 18001 *et seq.* ....................................................................... 10

**Other Authorities**
15 U.S.C. § 7006(4)
    73 Fed. Reg. 51164, 51181, n. 218 (Aug. 29, 2008) ............................................... 15
*In re Rules & Regulations Implementing the TCPA of 1991*
    30 FCC Rcd 7961, 8029 (July 10, 2015) ........................................................... 10
*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*
    27 FCC Rcd 1830, 1841 (Feb. 15, 2012) ......................................................... 8, 14
*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*
    7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) ...................................................... 11, 12, 13

**Rules**
Fed. R. Civ. P. 12 ............................................................................... passim
Fed. R. Civ. P. 23 ............................................................................... passim
Fed. R. Civ. P. 8 ........................................................................... 5, 7, 13, 23

**Regulations**
47 C.F.R. § 64.1200 ............................................................................. passim
HIPAA [Health Insurance Portability and Accountability Act] Privacy Rule
    45 CFR 160.103 .............................................................................. 9, 10, 11

## I. INTRODUCTION

In ruling on this motion, this Court need address only the following two issues:

(1)     The Telephone Consumer Protection Act permits health care calls made to cell phone numbers using an automatic telephone dialing system ("ATDS") with the prior express consent of the recipient. Sullivan admits that he provided consent to receive such calls from All Web Leads. Should the Court dismiss his TCPA claim?

(2)     To obtain class certification, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). Sullivan alleges All Web Leads used deceptive marketing practices to "trick" him and the putative class members into providing their prior express consent. As his allegations require individualized inquiries, can Sullivan represent the proposed class?

On the first issue, this Court should dismiss Sullivan's claim because he admits he provided prior express consent to receive ATDS health care calls from All Web Leads. Dkt. No. 1, ¶ 33. The TCPA explicitly allows health care calls made to cell phone numbers using an ATDS with the prior express consent of the recipient. *See* 47 C.F.R. § 64.1200(a)(2).

Even if the TCPA required All Web Leads to obtain prior express written consent to make these calls—which the statute does not—Sullivan fails to satisfy the minimum pleading standard of Rule 8(a)(2). Nevertheless, All Web Leads' consent language satisfies the TCPA requirement for prior express written consent.

As Sullivan has no TCPA claim against All Web Leads, this Court should dismiss this case under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In the alternative, this Court should strike Sullivan's class allegations as it is evident from the pleadings he cannot satisfy the Rule 23 requirements and certify a class.

Sullivan does not establish typicality under Rule 23(a)(3) as his claims do not share the same essential characteristics as the claims of the class at large. He bases his complaint on the alleged receipt of health care calls from All Web Leads on his cell phone using an ATDS without

his prior express written consent.  Dkt. No. 1, ¶¶ 34-35, 41.  But his proposed class definition attempts to represent a class of all persons who received a non-emergency call from All Web Leads on their cell phones using an ATDS or artificial or prerecorded voice.  *Id*. at ¶ 45.

Nor can Sullivan establish commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3).  He does not establish that common questions of law or fact predominate over any questions affecting only individual members of the class.  *See* Fed. R. Civ. P. 23(a)(2).  Predominance requires a heightened inquiry that Sullivan cannot satisfy.  Common issues do not represent a significant aspect of Sullivan's complaint and cannot be resolved for all class members in a single adjudication.

Sullivan cannot satisfy the Rule 23 requirements because he alleges that All Web Leads "tricked"[1] him and the putative class members into providing their cell phone numbers.  Dkt. No. 1, ¶¶ 1, 25.  This allegation of fraud is an inherently individualized question that would result in a series of mini-trials.  Because Sullivan's proposed class cannot meet the requirements of Rule 23, his proposed class should be stricken.

## II.    SUMMARY OF THE COMPLAINT

In January 2017, mere weeks before filing this suit, Sullivan decided to shop around the Internet for more affordable health insurance.  Dkt. No. 1, ¶ 31.  He visited a site owned by All Web Leads, www.affordable-health-insurance-plans.org, on January 13, 2017.  *Id*. at ¶ 32.  Sullivan entered his name, cell phone number, and residential address in an online form and clicked "Submit" to receive health insurance quotes.  *Id*. at ¶ 33.  The website displayed the following consent language immediately below the "Submit" button:

> By clicking "Submit" I provide my signature, expressly authorizing up to eight <u>insurance companies or partner companies</u> to contact me at the number and address provided with

---

[1]  "Trick" means "a crafty procedure or practice meant to deceive or defraud."  "Trick." Merriam-Webster.com.  Accessed March 21, 2017. https://www.merriam-webster.com/dictionary/trick.

insurance quotes or to obtain additional information for such purpose, via live, prerecorded or autodialed calls, text messages or email. I understand that my signature is not a condition of purchasing any property, goods, or services and that I may revoke my consent at any time.

