IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR., *individually and on behalf of all others similarly situated*,<br><br>          Plaintiffs,<br>  v.<br><br>ALL WEB LEADS, INC., a Delaware corporation,<br><br>          Defendant. | Case No. 1: 17-cv-01307<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED CLASS ACTION COMPLAINT**

    Plaintiffs, John Karpilovsky and Jimmie Criollo, Jr., individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their First Amended Class Action Complaint against Defendant, All Web Leads, Inc. ("All Web Leads"), allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief and investigation of their counsel, as follows:

**NATURE OF THE ACTION**

    1.    This case involves Defendant All Web Leads' use of dishonest marketing practices in order to gain access to consumers' cellular phone numbers for purposes of placing "tens of thousands" of autodialed telemarketing calls to those consumers for the benefit of Defendant and its insurance industry customers. As described more fully below, Defendant owns and operates various websites that are devoted to offering insurance quotes for specific types of insurance that consumers search for over the Internet. Through one of Defendant's websites, Defendant unlawfully obtained the cell phone numbers of Plaintiffs and the Class (as defined below) for purposes of making autodialed telemarketing calls to Plaintiffs and the Class without their prior

1

express written consent for the benefit of Defendant and its insurance industry customers in plain violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. Plaintiffs now bring this action for damages and other legal and equitable remedies, resulting from the conduct of Defendant in negligently, knowingly, and/or willfully placing telemarketing calls to Plaintiffs' and other class members' phone numbers assigned to a cellular telephone service using an autodialer without their express written consent in violation of the TCPA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs, as each member of the proposed Class of at least thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiffs and Defendant are citizens of different States.

4. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

5. The Court has personal jurisdiction over All Web Leads because the conduct at issue in this case occurred, among other locations, in Illinois.

6. Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7. Plaintiff John Karpilovsky is a citizen of the State of Illinois residing in the City of Wheeling, and is a member of the Class defined herein.

8. Plaintiff Jimmie Criollo, Jr. is a citizen of the State of Texas residing in the City of San Antonio, and is a member of the Class defined herein.

9. Defendant All Web Leads is a corporation existing under the laws of the State of Delaware with its principal place of business in Austin, Texas.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

10. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

12. Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an autodialer includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the*

3

*Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

15. On February 15, 2012, the FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA. Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed or prerecorded telemarketing calls to wireless numbers. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (2012) ("2012 FCC Ruling") (emphasis added).

16. In the 2012 FCC Ruling, the FCC further clarified that a consumer's written consent to receive telemarketing robocalls "must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future autodialed calls or calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *See also* 47 C.F.R § 64.1200(f)(8). Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1844 (emphasis added).

**FACTUAL ALLEGATIONS**

*All Web Leads' "affordable-health-insurance" Website Does Not Obtain Prior Express Written Consent Before Making Telemarketing Calls to Users' Cellphones*

17. Defendant All Web Leads advertises itself as the premier Customer Acquisition Marketing business in the U.S. insurance industry that delivers consumers or "leads" to its

4

insurance industry customers every day. Specifically, Defendant specializes in generating leads by placing telemarketing calls to consumers who might be interested in purchasing insurance, and then transferring those calls to customers of All Web Leads, who are typically insurance agents.

18. Defendant's business practices include making "tens of thousands" of autodialed telemarketing calls to leads **every day** in order to inquire whether the consumer is interested in purchasing insurance, check the accuracy of their contact information, and determine whether the consumer is interested in speaking with an agent about their insurance needs. After Defendant "qualifies" the lead, Defendant completes a live transfer of the consumer's phone call to one of its insurance industry customers.

19. One of the methods in which Defendant generates leads is through the utilization of Internet marketing. Defendant owns and operates various websites that are devoted to offering insurance quotes for specific types of insurance that consumers search for over the Internet. When a consumer visits the website owned and operated by Defendant, the consumer is prompted to fill out a detailed quote request form that is specific to the type of insurance they are interested in buying. Defendant's "advanced [] technology" then distributes the lead and call to its customers.

20. One of the websites that Defendant owns and operates is www.affordable-health-insurance-plans.org. Defendant deceptively designed the website to appear, similarly to the government-run "Healthcare.gov" marketplace website, as though it will generate health insurance quotes online. As indicated in the screenshot below, the website contains the text "Compare Affordable Health Insurance Plans Right Now! The Fastest Way to Get On & Off Exchange Quotes!":



21.     After entering their zip code, the web user is then transferred to another webpage that requires the user to fill out an insurance quote form in order to purportedly generate health insurance quotes. Again, the subsequent webpage contains the misleading tag "The Fastest Way to Get Free Health Insurance Quotes!" along the top of the page.  Below is a screenshot of the quote form displayed on the webpage:



22.     After the consumer fills out the quote form and then clicks "Submit," the consumer is not presented with any health insurance quotes. Rather, the consumer is immediately contacted at the phone number the consumer provided by a representative from All Web Leads via the use of an autodialer. Once the phone call is connected, an All Web Leads representative asks a few

7

preliminary questions to "qualify" the lead, and then transfers the lead to one of All Web Leads' customers.

