# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR.**, *individually and on behalf of all others similarly situated*, | ) ) ) | **Case No. 1:17-cv-01307** |
| | ) | |
| **Plaintiff,** | ) | **DEFENDANT ALL WEB LEADS, INC.'S** |
| | ) | **OPPOSITION TO PLAINTIFFS' MOTION** |
| **vs.** | ) | **FOR CLASS CERTIFICATION** |
| | ) | |
| **ALL WEB LEADS, INC.** | ) | <u>**ORAL ARGUMENT REQUESTED**</u> |
| | ) | |
| **Defendant.** | ) | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ......................................................................................... 3

I.    PRELIMINARY STATEMENT ............................................................................. 6

II.    BACKGROUND ...................................................................................................... 7

III.    ARGUMENT............................................................................................................. 9

    A.   Plaintiffs fail to satisfy the threshold requirements to certify a class. ........................ 10

        1.   Plaintiffs fail to prove the proposed class is ascertainable. ...................................... 10

        2.   The proposed class is not certifiable because it contains members who do not have standing to sue.................................................................................................................. 11

    B.   Plaintiffs fail to satisfy the Rule 23(a) requirements to certify a class. ........................ 14

        1.   Plaintiffs fail to satisfy commonality under Rule 23(a)(2)....................................... 14

        2.   Plaintiffs fail to satisfy typicality under Rule 23(a)(3). ............................................ 21

        3.   Plaintiffs fail to satisfy adequacy under Rule 23(a)(4)............................................. 23

    C.   Plaintiffs fail to satisfy the Rule 23(b)(3) requirement to certify a class.................... 26

        1.   Questions common to the class do not predominate over individual questions. ..... 26

        2.   A class action is not a superior method to adjudicate the proposed class.............. 28

IV.    CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16-cv-02513, 2018 U.S. Dist. LEXIS 8975, at *9 (N.D. Ill. Jan. 18, 2018) ............................................................................ 16

*Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977) .............................. 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) .................................................. 12, 27

*Barrera v. Guaranteed Rate, Inc.*, No. 17-cv-5668, 2017 U.S. Dist. LEXIS 175223, at *8 (N.D. Ill. Oct. 23, 2017) ............................................................................................................... 14

*Blair v. Supportkids, Inc.*, No. 02-cv-00632, 2003 U.S. Dist. LEXIS 6640, at *12 (N.D. Ill. Apr. 17, 2003)................................................................................................................................. 10

*Brodsky v. Humanadental Insurance Co.*, No. 10-cv-03233, 2017 U.S. Dist. LEXIS 137608 (N.D. Ill. Aug. 28, 2017) ......................................................................................................... 28

*Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 296 (N.D. Ill. 2014)............................. 22

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)........... 9, 25

*Chatman v. Sears, Roebuck & Co.*, No. 05-cv-04742, 2009 U.S. Dist. LEXIS 97594, at *14-15 (N.D. Ill. Oct. 20, 2009) .......................................................................................................... 13

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) .................................................. 9, 10, 27

*Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002) .......................................... 25, 26

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ............................................... 17, 19

*Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-03809, 2017 U.S. Dist. LEXIS 67555, at *25-26 (N.D. Ill. May 3, 2017)...................................................................................................... 15

*Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 430 (N.D. Ill. 2003)...................................... 25

*Foday v. Air Check, Inc.*, No. 15-cv-10205, 2017 U.S. Dist. Lexis 95183, at *8-9 (N.D. Ill. June 21, 2017)................................................................................................................................... 15

*Franklin v. DePaul Univ.*, No. 16-cv-08612, 2017 U.S. Dist. LEXIS 118552, at *4-5 (N.D. Ill. July 28, 2017) ........................................................................................................................... 14

*G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09-cv-05528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. Jan. 25, 2011) ........................................................................................................................... 27

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)............................................ 9, 10, 24

*Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 624 (C.D. Ill. 2003) ............................. 22

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ........................................ 24

*Guillory v. Am. Tobacco Co.*, 97-cv-08641, 2001 U.S. Dist. LEXIS 3353, at *11 (N.D. Ill. Mar. 19, 2001)................................................................................................................................... 27

*Horne v. Flores*, 557 U.S. 433, 445 (2009) ................................................................................ 12

*In re AT&T Mobility Wireless Data Servs. Sales Litig*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) .... 24

*In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013)......................................................................................................................................... 13

*Jamison v. First Credit Servs.* No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *33-34 (N.D. Ill. July 29, 2013) ..................................................................................................................... 10, 11

*Kljajic v. Whirlpool Corp.*, No. 15-cv-05980, 2017 U.S. Dist. LEXIS 70784, at *71 (N.D. Ill. May 9, 2017) ............................................................................................................................ 15

*Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009)............................... 13, 23

*Mauer v. Am. Intercontinental Univ., Inc.*, No. 16-cv-01473, 2016 U.S. Dist. LEXIS 121061, at *12 (N.D. Ill. Sep. 8, 2016)...................................................................................................... 28

*McDaniel v. Bd. of Educ. of Chi.*, No. 13-cv-03624, 2013 U.S. Dist. LEXIS 112868 (N.D. Ill. Aug. 9, 2013)............................................................................................................................ 15

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015)............................................. 10

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)............................................. 10, 22

*Otero v. Dart*, 301 F.R.D. 276, 283 (N.D. Ill. 2013) ........................................................ 13

*Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) .......................................... 12

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016) ......................................................................................................................................... 16

*Pierre v. Midland Credit Mgmt.*, No. 16-cv-02895, 2017 U.S. Dist. LEXIS 61107 (N.D. Ill. April 21, 2017).................................................................................................................................. 21

*Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-07995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013)............................................................................................................................... 23

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ..................................................... 12

*Sullivan v. All Web Leads, Inc.*, No. 17-cv-01307, 2017 U.S. Dist. LEXIS 84232, at *24 (N.D. Ill. June 1, 2017).......................................................................................................................... 17

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011) ........... 11, 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ............................................. passim

*Winner v. Kohl's Dep't Stores, Inc.*, No. 16-cv-01541, 2017 U.S. Dist. LEXIS 131225, at *18 (E.D. Pa. Aug. 17, 2017) ..................................................................................................... 14

**Statutes**

15 U.S.C. § 7006 .................................................................................................................. 7

28 U.S.C. § 2072 ................................................................................................................ 12

47 U.S.C. § 227 ............................................................................................................. passim