*Id*. at ¶ 24.

Shortly thereafter, Sullivan received an "autodialed" call on his cell phone, at the number he provided, from a representative at All Web Leads. *Id*. at ¶ 34. A representative confirmed that Sullivan sought information about health insurance and transferred him to a health insurance agent. *Id*. at ¶ 36. Once transferred, Sullivan discussed health insurance plans with the agent for about an hour. *Id*. at ¶¶ 38-39.

Now Sullivan asserts that he "was never aware the he would be receiving autodialed calls to his cell phone as a result of using [All Web Leads'] website." *Id*. at ¶ 41. He alleges All Web Leads violated the TCPA by "tricking" him and the putative class into providing their cell phone numbers to make calls using an ATDS without their prior express written consent. *Id*. at ¶ 1.

## III.    ARGUMENT

### A.    MOTION TO DISMISS

#### 1.    Legal standard

A motion to dismiss under Rule 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521.

Rule 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," so the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Notice pleading requires that a complaint contain more than bare legal conclusions. *Id*. at 570.

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *McCauley v. City of Chi.*, 671 F.3d 611, 615-19 (7th Cir. 2011).

> **2.      This Court should dismiss Sullivan's complaint because he provided All Web Leads prior express consent to call his cell phone.**
>
> > **a.      The TCPA requires prior express consent to make the calls at issue.**

Sullivan provided his prior express written consent to receive calls on his cell phone from All Web Leads. Dkt. No. 1, ¶¶ 32-33. This undisputed fact is a sufficient basis for the Court to grant All Web Leads' motion to dismiss for failure to state a claim upon which relief can be granted.

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone …." 47 U.S.C. § 227(b)(1)(A)(iii) (the "TCPA cell phone call ban").

In 2012, the Federal Communications Commission revised the TCPA with respect to certain advertisement or telemarketing calls made to cell phones. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830, 1841 (Feb. 15, 2012); 47 C.F.R. § 64.1200(a)(2).

Effective October 16, 2013, the FCC introduced a heightened prior express written consent requirement for some, but not all, calls using an ATDS made to a cell phone that include or introduce an advertisement or constitute telemarketing. *See* 47 C.F.R. § 64.1200(a)(2). But the prior express written consent requirement does not apply to the alleged calls to Sullivan. Even if it did, Sullivan's factual pleadings confirm that All Web Leads' consent language complies with the heightened requirement. *See infra*, Part III. A.4.

The TCPA cell phone call ban contains an exception for "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA [Health Insurance Portability and Accountability Act] Privacy Rule, 45 CFR 160.103." 47 C.F.R. § 64.1200(a)(2). A call that delivers a "'health care' message" is exempt from the TCPA cell phone call ban if placed with the recipient's prior express consent (compared to prior express written consent required for non-health care marketing messages):

> (a) No person or entity may:
>
> * * *
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party <u>or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate,"</u> as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

47 C.F.R. § 64.1200(a)(2) (emphasis added).

Thus, the TCPA cell phone call ban allows calls that deliver health care messages if the caller obtains "prior express consent," defined as the "provision of a phone number to a healthcare provider … for healthcare calls subject to HIPAA by a HIPAA-covered entity and

business associates acting on its behalf." *In re Rules & Regulations Implementing the TCPA of 1991*, 30 FCC Rcd 7961, 8029 (July 10, 2015).

> **b.** **The calls at issue deliver health care messages that are not subject to the prior express written consent requirement.**

The TCPA cell phone call ban uses HIPAA rules to define a "health care message" for purposes of the exception. 47 C.F.R. § 64.1200(a)(2) ("as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103"). HIPAA broadly defines "health care" to include "care, services, or supplies related to the health of an individual." 45 C.F.R. § 160.103. As Sullivan alleges, the calls concern just that—care and services related to his health:

> The All Web Leads' representative asked Plaintiff a series of questions, confirmed that Plaintiff was seeking information about health insurance, and then informed Plaintiff that he would be transferred to a health insurance agent.
>
> Once Plaintiff was transferred, Plaintiff informed the agent that he was seeking an insurance quote for a health insurance plan that was compliant with the Patient Protection and Affordable Care Act ("Obamacare"), 42 U.S.C. § 18001 *et seq*.
>
> Despite Plaintiff's request to receive an insurance quote for a health insurance plan that was "Obamacare-compliant," the health insurance agent attempted to persuade Plaintiff to enroll in a limited benefit non-major medical plan, and suggested that it was a better option than an "Obamacare-compliant" plan ….