23. Defendant's website contains a "Terms of Use" link at the bottom of the homepage. An investigation confirms that the applicable "Terms of Use" contained on the homepage do not mention the use of an autodialer in connection with the website's services.

24. A further investigation into Defendant's website reveals that on the webpage displaying the quote form is the following statement hidden at the bottom of the page **beneath** the "Submit" button in tiny white font:

> By clicking "Submit" I provide my signature, expressly authorizing up to eight insurance companies or their agents or partner companies to contact me at the number and address provided with insurance quotes or to obtain additional information for such purpose, via live, prerecorded or autodialed calls, text messages or email. I understand that my signature is not a condition of purchasing any property, goods or services and that I may revoke my consent at any time.

25. As demonstrated on the screen shot image provided in Paragraph 21 of the Complaint, it is not at all clear to the consumer that he or she will be called – let alone called via an autodialer – by Defendant when the consumer merely clicks "Submit."

26. As further shown in Paragraph 21 of the Complaint, the quote form is set up in such a manner that the consumer does not receive "clear and conspicuous disclosure" that by filling out the form and clicking "Submit" the consumer is "agreeing" to be contacted "by up to eight insurance companies or their agents or partner companies" via prerecorded or autodialed calls. That is because the statement is inconspicuously hidden in tiny white font at the bottom of the webpage beneath the "Submit" button. The only way the consumer could conceivably discover the autodialer authorization is if the consumer scrolls all the way to the bottom of the webpage and closely examines the "fine print" before clicking "Submit".

27. The consumer further has no reason to suspect that he or she is agreeing to be contacted via autodialed calls because the webpage displaying the quote form does not contain any clear and conspicuous text referencing terms of agreements, nor does it instruct users that they are

assenting to agreements by requiring, for example, the consumer to "check a box" or click "I Agree". Instead, the webpage merely has a button that states "Submit."

28. Thus, consumers, including Plaintiffs and other Class members, do not receive proper notice of the autodialer authorization.

29. Defendant's purported autodialer authorization thus fails to meet the thresholds of a valid browsewrap agreement and is therefore unenforceable, which means that no consumer who filled out the quote form provided their consent to receive phone calls via an autodialer.

30. For similar reasons, Defendant violates the TCPA's prior express written consent requirements because Defendant does not provide consumers "clear and conspicuous disclosure" of the consequences of providing their phone numbers on the aforementioned quote form, *i.e.*, that the consumer will receive future calls via an autodialer, such that Defendant obtains their prior express written consent to place telemarketing calls via the use of an autodialer.

31. Finally, Defendant's improper attempt to obtain consumers' prior express written consent to receive phone calls via the use of an autodialer is invalid for yet another reason. Notwithstanding the boilerplate language to the contrary, Defendant's website, in fact, requires that users consent to receive phone calls via the use of an autodialer as a condition to using their services in plain violation of the FCC's 2012 Ruling. *See supra* at ¶ 16.

*Plaintiff Karpilovsky's Experience with*
*All Web Leads' "affordable-health-insurance" Website*

32. On June 23, 2017, Plaintiff Karpilovsky visited Defendant's website (www.affordable-health-insurance-plans.org) in search of health insurance quotes.

33. Plaintiff Karpilovsky entered his zip code and then was directed to the webpage displaying the quote form.

34. Plaintiff Karpilovsky proceeded to fill out the personal information fields,

9

including his name, address and phone number. Plaintiff Karpilovsky entered his cell phone number and then clicked the "Submit" button in anticipation of being directed to health insurance quotes.

35.     Shortly after filling out the insurance quote form, Plaintiff Karpilovsky received an autodialed telemarketing call from a representative at All Web Leads from telephone number (847) 686-3264.

36.     Upon answering the call, there was an immediate pause on the other end, followed by a distinct "clicking" noise before the connection with the representative was made.

37.     The All Web Leads representative asked Plaintiff Karpilovsky a series of questions to determine whether Plaintiff Karpilovsky was interested in purchasing insurance, and then attempted to transfer Plaintiff Karpilovsky to a health insurance agent.

38.     Plaintiff Karpilovsky was never aware that he would be receiving an autodialed telemarketing call to his cell phone as a result of using Defendant's website. The call was annoying and harassing to Plaintiff Karpilovsky, and an invasion of his privacy. The call violated the TCPA because it was made without Plaintiff Karpilovsky's prior express written consent.

39.     To compound matters, Plaintiff Karpilovsky continues to receive autodialed telemarketing calls to his cell phone as a result of using Defendant's website.

*Plaintiff Criollo's Experience with*
*All Web Leads' "affordable-health-insurance" Website*

40.     In or around January of 2017, Plaintiff Criollo visited Defendant's website (www.affordable-health-insurance-plans.org) in search of health insurance quotes.

41.     Plaintiff Criollo entered his zip code and then was directed to the webpage displaying the quote form.

42.     Plaintiff Criollo proceeded to fill out the personal information fields, including his

10

name, address and phone number. Plaintiff Criollo entered his cell phone number (\*\*\*-\*\*\*-6107) and then clicked the "Submit" button in anticipation of being directed to health insurance quotes.