**Other Authorities**

137 Cong. Rec. 30821 (1991) .............................................................................................. 29

69 Fed Reg. 60311, 60311-13 (Oct. 8, 2004) ..................................................................... 12

73 Fed. Reg. 51164 (Aug. 29, 2008).................................................................................... 7

Andrew Turrell, *The Extinction of the Scrollbar*, UXMag.com (Mar. 22, 2012), http://uxmag.com/articles/the-extinction-of-the-scrollbar ............................................... 19

*In re Rules & Regulations Implementing the Tele. Consumer Prot. Act*, 30 FCC Rcd 7961, 8072-8073 (July 10, 2015).......................................................................................................... 30

*In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, ¶ 179 (July 3, 2003)............................................................................................... 12

*In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 20 FCC Rcd 3788, ¶ 48 (Feb. 18, 2005) ............................................................................................... 12

*In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) ............................................................................................... 8

Jakob Nielsen*, Scrolling and Attention*, NNGroup.com (Mar. 22, 2010), https://www.nngroup.com/articles/scrolling-and-attention/................................................ 19

Jo Frankel, *Unfolding the insights into webpage scroll*, Clicktale.com (April 10, 2017), https://www.clicktale.com/resources/blog/resourcesbloginvest-in-customer-experience-software/ ............................................................................................................................ 20

*Statistical Facts About Blindness in the United States*, National Federation of the Blind (December 2017), https://nfb.org/blindness-statistics............................................................ 20

Tony Haile, *What You Think You Know About the Web Is Wrong*, Time.com (Mar. 9, 2014), http://time.com/12933/what-you-think-you-know-about-the-web-is-wrong/ ..................... 19

*Website Accessibility Under Title II of the ADA*, ADA.gov (May 7, 2007). https://www.ada.gov/pcatoolkit/chap5toolkit.htm .......................................................... 20

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Evid. 702 ......................................................................................... 17, 19

**Regulations**

45 C.F.R. § 160.103 ............................................................................................ 8, 9

47 C.F.R. § 64.1200 ............................................................................................... 30

**Constitutional Provisions**

U.S. Const. art. III ........................................................................................ 7, 12, 14

# I.    PRELIMINARY STATEMENT

The website operated by Defendant All Web Leads, Inc. ("AWL"), www.affordable-health-insurance-plans.org (the "Health Plan website"), clearly and conspicuously displayed prior express written consent language as required by the Telephone Consumer Protection Act ("TCPA").  In a creative effort to sidestep this fact, Plaintiffs John Karpilovsky and Jimmie Criollo, Jr. ("Plaintiffs") argue that because they personally did not scroll past the "Submit" button on the Health Plan website, they did not see or read this language and could not have consented to receive autodialed calls from AWL.

On top of their individual allegations, Plaintiffs allege that not a single consumer saw the consent language even though it was next to the "Submit" button in a visible, legible, and contrasting type.  Plaintiffs base their argument on the opinion of a website designer who admittedly has no knowledge of the TCPA or its requirements for prior express written consent. He frames this case as a failure to comply with website design industry best practices, an irrelevant standard to the statutory requirements of the TCPA.

While Plaintiffs seek to certify a class of consumers who voluntarily provided their cell phone numbers on the Health Plan website and requested follow-up calls from AWL, Plaintiffs cannot satisfy the Rule 23 requirements.  Plaintiffs did not—and could not—have had the same experiences as the rest of the class when visiting the Health Plan website.

Whether a consumer had to scroll down to see the consent language, or the consent language was already visible on their screens without scrolling is not a common question of law or fact applicable class-wide, nor will it generate common answers to drive the resolution of the litigation.  It is inherently fact-specific and requires individualized inquiries.  Putative class members cannot be readily and objectively identified by the Court, resulting in a non-ascertainable

class. Nor do putative class members have standing to sue under Article III of the U.S. Constitution because they provided their prior express written consent to receive calls.

Plaintiffs further fail to satisfy the commonality, typicality, and adequacy requirements under Rule 23(a). Because individualized issues predominate over the common issues of the putative class members, a class action is not a superior method to adjudicate the proposed class, and Plaintiffs cannot satisfy Rule 23(b)(3). Therefore, AWL requests this Court deny Plaintiffs' motion for class certification with prejudice.

## II. BACKGROUND

The TCPA prohibits any person from making any non-emergency call using an automatic telephone dialing system ("ATDS") or prerecorded message to any telephone number assigned to a cell phone or other service for which the called party is charged without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). Calls that also introduce an advertisement or constitute telemarketing can only be made with the prior express written consent of the called party. 47 C.F.R. § 64.1200(a)(2). The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id*. at (f)(1). "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. at (f)(12). Prior express written consent must include:

- Signature of the person called (can be in electronic or digital form)[1];
- Telephone number to which the signature authorizes calls;
- Clear and conspicuous disclosure informing the person that the agreement authorizes the seller to call;

---

[1] "The E-SIGN Act defines an 'electronic signature' as 'an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record.' 15 U.S.C. § 7006(5). The Act further defines an 'electronic record' as 'a contract or other record created, generated, sent, communicated, received, or stored by electronic means.' 15 U.S.C. § 7006(4)." 73 Fed. Reg. 51164, 51181, n. 218 (Aug. 29, 2008).

- Using an automatic telephone dialing system or an artificial or prerecorded voice; <u>and</u>
-  Statement that the person is not required to sign the agreement as a condition of purchasing property, goods, or services.

*Id*. at (f)(8).

"Health care" calls, however, are exempt from the prior express written consent requirement and can be made with prior express consent.[2]  The Federal Communications Commission ("FCC") recognized the broad privacy protections that Health Insurance Portability and Accountability Act ("HIPAA") affords an individual's health information and created an exception for "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103." 47 C.F.R. § 64.1200(a)(2).

"Health care" is defined as "care, services, or supplies related to the health of an individual." 45 C.F.R. § 160.103. A "covered entity" includes a "health plan." *Id*. A "health plan" means an individual or group plan that provides, or pays the cost of, medical care and includes a health insurance issuer. *Id*. A "business associate" is a person or entity that performs certain functions or activities that involve the use or disclosure of protected healthcare information on behalf of, or provides services to, a covered entity. *Id*.