Dkt. No. 1, ¶¶ 36-38.

Sullivan actively sought out information on "more affordable health insurance" for himself. *Id*. at ¶ 31. He provided his cell phone number and requested more information on health insurance from a website owned by All Web Leads. *Id*. at ¶ 32-33.

These calls are squarely within the broad definition of "health care" as defined in the Health Insurance Portability and Accountability Act Privacy Rule. *See* 45 C.F.R. § 160.103.

Further, the calls received by Sullivan were made by a "covered entity" with the assistance of a "business associate" as required by the TCPA regulations and defined in HIPAA.

A "covered entity" includes a "health plan."  45 C.F.R. § 160.103.  A "health plan" means an individual or group plan that provides, or pays the cost of, medical care and includes a "health insurance issuer." *Id*.  "Health insurance issuer" means an insurance company, insurance service, or insurance organization (including an HMO) that is licensed to engage in the business of insurance in a State and is subject to State law that regulates insurance. *Id*.

A "business associate" is a person or entity that performs certain functions or activities that involve the use or disclosure of protected healthcare information on behalf of, or provides services to, a covered entity.  *Id*.

Sullivan alleges the calls were made by All Web Leads (the business associate) on behalf of health insurance companies (the covered entities) to sell health insurance plans (the health care messages).  Dkt. No. 1, ¶¶ 19-21, 31, 33, 36-39, 42, 45; *see also Jackson v. Safeway, Inc.*, No. 15-cv-04419, 2016 U.S. Dist. LEXIS 140763 (N.D. Cal. Oct. 11, 2016).

Sullivan's factual allegations support that the calls at issue deliver a health care message as defined in 47 C.F.R. § 64.1200(a)(2) and are therefore allowed with prior express consent.

> **c.  Sullivan provided his prior express consent to receive calls on his cell phone from All Web Leads.**

It is undisputed that Sullivan visited a website owned by All Web Leads, www.affordable-health-insurance-plans.org, and provided his cell phone number to receive calls related to health insurance quotes.  Dkt. No. 1, ¶¶ 32-33.  He pleads himself out of court by alleging facts in his complaint that show, as a matter of law, that he gave All Web Leads prior express consent to be contacted on his cell phone. *Id*.

The FCC determined that prior express consent includes situations where individuals voluntarily divulge their telephone numbers. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992)

(hereinafter "1992 Report and Order"). The FCC explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id*.

Federal courts have deferred to the FCC's interpretation that when a consumer provides a company with his phone number, he consents to receiving calls at that number. *See e.g. Greene v. DirecTV, Inc.*, No. 10-cv-00117, 2010 U.S. Dist. LEXIS 118270, at *9 (N.D. Ill. Nov. 8, 2010) (plaintiff expressly consented to receive calls on her cell telephone by providing her cell phone number to the credit reporting agency*)*.

Sullivan provided his prior express consent to receive calls on his cell phone from All Web Leads. Dkt. No. 1, ¶¶ 32-33. As Sullivan has no TCPA claim against All Web Leads, this Court should dismiss this case under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

> **d.  The calls Sullivan allegedly received from All Web Leads are within the scope of prior express consent that he provided.**

All Web Leads' calls were also within the scope of the consent given by Sullivan.

In *Kolinek v. Walgreen Co.*, No. 13-cv-04806, 2014 U.S. Dist. LEXIS 91554, at *12 (N.D. Ill. July 7, 2014), the court held that Walgreens could not dismiss the case under Rule 12(b)(6) based on its prior express consent defense. While Kolinek's complaint alleged that he provided his cell phone number in response to a request for potential identification purposes, he received calls reminding him to refill his prescription. *Id*.

The court noted that "to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Id*. at *11.

Sullivan provided his cell phone number to receive information about health insurance quotes. Dkt. No. 1, ¶¶ 31-33. He alleges that All Web Leads contacted him and the representative "confirmed that [he] was seeking information about health insurance, and then informed [him] that we would be transferred to a health insurance agent." *Id*. at ¶ 36.