43. Shortly after filling out the insurance quote form, Plaintiff Criollo received an autodialed telemarketing call from a representative at All Web Leads.

44. Upon answering the call, there was an immediate pause on the other end, followed by a distinct "clicking" noise before the connection with the representative was made.

45. The All Web Leads representative asked Plaintiff Criollo a series of questions to determine whether Plaintiff Criollo was interested in purchasing insurance, and then attempted to transfer Plaintiff Criollo to a health insurance agent.

46. Plaintiff Criollo was never aware that he would be receiving an autodialed telemarketing call to his cell phone as a result of using Defendant's website. The call was annoying and harassing to Plaintiff Criollo, and an invasion of his privacy. The call violated the TCPA because it was made without Plaintiff Criollo's prior express written consent.

47. To compound matters, nearly seven months after the fact, Plaintiff Criollo continues to receive autodialed telemarketing calls to his cell phone as a result of using Defendant's website.

### *All Web Leads Harmed Plaintiffs in a Manner Identical To the Manner in Which All Web Leads Harmed the Class*

48. Plaintiffs are in the same Class as all other consumers who utilized Defendant's "affordable-health-insurance" website during the relevant time period. Plaintiffs and the Class clicked "Submit" on Defendant's quote form and then subsequently received autodialed telemarketing calls without providing their prior express written consent.

11

## **CLASS ACTION ALLEGATIONS**

49. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

50. Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

51. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who filled out and submitted an insurance quote form on Defendant's website www.affordable-health-insurance-plans.org and then received a non-emergency telephone call from All Web Leads, or any party acting on its behalf, to a cellular telephone through the use of an automated telephone dialing system or an artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are members of, the Class.

52. Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, and their legal representative, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel and their staff members.

53. Plaintiffs reserve the right to amend the Class definition or add a Class if further information and discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

54. Plaintiffs do not know the exact number of members of the Class, but Plaintiffs reasonably believe the Class members number, at minimum, in the thousands.

55. Plaintiffs and all members of the Class have been harmed by the acts of Defendant.

56. This Class Action Complaint seeks injunctive relief and money damages.

57. The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

58. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59. Further, the Class can be identified easily through records maintained by All Web Leads and/or its marketing agents.

60. There are well-defined, nearly identical, questions of law and fact affecting all parties.

61. The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

62. Such common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendant used an automatic telephone dialing system in making non-emergency telemarketing calls to Class members' cell phones;

   b. Whether Defendant gave proper notice to consumers that filled out a quote form that Defendant intended to place calls using an automatic telephone dialing system to the phone numbers provided by Class members;

   c. Whether Defendant's website requires that users consent to receive phone calls via the use of an autodialer as a condition to using their services in violation of the 2012 FCC Ruling;

   d. Whether Defendant can meet its burden of showing it obtained prior express written consent to make such calls;

   e. Whether Defendant's conduct violated the TCPA;

13

    f.    Whether Defendant's conduct was knowing and/or willful;

    g.    Whether Defendant is liable for statutory damages; and

    h.    Whether Defendant should be enjoined from engaging in such conduct in the future.

63.    As persons who received non-emergency telemarketing calls via an automatic telephone dialing system, without providing their prior express written consent to Defendant within the meaning of the TCPA, Plaintiffs assert claims that are typical of each Class member who also received such phone calls.

64.    Further, Plaintiffs will fairly and adequately represent and protect the interests of the Class.

65.    Plaintiffs have no interests which are antagonistic to any member of the Class.

66.    Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

67.    A class action is the superior method for the fair and efficient adjudication of this controversy.

68.    Class wide relief is essential to compel Defendant to comply with the TCPA.

69.    The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

70.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

71.    Defendant has acted on grounds generally applicable to the Class, thereby making

final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

72. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered. In fact, Plaintiffs Karpilovsky and Criollo received auto-dialed telemarketing calls *after* the filing of the original complaint in these proceedings, further showing the necessity of injunctive relief.

## CAUSES OF ACTION

### Count I

### Statutory Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

73. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

75. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

76. Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

77. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

### Count II

### Knowing and/or Willful Violations
### of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

78. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

79. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

80. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class are entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

81. Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

82. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call violation of the TCPA;

C. As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs

seek for themselves and each Class member $500 in statutory damages for each and every violation of the TCPA;

  D.  An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

  E.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class; and

  G.  Such other relief as the Court deems just and proper.

Dated: July 25, 2017

Respectfully submitted,

JOHN KARPILOVSKY and
JIMMIE CRIOLLO, JR.

/s/ Gary M. Klinger
Gary M. Klinger (ARDC # 6303726)
Ryan F. Sullivan (ARDC # 6314103)
**KOZONIS LAW**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com
rsullivan@kozonislaw.com

-and-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on July 25, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                /s/ Gary M. Klinger
                Gary M. Klinger (ARDC# 6303726)
                **KOZONIS LAW, LTD.**
                4849 N. Milwaukee Ave., Ste. 300
                Chicago, Illinois 60630
                Phone: 312.283.3814
                Fax: 773.496.8617
                gklinger@kozonislaw.com