Plaintiff Karpilovsky admits that he provided confidential health information to the Health Plan website to receive more information related to his health care needs. John Karpilovsky dep., attached hereto as Exhibit A, 101:12—102:1; 118:13-24. Plaintiff Criollo similarly admits that he

---

[2] The FCC has determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992). It is undisputed that Plaintiffs and all putative class members provided their prior express consent under this standard. Dkt. No. 44, ¶¶ 37, 45; Karpilovsky Resp. to Req. for Admis., introduced *infra* and attached hereto as Exhibit G, Nos. 1-3, 5-6; Criollo Resp. to Req. for Admis., introduced *infra* and attached hereto as Exhibit H, Nos. 3-4, 6-7; Criollo dep., introduced *infra* and attached hereto as Exhibit B, 70:1-2.

willingly provided personal health information to the AWL agent regarding maternity coverage, Medicare, Medicaid, dental and vision policies, preexisting health conditions, and prescription medications. Jimmie Criollo, Jr. dep., attached hereto as Exhibit B, 102:4—104:19; *see* AWL Karpilovsky 0001, attached hereto as Exhibit C. The confirmation calls were made by AWL on behalf of health insurance providers and intended to gather additional personal health information to assist Plaintiffs in finding health care coverage *as they requested*.

Because AWL (the business associate) made calls on behalf of health insurance providers (the covered entities) as related to health plans to confirm the health care information Plaintiffs voluntarily provided and to confirm Plaintiffs' interests in receiving information related to their health care needs and coverage, these are "health care" calls and fall squarely within the protections of HIPAA, and thus are permitted by the TCPA with prior express consent.

## III.     ARGUMENT

A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To show that a case falls within the exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (noting that the court must conduct a "rigorous analysis" of the requirements under Rule 23). A court is not bound to accept the allegations on the face of the complaint as true, and "must probe behind the pleadings" when necessary to determine whether these requirements have been met. *Blair v. Supportkids, Inc.*, No. 02-cv-00632, 2003 U.S. Dist. LEXIS 6640, at *12 (N.D. Ill. Apr. 17, 2003) (citing *Gen. Tel. Co. of the Sw.*, 457 U.S. at 160).

As threshold matters, the putative class representatives must show that they are members of the proposed class, *see* Fed. R. Civ. P. 23(a) ("One or more members of a class may sue … as representative parties on behalf of all members …."), and must establish that the members of the proposed class are ascertainable. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). This requirement is implied in Rule 23(a). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). The plaintiff must then establish that the case satisfies all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1-4); *Comcast Corp.*, 569 U.S. at 33. The plaintiff must also satisfy at least one of the three subsections of Rule 23(b). *Id.*

**A.     Plaintiffs fail to satisfy the threshold requirements to certify a class.**

**1.     Plaintiffs fail to prove the proposed class is ascertainable.**

The proposed class as defined by Plaintiffs cannot be certified, because putative class members cannot be readily and objectively identified by the Court, resulting in a non-ascertainable class. An implicit Rule 23 threshold requirement is that a class must be defined clearly and that membership be defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This "ascertainability" requirement prohibits class certification where a class "is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff." *Oshana*, 472 F.3d at 514.

In the context of TCPA class actions, the Northern District of Illinois has declined to certify classes where the plaintiff has failed to establish ascertainability. For example, in *Jamison v. First Credit Servs.* No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *33-34 (N.D. Ill. July 29, 2013), the court denied reconsideration of its determination that the plaintiff could not establish "by clear and convincing evidence" that the class was ascertainable, because the class definition was

insufficiently definite. Membership in the proposed class only required that defendant called a potential class member's cell phone, yet the class definition could include thousands of individuals who consented to receive calls on their cell phones and had no grievance under the TCPA. *Id.*; *see Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (denying certification of TCPA claims on ascertainability grounds, finding that the class definition included willing call recipients who had no arguable TCPA cause of action). These standards similarly prevent certification of Plaintiffs' proposed class:

> From the time period of February 21, 2013 through the present (the "Class Period"), all persons within the United States who received a "connected call" from All Web Leads, or any party acting on its behalf, to a cellular telephone through the use of an automated telephone dialing system after their contact information was submitted via an insurance quote form on All Web Lead's website www.affordable-heal-insurance-plans.org.

Dkt. No. 78, p. 21.

As in *Jamison* and *Vigus*, the class definition is not sufficiently definite to warrant class certification. Membership in Plaintiffs' proposed class only requires that AWL called a potential class member's cell phone, yet the class definition includes consumers who willingly provided their prior express written consent on the Health Plan website and have no grievance under the TCPA. Plaintiffs' proposed class is overbroad and unascertainable and cannot be certified.

## 2. The proposed class is not certifiable because it contains members who do not have standing to sue.

Plaintiffs' proposed class cannot be certified because most, if not all, putative class members saw the consent language on the Health Plan website[3], provided their prior express written consent to receive calls from AWL, and thus have not suffered an Article III injury.

---

[3] Even if some putative class members did not see the consent language on the Health Plan website, the FCC has repeatedly said that technical issues in the context of the TCPA that are not created by telemarketer, or consumer choices affecting compliance, cannot result in liability on behalf of a company. *See, e.g., In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, ¶ 179 (July 3, 2003) (telemarketer not liable

Article III requires a plaintiff to suffer an injury that is concrete, particularized, and actual or imminent. *Horne v. Flores*, 557 U.S. 433, 445 (2009). It must be fairly traceable to the challenged conduct of the defendant and is likely, as opposed to merely speculative, that a favorable decision by the court will redress the injury for the plaintiff to have standing. *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Rule 23 cannot expand the scope of federal jurisdiction and must "be interpreted in keeping with Article III constraints." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Rules Enabling Act makes clear and expressly "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart*, 564 U.S. at 366 (quoting 28 U.S.C. § 2072(b)). Reading Rule 23 to permit the resolution of claims that could not be brought as individual actions violates that prohibition. It follows that courts may not certify classes that include members who lack standing—for example, classes that include uninjured claimants. *See Otero v. Dart*, 301 F.R.D. 276, 283 (N.D. Ill. 2013) ("nearly all proposed [claimants] also likely lack standing to seek prospective relief. Certification of a Rule 23(b)(2) class is inappropriate under these circumstances."). *See also Wal-Mart*, 564 U.S. at 363-65 (Rule 23(b)(2) did not authorize certification of a class where half of the proposed class members lacked standing to seek injunctive or declaratory relief with respect to Wal-Mart's allegedly unlawful employment practices because they no longer worked for Wal-Mart). Whether viewed as a threshold requirement or as part of

---

where caller ID information is not passed through to the customer due to a technical failure and through no fault of the telemarketer originating the call); *In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 20 FCC Rcd 3788, ¶ 48 (Feb. 18, 2005) (telemarketer not liable where it appropriately places a call to a landline number that the consumer has transferred to a wireless number at the consumer's sole discretion); *In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, ¶ 38 (July 3, 2003, amended Sept. 21, 2004); *see also* 69 Fed Reg. 60311, 60311-13 (Oct. 8, 2004) (telemarketer not liable where it has made a good faith effort to follow the "do-not-call" requirements but inadvertently calls a consumer that has elected to be included on the national "do-not-call" registry, as a result of the database's failure to update or other error).