Based on this allegation, Sullivan "knowingly released his phone number," and thus, invited All Web Leads to contact him at that number regarding health insurance quotes. *See 1992 Report and Order*, 7 FCC Rcd. at 8769. Therefore, the alleged calls are within the scope of Sullivan's consent based on the context and purpose for which he gave his cell phone number.

### 3. This Court should dismiss Sullivan's complaint because he does not adequately plead that prior express written consent applies to the calls at issue.

Sullivan admits that he provided his prior express consent, but argues that All Web Leads violated the TCPA because it did not obtain his prior express written consent. Dkt. No. 1, ¶¶ 1, 2, 29, 41, 55. Even if the calls allegedly made by All Web Leads are not health care messages, Sullivan fails to allege they were advertisement or telemarketing calls as defined in the TCPA. His failure to allege as much is fatal to his claim.

The TCPA requires prior express written consent only for advertisement or telemarketing calls. 47 C.F.R. § 64.1200(a)(2). The statute defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id*. at (f)(1). "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. at (f)(12).

For a claim to have facial plausibility under Rule 8(a)(2), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

13

misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The plausibility standard requires more than a sheer possibility. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). "A formulaic recitation of the elements of the cause of action will not do."

Sullivan must allege the following four elements to state a cause of action against All Web Leads: (1) an advertisement or telemarketing call was made, (2) the caller used an ATDS or artificial or prerecorded voice, (3) the call was made to his cell phone number, and (4) he did not give the caller prior express written consent to receive the call. 47 C.F.R. § 64.1200(a)(2).

Sullivan alleges that All Web Leads violated the TCPA because it did not obtain his prior express written consent, but does not plead any factual content that allows the court to draw a reasonable inference that All Web Leads made advertisement or telemarketing calls. *See* Dkt. No. 1. To the contrary, his factual allegations support that the calls allegedly made by All Web Leads were health care calls, which are exempt from the prior express written consent requirement. Dkt. No. 1, ¶¶ 19-21, 31, 33, 36-39, 42, 45.

Because the TCPA requires prior express written consent only for advertisement or telemarketing calls, his failure to allege as much is fatal to his claim. 47 C.F.R. § 64.1200(a)(2); 27 FCC Rcd at 1841 ("Moreover, while we revise our consent rules to require prior written consent for autodialed or prerecorded *telemarketing* calls, we maintain the existing consent rules for *non-telemarketing, informational* calls …. Our rules for these calls will continue to permit oral consent if made to wireless consumers …."); *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1063 (N.D. Ill. 2016) (finding that non-telemarketing calls do not require the heightened prior express written consent requirement).

14

       **4.**      **This Court should dismiss Sullivan's complaint because he provided All Web Leads his prior express written consent to call his cell phone.**

Even if the TCPA required All Web Leads to obtain prior express written consent for these calls—which it does not—Sullivan's factual pleadings confirm that All Web Leads' consent language complies with the statute. Prior express written consent consists of the following elements:

- Signature of the person called (can be in electronic or digital form)[2];
- Telephone number to which the signature authorizes the calls;
- Clear and conspicuous disclosure informing the person that the agreement authorizes the seller to call;
- Using an ATDS or an artificial or prerecorded voice; and
- Statement that the person not required to sign the agreement as a condition of purchasing property, goods, or services.

*See* 47 C.F.R. § 64.1200(f)(8).

Sullivan's complaint contains a screenshot of the website where it displays the following consent language immediately below the "Submit" button:

> By clicking "Submit" I provide my signature, expressly authorizing up to eight insurance companies or partner companies to contact me at the number and address provided with insurance quotes or to obtain additional information for such purpose, via live, prerecorded or autodialed calls, text messages or email. I understand that my signature is not a condition of purchasing any property, goods, or services and that I may revoke my consent at any time.

Dkt. No. 1, ¶ 24.