Rule 23(b)(3)'s predominance requirement, *see In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013), the principle is the same: no class with uninjured members can be certified.

Plaintiffs suggest that according to *Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009), only one member of a certified class is required to assert a plausible claim for damages in order for standing to be certified. But Plaintiffs read *Kohen* too broadly. In fact, the *Kohen* court stated that a class should not be certified if it is "apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Id.* at 676; *see also Chatman v. Sears, Roebuck & Co.*, No. 05-cv-04742, 2009 U.S. Dist. LEXIS 97594, at *14-15 (N.D. Ill. Oct. 20, 2009) (clarifying the court's more limited opinion in *Kohen*). Here, neither the named Plaintiffs nor the putative class members have suffered an injury to warrant standing. The TCPA-compliant consent language was present on the Health Plan website for the named Plaintiffs and all proposed class members. Exhibit A, 136:13—137:5, AWL Karpilovsky 0006, attached hereto as Exhibit D, AWL Karpilovsky 0005, attached hereto as Exhibit E, Darin Ginther dep., attached hereto as Exhibit F, 100:3-14.

Furthermore, Plaintiffs admit that they expressly provided their cell phone numbers and expected to receive communications from AWL. Karpilovsky Resp. to Req. for Admis., attached hereto as Exhibit G, No. 2; Criollo Resp. to Req. for Admis., attached hereto as Exhibit H, No. 3; Exhibit B, 70:1-2. Accordingly, Plaintiffs have provided no evidence of a violation of their privacy interests, and therefore an injury-in-fact, from the receipt of solicited calls from AWL. *See Winner v. Kohl's Dep't Stores, Inc.*, No. 16-cv-01541, 2017 U.S. Dist. LEXIS 131225, at *18 (E.D. Pa. Aug. 17, 2017) ("Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing ….").

According to Plaintiffs, the invasion of privacy by AWL is the type of injury that falls "squarely within the body of cases where courts have found sufficient injury to meet the injury requirement to bring a TCPA claim." Dkt. No. 78, p. 22 (citing *Barrera v. Guaranteed Rate, Inc.*, No. 17-cv-05668, 2017 U.S. Dist. LEXIS 175223, at *8 (N.D. Ill. Oct. 23, 2017) and its "collecting cases."). The quote and collecting cases are actually from *Franklin v. DePaul Univ.*, No. 16-cv-08612, 2017 U.S. Dist. LEXIS 118552, at *4-5 (N.D. Ill. July 28, 2017), and involve factual scenarios in which the plaintiffs *never* provided telephone numbers to the defendants.

The TCPA was never intended to allow damages to plaintiffs like the proposed class: persons who provided their prior express written consent and requested calls from AWL. Plaintiffs have failed to demonstrate that they have suffered an injury under Article III, and therefore the class is not certifiable, because it contains members who do not have standing to sue.

**B.      Plaintiffs fail to satisfy the Rule 23(a) requirements to certify a class.**

**1.      Plaintiffs fail to satisfy commonality under Rule 23(a)(2).**

Plaintiffs' proposed class cannot be certified under Rule 23(a)(2) because the Court will need to make a determination for each putative class member as to whether they provided their consent to AWL. Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although the rule speaks in terms of common questions, "what matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted).

The Northern District of Illinois has found commonality to be lacking when the court is required to engage in individualized inquiries. *See Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-03809, 2017 U.S. Dist. LEXIS 67555, at *25-26 (N.D. Ill. May 3, 2017) (commonality not

satisfied where highly individualized inquiry would be required to determine whether each class member suffered the same resulting injury); *McDaniel v. Bd. of Educ. of Chi.*, No. 13-cv-03624, 2013 U.S. Dist. LEXIS 112868 (N.D. Ill. Aug. 9, 2013) (holding same); *Kljajic v. Whirlpool Corp.*, No. 15-cv-05980, 2017 U.S. Dist. LEXIS 70784, at *71 (N.D. Ill. May 9, 2017) (plaintiffs failed to show commonality where there was no common method of proof to support plaintiffs' claims and to allow a fact-finder to determine if plaintiffs were injured without individualized inquiry); *Foday v. Air Check, Inc.*, No. 15-cv-10205, 2017 U.S. Dist. Lexis 95183, at *8-9 (N.D. Ill. June 21, 2017) (plaintiffs' claims would require inquiry into a diverse set of facts for each plaintiff that would not be consistent with the commonality requirement).

Plaintiffs erroneously assert that they satisfy the commonality requirement because there are common issues driving the litigation; namely, that all of the calls to the proposed class were (1) made by AWL's dialers; (2) to cell phone numbers; and (3) obtained by AWL through the same procedure on the Health Plan website. Dkt. No. 78, p. 24. While Plaintiffs may have identified three issues, they have not established the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

Class members did not have the same experiences when following the "procedure" on the Health Plan website. Whether or not a consumer voluntarily provided his personal and contact information, including his cell phone number, then (1) scrolled down to see the consent language, or (2) the consent language was already visible without scrolling based on individual screen size, viewing configuration, or browser used, and then clicked "Submit" to receive calls from AWL, is not a common question of law or fact, nor will it generate common answers to drive the resolution of the litigation. Consent, and even more so as Plaintiffs argue—whether class members needed

to scroll down to see the consent language, and if they in fact did so—is inherently fact-specific and requires individualized inquiries.