All Web Leads' consent language contains every element to obtain prior express written consent as required by 47 C.F.R. § 64.1200(f)(8): (1) a signature that (2) authorizes the calls (3) to Sullivan's telephone number (4) with a disclosure that is clear and conspicuous and (5)

---

[2] "The E-SIGN Act defines an 'electronic signature' as 'an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record.' 15 U.S.C. § 7006(5). The Act further defines an 'electronic record' as 'a contract or other record created, generated, sent, communicated, received, or stored by electronic means.' 15 U.S.C. § 7006(4)." 73 Fed. Reg. 51164, 51181, n. 218 (Aug. 29, 2008).

references the use of an ATDS or prerecorded voice and (5) includes a statement that the signature is not required as condition or purchase. *Id.*

Thus, Sullivan's factual allegations demonstrate that All Web Leads satisfy not only the TCPA's prior express consent requirement, but also the prior express written consent requirement. As Sullivan has no TCPA claim against All Web Leads, this Court should dismiss this case under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### B.    MOTION TO STRIKE PROPOSED CLASS

#### 1.    Legal standard

At an early practicable time, the court must determine by order whether to certify an action as a class action. *Wright v. Family Dollar, Inc.*, No. 10-cv-04410, 2010 U.S. Dist. LEXIS 126643, at *2 (N.D. Ill. Nov. 30, 2010) (citing Fed. R. Civ. P. 23(c)(1)(A)). The court may issue orders that require a plaintiff to amend pleadings to eliminate allegations about representation of absent persons and proceed accordingly. *See* Fed. R. Civ. P. 23(d)(1)(D). District courts have held that a motion to strike class allegations is appropriate to determine whether the case will proceed as a class action. *See e.g. Cholly v. Uptain Grp., Inc.*, No. 15-cv-05030, 2017 U.S. Dist. LEXIS 14449 (N.D. Ill. Feb. 1, 2017). Rejecting class certification at the pleading stage is proper when the court can determine from the pleadings that a class is not certifiable. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013).

Consistent with these authorities, the Seventh Circuit has held that "a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, LTD.*, 656 F.3d 557, 563 (7th Cir. 2011). Class allegations should be stricken when the pleadings show that the suit cannot satisfy the Rule 23 requirements. *Hill*, 946 F.

Supp. 2d at 830; *Bohn v. Boiron, Inc.*, No. 11-cv-08704, 2013 U.S. Dist. LEXIS 107928, at *14 (N.D. Ill. Aug. 1, 2013).

To obtain class certification under Rule 23, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). Fed. R. Civ. P. 23(a), (b); *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The plaintiff has the burden of proving that the proposed class meets the four requirements. *Id*. A failure to satisfy any of the four requirements precludes class certification. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Even if plaintiff passes the initial Rule 23(a) threshold, the plaintiff still must satisfy one of the conditions of Rule 23(b) in order to obtain class certification. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

As Sullivan's proposed class cannot meet the requirements of Rule 23, his proposed class should be stricken.

### 2. This Court should strike the class allegations as Sullivan does not establish typicality under Rule 23(a)(3).

Rule 23(a)(3) requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000)).

A claim is typical if it arises from the same event, practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Oshana*, 472

F.3d 506 at 514. The named plaintiff's claims must share "the same essential characteristics as the claims of the class at large." *Muro,* 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).

In *Cholly v. Uptain Grp., Inc.*, No. 15-cv-05030, 2017 U.S. Dist. LEXIS 14449 (N.D. Ill. Feb. 1, 2017), Cholly alleged Uptain Group violated the TCPA by using an ATDS to make debt collection calls to her cell phone without prior express consent. *Id.* at *2. In its responsive pleading, Uptain Group filed a motion to strike the proposed classes. *Id.* The court ruled that Cholly did not satisfy the typicality requirement under Rule 23(a)(3) because her claims were not typical of the proposed class:

> [Cholly's] complaint asserts claims based only on telephone calls made to her cellular phone after she had expressly revoked her consent. Because she had apparently originally given consent, she cannot represent a class of persons who received calls from Uptain where Uptain did not have express consent.

*Id.* at *9.

Sullivan similarly does not satisfy the typicality requirement under Rule 23(a)(3) because his claims are not typical of the proposed class:

> All persons within the United States who filled out and submitted an insurance quote form on Defendant's website www.affordable-health-insurance-plans.org and then received a non-emergency telephone call from All Web Leads, or any party acting on its behalf, to a cellular telephone through the use of an automated telephone dialing system or an artificial or prerecorded voice.

Dkt. No. 1, ¶ 45.

Sullivan's complaint asserts claims based only on his alleged receipt of health care calls on his cell phone made by All Web Leads using an ATDS without his prior express written consent. *Id.* at ¶¶ 34-35, 41. But his proposed class definition attempts to represent a class of all persons who received a non-emergency call from All Web Leads on their cell phones using an ATDS or artificial or prerecorded voice. *Id.* at ¶ 45.