This Court recently confirmed that courts "determine whether issues of individual consent defeat commonality and predominance in … TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16-cv-02513, 2018 U.S. Dist. LEXIS 8975, at *9 (N.D. Ill. Jan. 18, 2018) (citing *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016)). There can be no common method of viewing the Health Plan website based on the inherent variables of consumer scrolling, types of Internet browsers, or the different devices used to view the website. It requires the Court to make a determination via fact-based, individualized review asking each potential class member what browser or device was used to visit the site, and then what he did on the site after entering his information and number before clicking "Submit."

Another significant issue that is not common class-wide prohibits Plaintiffs from satisfying the commonality requirements of Rule 23(a)(3). While Plaintiffs have a list of telephone numbers called during the Class Period, it is unknown whether the people that owned the numbers at the time of the calls are currently assigned to those numbers. This issue presents an uncommon question that will generate atypical answers.

Plaintiffs also argue that this Court has already found that AWL's affirmative defense of prior express consent is subject to class-wide resolution. Plaintiffs do not, however, address the entirety of the Court's opinion. The Court stated that each putative class member gave the same consent, thereby permitting class-wide resolution "absent some other interface with [AWL]." *Sullivan v. All Web Leads, Inc.*, No. 17-cv-01307, 2017 U.S. Dist. LEXIS 84232, at *24 (N.D. Ill. June 1, 2017). The Court clarified that should the class definition include consumers who gave

AWL "some sort of individualized consent, it would be premature at this pre-discovery procedural stage to determine whether this suit can proceed as a class action." *Id.* at *25.

Here, the record confirms that there is no uniform manner in which consumers accessed the Health Plan website.[4] Plaintiffs and other class members used a variety of devices and browsers configured in variable ways to access the Health Plan website, and as a result, the view and positioning of the consent language most certainly appeared differently to each consumer. Exhibit A, 100:14-23. Even consumers that used the same type of devices and browsers could have seen the Health Plan website differently based on individual manipulation of their devices or browser, i.e. resizing windows, altering computer settings, reading the entire site before providing any information, or even having other windows open on a computer that could obscure the view of the window in which the consumer was viewing the Health Plan website.

AWL confirmed that the consent language was displayed next to the "Submit" button on the Health Plan website. Exhibit F, 100:3-14. Yet Karpilovsky asserts that he did not see AWL's consent language on the website, which he accessed via an Apple iPad Pro 9.7, because he did not scroll to view the entirety of the webpage. Karpilovsky Resp. to Second Set of Interrog., attached hereto as Exhibit I, No. 1; Exhibit A, 103:2—104:1, 135:16—136:2. Criollo also claims that he did not see the consent language on the website, which he accessed via an Apple Phone 6S. Criollo Resp. to Second Set of Interrog., attached hereto as Exhibit J, No. 1; Exhibit B, 58:8—60:3. Criollo acknowledged, however, that the language was viewable in the screenshot included in Plaintiffs' first amended complaint, although he did not know what computer was used to take the screenshot. Exhibit B, 60:4-21.

---

[4] AWL filed a motion *in limine* (Dkt. No. 70) to exclude the expert report and testimony of Alexander Young for his use of unreliable principles and methods, which render his work inadmissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702. Information from his report should be disregarded as it applies to Plaintiffs' motion for class certification.

Plaintiffs' experiences are not representative of the entire class and the record confirms that the question of whether consent was provided by each class member to receive calls from AWL will require individual inquiry by the Court. Consent depends on the individual circumstances surrounding each class member's experience on the Health Plan website, and in particular whether the consent language was viewed by each class member. Determination of consent where the question is not whether the consent language was present, but rather whether it was seen by putative class members, necessitates a fact-based, individualized review.

Plaintiffs submitted an expert report to support their argument that consent was not obtained by AWL from the named Plaintiffs or class members, in which the expert posits that the experience on the Health Plan website was identical for each class member because (1) consumers do not scroll past the "Submit" button to view portions of webpages they cannot see upon first opening a page, and (2) all Internet browsers display webpages identically. *See* Dkt. 70-2, pp. 7-9, Dkt. 70-1, pp. 19, 21. As explained in AWL's motion *in limine*, the expert report should be excluded under *Daubert* and Fed. R. Evid. 702. *See* Dkt. No. 70. However, if AWL's motion *in limine* is denied, Plaintiffs' allegations regarding consumers' scrolling habits and uniform Internet browsers nevertheless fail the commonality requirements of Rule 23.

It is irreconcilable with the evidence and common sense to accept that Plaintiffs and the putative class members had an identical user experience on the Health Plan website. For example, contrary to Alexander Young's expert report, research concludes that consumers do, in fact, scroll. Chartbeat, a data analytics provider, analyzed data from two billion visits to a variety of sites and found that "66% of attention on a normal media page is spent below the fold."[5] Tony Haile, *What*

---

[5] "Below the fold" refers to information on a website that is viewable only after further action is taken by the consumer, such as scrolling. "Above the fold" is that information within a website's initially viewable area upon opening the webpage before scrolling. *See* Jakob Nielsen, *Scrolling and Attention*, NNGroup.com (Mar. 22, 2010), https://www.nngroup.com/articles/scrolling-and-attention/.

*You Think You Know About the Web Is Wrong*, Time.com (Mar. 9, 2014), http://time.com/12933/what-you-think-you-know-about-the-web-is-wrong/.  Scrolling is ingrained in consumer behavior, so much so that computer manufacturers are removing the scrollbar from computer screens.  For instance, the Mac OS X operating system has erased the scrollbar from its standard computer screens, because it is unnecessary to display the scrollbar in order for consumers to know to scroll to navigate a webpage's content.  Andrew Turrell, *The Extinction of the Scrollbar*, UXMag.com (Mar. 22, 2012), http://uxmag.com/articles/the-extinction-of-the-scrollbar.  Thus, it is illogical to claim that a consumer with normal scrolling habits would scroll just far enough on a website to see the "Submit" button—to an exact location where the consent language is not viewable on the screen—but not scroll through the entire webpage.

In addition, studies confirm that webpages are displayed differently depending on the devices used by the consumer.  For example, Clicktale, an analytics company, analyzed 120,000 webpages and found that the visible portion of a website that is displayed above the fold on a desktop computer is not necessarily above the fold on a mobile device.  Jo Frankel, *Unfolding the insights into webpage scroll*, Clicktale.com (April 10, 2017), https://www.clicktale.com/resources/blog/resourcesbloginvest-in-customer-experience-software/.  The fold location varies widely due to variations in screen size, window size, browser design, and browser add-ons.  *Id.*  Therefore, consumers visiting the Health Plan website viewed its content differently, and the placement of the consent language necessarily varies depending on the location of the "fold" on the particular device.  Internet browsers do not display all websites identically.