18

This proposed class definition is overbroad as Sullivan does not specify if All Web Leads also called these individuals without some form of consent (prior express consent or written consent), or if their consent was previously revoked—he merely lumps all persons who visited the website into his proposed class. He also includes all class members who received an artificial or prerecorded voice call from All Web Leads despite his failure to allege that he received a prerecorded voice call. *See* Dkt No. 1.

Based on Sullivan's complaint, his proposed class definition also includes (1) persons who provided prior express written consent; (2) persons who never provided any consent; (3) persons who revoked their consent; and (4) persons who received a call made with an artificial or prerecorded voice.

Yet Sullivan denies providing express written consent and admits to providing prior express consent. Dkt. No. 1, ¶¶ 33, 41. He does not allege that he revoked his prior consent nor does that he received calls that were made with an artificial or prerecorded voice. *See* Dkt. No. 1.

Although it could be argued that Sullivan's claims alone are sufficient at the pleading stage, this argument fails because a plaintiff is not a proper class representative under the Rule 23(a)(3) typicality or Rule 23(a)(4) adequacy requirements if the defendant has a defense not applicable to other members of the class. *Quality Mgmt. & Consulting Servs. v. SAR Orland Food Inc.*, No. 11-cv-06791, 2013 U.S. Dist. LEXIS 155727 (N.D. Ill. Oct. 30, 2013).

At a minimum, All Web Leads obtained prior express consent—Sullivan admits as much. Dkt. No. 1, ¶ 33. Prior express consent is an affirmative defense to Sullivan's claim of unlawful ATDS calls made to his cell phone. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Although not required

for these calls, All Web Leads' consent language also contains the elements of prior express written consent.

Because these defenses are atypical to Sullivan, or even a small subset of the proposed class, they destroy the required typicality of the class and bring into question the adequacy of Sullivan as the class representative. *Quality Mgmt.*, 2013 U.S. Dist. LEXIS at *15. Regardless of whether the analysis is performed under the typicality requirement or the adequacy requirement, Sullivan's proposed class should be stricken because of those defenses.

Still, the Court might conclude that at the pleading stage, Sullivan has established typicality and the motion to strike class allegations should be denied. But this conclusion is unwarranted for two reasons. As required by Rule 23 for class certification, Sullivan has not established (1) commonality under Rule 23(a)(2) and (2) predominance under Rule 23(b)(3)—a much more demanding requirement.

> **3.  This Court should strike the class allegations as Sullivan does not establish commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3).**

Commonality requires a plaintiff to show common questions of law or fact predominate over any questions affecting only individual members of the class. Fed. R. Civ. P. 23(a)(2). To establish commonality, a plaintiff must also show that a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted).

If to make a prima facie showing on a question, the members of a proposed class will need to present evidence that varies from member to member, it is an individual question." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). But if the same

evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *Id.*

While similar to commonality, predominance requires a much more demanding inquiry. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624 (1997); *Messner,* 669 F.3d at 814. The court must decide whether there are more common issues or more individual issues, regardless of relative importance. *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014). Predominance requires a determination that common issues represent a significant aspect of the case and can be resolved for all class members in a single adjudication. *Messner,* 669 F.3d at 815.

The Seventh Circuit has held that where the defendant "sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone," courts have found that issues of individualized consent predominate any common questions of law or fact. *Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 107 (N.D. Ill. 2013).

In *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014), a non-customer of TDAF alleged that she received ATDS debt collection calls to her cell phone without her prior express consent in violation of the TCPA. *Id.* at 510. She sought to represent a class of others who received ATDS calls to their cell phones but did not have a relationship with TDAF. *Id.* The court found the class could not satisfy Rule 23(b)(3)'s predominance requirement because:

> Whether consent could be given, was given, or was given only in a limited fashion will—as the FCC's letter brief explained—"depend on the facts of each situation." Consequently, these individualized inquiries could involve a review of TDAF's CASS system for evidence of consent, testimony by the class member regarding the scope and nature of his or her communications with TDAF— including whether purported consent was circumscribed by the circumstances of the call or by the class member expressly limiting the scope, and the production of other evidence related to each class members wireless number as could be necessary.

*Id.* at 527-28 (internal citations omitted).