Plaintiffs' motion for class certification also fails to take into account visually impaired consumers' experiences on the Health Plan website. Visually impaired Internet users often use screen readers, which are computer programs that read the written text on a webpage to the user. *Website Accessibility Under Title II of the ADA*, ADA.gov (May 7, 2007). https://www.ada.gov/pcatoolkit/chap5toolkit.htm. These putative class members would have had the consent language read to them aloud, and thus they could not have had an identical user experience on the Health Plan website as Plaintiffs. There can be no argument that these putative class members did not know what they were consenting to because they did not scroll and see the consent language. Nor are these users' experiences insignificant: approximately 2.3 percent of the U.S. adult population is visually impaired. *Statistical Facts About Blindness in the United States*, National Federation of the Blind (December 2017), https://nfb.org/blindness-statistics.

Young also admits in his deposition that his expert report review of the most popular browsers used to view the Health Plan website would not cover 100 percent of all site visitors. Alexander Young dep., attached hereto as Exhibit K, 184:9-23. He noted that "certainly there could have been an error" in browser configurations, and "I think in certain scenarios I can see excluding 10 percent being totally equitable if it is a very specific environment, or even more so. Dkt. 70-2, p. 17. But nothing under Rule 23(a) allows for such a generalization, much less an error rate of up to 10 percent. Even considering his expert report, the court still would need to conduct individualized inquiries regarding consumer visits to the website. There can be no common method of proof to support Plaintiffs' claims because class members did not have the same experiences when following the "procedure" on the Health Plan website.

Furthermore, Plaintiffs have not articulated a "common nucleus of operative fact." *See* Dkt. No. 78, p. 25. This case is not analogous to that cited by Plaintiffs, *Pierre v. Midland Credit*

*Mgmt.*, No. 16-cv-02895, 2017 U.S. Dist. LEXIS 61107 (N.D. Ill. April 21, 2017), in which members of the proposed class each received and read a standard form debt collection letter sent in the mail from the defendant.  Here, class members visited the Health Plan website and viewed the consent language online.  The Internet presents technical issues and variances that do not exist with a paper letter, including the difference in the website's appearance for each consumer depending on the devices or browsers used.

Plaintiffs have not established common issues that have the capacity in a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.  The Court would have to engage in individualized inquiries to make a determination for each putative class member as to whether they saw the consent language on the Health Plan website and thus provided prior express written consent and determine who owned the number at the time of the call.  Thus Plaintiffs fail to satisfy the commonality requirement of Rule 23(a)(2).

### 2.    Plaintiffs fail to satisfy typicality under Rule 23(a)(3).

Plaintiffs have not affirmatively demonstrated that their claims are typical of the claims of the proposed class; rather, it is evident that the proposed class members will have distinctive claims against AWL, or more likely, no claims at all.  Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 296 (N.D. Ill. 2014) (citing Fed. R. Civ. P. 23(a)(3)).  The premise of the typicality requirement is simply stated: "as goes the claim of the named plaintiff, so go the claims of the class." *Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 624 (C.D. Ill. 2003) (internal quotation marks omitted).

In support of this obligation, Plaintiffs allege their claims are typical of the class because they, like everyone in the proposed class, clicked the "Submit" button on the Health Plan website

and received calls on their cell phones during the Class Period. *See* Dkt. No. 78, p. 26. It does not follow that these actions necessarily render Plaintiffs and putative class members' claims alike.

Plaintiffs' claims do not have the same essential characteristics as the claims of the class at large. *See Oshana*, 472 F.3d at 514. According to Plaintiffs, they did not see the consent language on the Health Plan website and therefore did not provide consent to receive future calls from AWL. But a vast majority, if not all, class members viewed the consent language and consented to receive calls from AWL. *See* Exhibit F, 100:3-14. Similarly, the court in *Vigus* found that the plaintiff's claims were atypical of the putative class members, because most of the class members willingly received calls from the defendant. *Vigus, 274* F.R.D. at 236. According to the court, a class "should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Id.* (quoting *Kohen v. Pac. Inv. Mgmt. Co., LLC,* 571 F.3d 672, 677 (7th Cir. 2009)). Here, the class members suffered no injury and have no claims against AWL.

Furthermore, Plaintiffs contend that their claims and the claims of the putative class members flow from the same conduct on the part of AWL that made the calls. The alleged standardized course of conduct consists of (1) AWL making autodialed calls to cell phones in violation of the TCPA; and (2) AWL displaying consent language below the "Submit" button on the Health Plan website. Dkt. No. 78, p. 25. But AWL's course of conduct complied with the TCPA. No claims arise as a result of AWL's legal conduct, and therefore, it is incongruous to contend that putative class members' claims arise from AWL's same conduct.

Plaintiffs cite to *Savanna Group*, *Inc. v. Trynex, Inc.*, No. 10-cv-07995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) for the proposition that typicality is met in TCPA cases where the putative class members' claims arise from the same legal theory of the named plaintiff. The

legal theory was that defendants violated the TCPA by sending faxes without the express consent or permission of the intended recipients. As explained above, no such uniform legal theory exists here where class members consented to receive AWL's calls.

Plaintiffs' claims are not typical of the claims of the proposed class because a majority, if not all, of the proposed class members viewed the consent language on the Health Plan website and consented to receive calls from AWL. For the remaining class members, the Court would have to individually review each member's experience on the Health Plan website to determine whether the requisite consent was granted by the member, and therefore, whether AWL's calls were in compliance with the TCPA. Plaintiffs fail to satisfy the requirements of Rule 23(a)(3).