The court noted that this would result in a series of mini-trials and it could not ignore (1) that the named plaintiff's contact with TDAF involves issues of consent; (2) TDAF had a policy of asking for permission to contact individuals before placing their number in an autodialer field; (3) that plaintiff has argued that her claim is typical of the class; and (4) that TDAF may have obtained the numbers at issue under differing circumstances. *Id.* at 528.

Sullivan admits that he provided his prior express consent to receive calls from All Web Leads, but alleges that All Web Leads "tricked" him and the putative class members into providing their cell phone numbers. Dkt. No. 1, ¶¶ 1, 25. Even if Sullivan could prove he was "tricked," this allegation of fraud would result in a series of mini-trials to establish whether other putative class members were also "tricked" into receiving health care calls after expressly requesting them.

In *Oshana*, the plaintiff filed a class action lawsuit against Coca-Cola and alleged that "class members were 'tricked' by Coca-Cola's marketing scheme into purchasing fountain diet Coke that they would not have otherwise purchased." *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005). The court denied Oshana's motion for class certification as she failed to satisfy Rule 23(b)(3) because "[i]ndividualized issues of detriment and whether each member was tricked would predominate over any common issues of law or fact." *Id.*

Like *Balschmiter* and *Oshana*, individualized inquiries would be required to determine (1) whether each putative class member was "tricked"; (2) if each putative class member provided consent (Sullivan admits he provided prior express consent); and (3) to what extent each putative class member gave consent (Sullivan conflates prior express consent and prior express written consent).

Other district courts in the Seventh Circuit have ruled similarly in TCPA cases. *See Jamison v. First Credit Servs.*, No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *24-26 (N.D. Ill. July 29, 2013) ("Jamison has failed to meet his burden under Rule 23(b)(3) because individual issues predominate over common ones."); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. Mar. 11, 2011) (finding individual consent issue would predominate "burden[ing] the Court and the litigants with the arduous task of sifting through each putative class member's claim to determine its merits on a case-by-case basis").

Because Sullivan's proposed class cannot meet the requirements of commonality and predominance, his proposed class should be stricken.

## IV.    CONCLUSION

The outcome of the 12(b)(6) motion to dismiss rests on the fact that Sullivan admits he provided prior express consent to receive ATDS health care calls from All Web Leads. Dkt. No. 1, ¶ 33. As the TCPA explicitly allows these type of calls, Sullivan has no claim against All Web Leads. *See* 47 C.F.R. § 64.1200(a)(2).

Even if the TCPA required All Web Leads to obtain prior express written consent to make these calls—which the statute does not—Sullivan fails to satisfy the minimum pleading standard of Rule 8(a)(2). Nevertheless, All Web Leads' consent language satisfies the TCPA requirement for prior express written consent.

In the alternative, this Court should strike Sullivan's class allegations as it is evident from the pleadings he cannot satisfy the Rule 23 requirements and certify a class. Sullivan does not establish typicality under Rule 23(a)(3) as his claims do not share the same essential characteristics as the claims of the class at large.

Nor can Sullivan establish commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3). Common questions of law or fact do not predominate over any questions affecting only individual members of the class. His allegation of fraud that All Web Leads "tricked" him and other putative class members into providing consent is an inherently individualized question that would result in a series of mini-trials. It is evident from the pleadings that the Court should strike the class allegations.

Dated: March 22, 2017          Respectfully submitted,

   */s/ Jeffrey S. Bunn*              

LATIMER LeVAY FYOCK, LLP
Jeffrey S. Bunn, IL #3126903
55 W. Monroe St., 11th Floor
Chicago, Illinois 60603
Telephone: (312) 422-8000
Facsimile: (312) 422-8001
Email: jbunn@llflegal.com

-and-

COPILEVITZ & CANTER, LLC
William E. Raney, MO #46954 (*Pro hac vice to be submitted*)
Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice to be submitted*)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: braney@cckc-law.com
            kmitchell@cckc-law.com

*Attorneys for Defendant All Web Leads, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a copy of the foregoing on the following parties via the

Court's CM/ECF electronic filing system on this 22nd day of March, 2017:


Gary M. Klinger
Ryan F. Sullivan
KOZONIS & ASSOCIATES, LTD.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Telephone: (773) 545-9607
Facsimile: (773) 496-8617
Email: <u>gklinger@kozonislaw.com</u>
         <u>rsullivan@kozonislaw.com</u>

                                         _/s/ *Jeffrey S. Bunn*_____
                                         Jeffrey S. Bunn