### 3. Plaintiffs fail to satisfy adequacy under Rule 23(a)(4).

To certify a class, representative plaintiffs must prove that they "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). This adequate representation inquiry consists of two parts: "(1) the adequacy of the named plaintiffs as representative of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Plaintiffs fail to affirmatively demonstrate their compliance with Rule 23(a)(4), *see Wal-Mart*, 564 U.S. at 350 (2011), as neither is part of the class nor possesses the same interests and suffered the same injury as the class members. *See In re AT&T Mobility Wireless Data Servs. Sales Litig*, 270 F.R.D. 330, 343 (N.D. Ill. 2010). The Supreme Court has disapproved of "across the board" class actions where the class representative has suffered a different kind of injury from other members of the class. *Gen. Tel. Co. of the Sw.*, 457 U.S. at 161. While Plaintiffs conclude they "have no interests that are antagonistic to the Class, and there is no indication of any credibility or other problems with any proposed class representative," Dkt. No. 78, p. 26, there are

23

significant issues of credibility and conflicts of interest between Plaintiffs and the class. For example, Plaintiffs allege in their depositions that they were harmed by the receipt of numerous harassing phone calls from AWL after they made "do-not-call" requests, but provided no proof for those allegations or resulting animus. Exhibit A, 141:8-12; Exhibit B, 90:20—91:16. After their depositions, Plaintiffs admitted that (1) Karpilovsky received only one call from AWL; and (2) Criollo received two calls from AWL. Karpilovsky Resp. to Second Set of Req. for Prod. of Docs., attached hereto as Exhibit L, No. 1; Criollo. Resp. to Second Set of Req. for Prod. of Docs., attached hereto as Exhibit M, No. 1. Additionally, neither Plaintiff has a call log or documentation of inbound calls from AWL or evidence from their caller IDs that show further calls from AWL. *Id*.; Exhibit A, 22:8-20. Both Plaintiffs admit that they provide their cell phone numbers to other websites, shop online, and routinely receive calls from other merchants. *Id*. at 125:12—126:24; 131:9-20; Exhibit B, 51:15-23. These discrepancies place serious doubt on the credibility of Plaintiffs as class representatives.

Courts have found class representatives presumptively inadequate where they are not pursuing damages. *See Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002). The first amended complaint states that Plaintiffs seek injunctive relief and money damages (Dkt. No. 44, ¶ 56), but Criollo refuted that position and stated in his deposition that he is not seeking damages. Exhibit B, 31:15—32:2. Nor does he know what injunctive relief means. *Id*. at 70:3-9. Likewise, Karpilovsky does not know the nature or amount of damages that he is seeking on behalf of the class and does not know if he is seeking injunctive relief. Exhibit A. 71:20—72:5; 72:19—73:3.

A class representative is also inadequate where he is subject to a defense that could not be sustained against other class members. "[H]owever meritorious the suit itself may be, the claim of the class representative may be subject to a defense … that makes it an inappropriate

representative of the class because other class members may not be subject to the same defense, or perhaps to any defense." *CE Design Ltd.*, 637 F.3d at 725; *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 430 (N.D. Ill. 2003). Here, Plaintiffs claim they did not see the consent language on the Health Plan website because they did not scroll down. Exhibit A. 103:2—104:1, 135:16—136:2; Exhibit B, 58:8—60:3. In response, AWL must address the claims of putative class members that used different browsers and devices which inevitably display the consent language differently. Whether or not a consumer saw the consent language when first opening the website or had to scroll just below the "Submit" button to see it does not invalidate otherwise compliant TCPA prior express written language. And if it does, this must be determined on an individualized basis. This requires additional defenses against Plaintiffs that do not necessarily apply to other class members, because there is no indication that the other class members did not see the consent language on the Health Plan website.

Courts have noted that oftentimes a class representative has a merely nominal stake in the litigation, and the real plaintiff in interest is the lawyer for the class, who may have interests that diverge from those of the class members. *See, e.g. Culver*, 277 F.3d at 910. Here, Plaintiffs have shown little vigor in pursing this case and have, for all intents and purposes, abdicated control of litigation to counsel. During his deposition, Karpilovsky stated that "[i]t's not just me suing. And really it's not me. It's the—my counsel here that's brought the case." Exhibit A, 17:13-15. He could not explain the nature or amount of damages that he is seeking on behalf of the putative class. *Id*. at 71:20—72:5. Nor does he believe that each member of the putative class experienced the same damages. *Id*. at 77:6-11. Likewise, Criollo could not name the statute under which he brought this lawsuit, does not know the name of the other plaintiff, and cannot define the class. Exhibit B, 11:12-20; 13:9-19; 16:1—17:10. He does not know how his claims compare to the

claims of the other class members, the name of the judge, what pleadings are, and whether the judge had ruled on anything at the time of his deposition  *Id.* at 20:13—21:22.  Critically, Criollo does not know who Daniel Hutchison or Jonathan Selbin are and does not believe they are his attorneys.  *Id.* at 71:19-20; 95:4-20.  Nor is he sure of whether he visited the Health Plan website in November 2016 or January 2017 as he alleged in the complaint.  *Id.* at 86:2-21.

Taken together, these facts show that counsel acts without consulting Plaintiffs and does not keep Plaintiffs informed of relevant case filings and rulings.  Class counsel is the true party in interest in this matter.  Plaintiffs cannot serve as the class representative of the purported putative class, because they are at distinct odds with the remainder of the class, are disinterested and uninformed of the facts surrounding the case, and have relinquished control of the case to its retained counsel.  As such, Plaintiffs cannot meet their burden under Rule 23(a)(4).

**C.  Plaintiffs fail to satisfy the Rule 23(b)(3) requirement to certify a class.**

**1.  Questions common to the class do not predominate over individual questions.**

Similar to the commonality requirement in Rule 23(a)(2), Plaintiffs' proposed class cannot be certified under Rule 23(b)(3) because the issue of whether each putative class member owned the number at the time of the call, and, according to Plaintiffs, whether or not each class member saw the consent language on the Health Plan website will predominate over any common issues.

In a class action brought under Rule 23(b)(3), "[t]he 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Guillory v. Am. Tobacco Co.*, No. 97-cv-08641, 2001 U.S. Dist. LEXIS 3353, at *11 (N.D. Ill. Mar. 19, 2001) (quoting *Amchem Prods.*, 521 U.S. at 609); *see also Comcast Corp.*, 569 U.S. at 34 (the "same analytic principles"

governing the Rule 23(a) commonality analysis apply to Rule 23(b)(3), but the latter's predominance requirement is "more demanding").

The Northern District of Illinois has denied class certification on the grounds that the issue of consent in TCPA claims is inherently fact-specific, requires individualized inquiries, and so defeats predominance. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09-cv-05528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. Jan. 25, 2011) (declining to certify proposed TCPA class based on issues of individualized consent). Specifically, "[i]ssues of individualized consent typically predominate when a defendant sets forth specific evidence showing consent from a large percentage of potential class members and the plaintiff has not presented a method by which to ascertain consent on a class-wide basis." *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16-cv-01473, 2016 U.S. Dist. LEXIS 121061, at *12 (N.D. Ill. Sep. 8, 2016). In *Brodsky v. Humanadental Insurance Co.*, No. 10-cv-03233, 2017 U.S. Dist. LEXIS 137608 (N.D. Ill. Aug. 28, 2017), the court granted defendant's motion to decertify a class of plaintiffs asserting TCPA claims, holding that issues of individualized consent on behalf of the putative class members to receive faxes from defendant defeated issues of predominance and superiority. *Id.* at *27. According to the court, the trial would be consumed and overwhelmed by testimony from each individual class member in an effort to determine whether the class member consented to receive fax messages from defendant. *Id.* at *14. Where such individualized consent inquiry is required, class treatment is no longer warranted under Rule 23. *Id.* at *27

Despite Plaintiffs' burden to demonstrate the requirements of Rule 23 through evidentiary proof, Plaintiffs "do not anticipate *any* individualized issue that Defendants could raise, let alone enough of them to justify a decision not to certify a class." Dkt. No. 78, p. 28. But Plaintiffs choose to ignore their key allegations in the first amended complaint and subsequent discovery—

that they did not see the consent language on the Health Plan website because they did not scroll. Exhibit A, 103:2—104:1, 135:16—136:2; Exhibit B, 58:8—60:3. But all putative class members could not have the same experiences when following the "procedure" on the Health Plan website. Whether or not a consumer voluntarily provided his personal and contact information, including his cell phone number, then either (1) scrolled down to see the consent language, or (2) the consent language was already visible without scrolling, and then clicked "Submit" to receive calls from AWL, will predominate over any common issues. Consent, and even more so as Plaintiffs argue—whether class members needed to scroll down to see the consent language, and if they in fact did so—is inherently fact-specific and requires individualized inquiries. *See e.g. Brodsky*, 2017 U.S. Dist. LEXIS 137608, at \*27. There can be no common method of viewing the Health Plan website based on the inherent variables of consumer scrolling, types of Internet browsers, and the different devices used to view the website. It requires the Court to make a determination via fact-based, individualized review.

### 2. A class action is not a superior method to adjudicate the proposed class.

Certification under Rule 23(b)(3) is appropriate only if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs fail to affirmatively demonstrate this requirement.

First, the "difficulties in managing" this class action cannot be overstated. *Id.* at (b)(3)(D). Class treatment cannot be permitted at the expense of AWL's right to present all of its defenses against the claims of every putative class member. There is no feasible way for this Court resolve these claims, each subject to the fact-bound, individualized defenses regarding standing, who owned the number at the time of the call, and whether or not each class member saw the consent language on the Health Plan website ("Because if I would have saw this, I would have never—I

would have never gone through with this [lawsuit].").  Exhibit B, 59:1-3.  Only by ignoring the individualized nature of these defenses can Plaintiffs assert that the proposed class action is an efficient way of proceeding.

Second, Plaintiffs overstate the benefit of consolidating the putative class members' claims. Congress passed the TCPA in hopes of allowing individual consumers who are aggrieved to litigate in small claims court.  *See* 137 Cong. Rec. 30821 (1991) (statement by Sen. Hollings) ("[I]t is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court.").  Individual suits do not require expensive legal fees and complex discovery as class actions often entail.  Furthermore, this is a quintessential example of the type of lawsuit that FCC Chairman Ajit Pai warned about:

> The TCPA's private right of action and $500 statutory penalty could incentivize plaintiffs to go after the illegal telemarketers, the over-the-phone scam artists, and the foreign fraudsters. But trial lawyers have found legitimate, domestic businesses a much more profitable target …. [A] trial lawyer can collect about $2.4 million per suit by targeting American companies. So it's no surprise the TCPA has become the poster child for lawsuit abuse ….

*In re Rules & Regulations Implementing the Tele. Consumer Prot. Act*, 30 FCC Rcd 7961, 8072-8073 (July 10, 2015).  AWL is a legitimate, domestic business that complies with the TCPA as evidenced by the undisputed fact that the Health Plan website displayed the required prior express written consent language in a clear and conspicuous manner.  *See* 47 C.F.R. § 64.1200(f)(8); Exhibit E; Exhibit D.  While Plaintiffs creatively argue that they simply did not see the consent language, the TCPA is clear on what constitutes prior express written consent and any other standard is misplaced and irrelevant.  This case is not about true consumer harm ("Q: Why did you give [AWL] your phone number?  A: *To communicate with me.*"  Exhibit B, 70:1-2).  It is a case where "the primary beneficiaries will be trial lawyers, not the American public."  30 FCC Rcd at 8073.  Because individualized issues predominate over the common issues of the putative class

members, a class action is not a superior method to adjudicate the proposed class, and Plaintiffs cannot satisfy Rule 23(b)(3).

## IV.    CONCLUSION

Plaintiffs do not affirmatively demonstrate all of the requirements to certify the proposed class, and AWL requests this Court deny Plaintiffs' motion for class certification with prejudice.

Dated: February 9, 2018          Respectfully submitted,

   */s/ Jeffrey S. Bunn*          

LATIMER LEVAY FYOCK, LLP
Jeffrey S. Bunn, IL #3126903
55 W. Monroe St., 11th Floor
Chicago, Illinois 60603
Telephone: (312) 422-8000
Facsimile: (312) 422-8001
Email: jbunn@llflegal.com

-and-

COPILEVITZ & CANTER, LLC
William E. Raney, MO #46954 (*Pro hac vice*)
Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: braney@cckc-law.com
      kmitchell@cckc-law.com

*Attorneys for Defendant All Web Leads, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following parties via the

Court's CM/ECF electronic filing system on this 9th day of February, 2018:

Gary M. Klinger
Ryan F. Sullivan
KOZONIS & ASSOCIATES, LTD.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Telephone: (773) 545-9607
Facsimile: (773) 496-8617
Email: gklinger@kozonislaw.com
          rsullivan@kozonislaw.com

Jonathan D. Selbin
Daniel M. Hutchinson
John T. Spragens
LIEFF CABRASER HEIMANN & BERNSTEIN
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: jselbin@lchb.com
          dhutchinson@lchb.com
          dspragens@lchb.com

   /s/ *William E. Raney*   
William E. Raney