# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR., *individually and on behalf of all others similarly situated*, | Case No. 1:17-cv-01307 |
| Plaintiff | Hon. Harry D. Leinenweber |
| v. | |
| ALL WEB LEADS, INC., a Delaware corporation, | |
| Defendant. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     AWL MARSHALS NO EVIDENCE. ...................................................................... 2

III.    PLAINTIFFS SATISFY ASCERTAINABILITY, AND THEY HAVE
        STANDING. ................................................................................................................ 2

        A.      The Proposed Class Is Ascertainable ...................................................... 2

        B.      Plaintiffs Allege an Injury-In-Fact .......................................................... 4

IV.     PLAINTIFFS SATISFY COMMONALITY ........................................................... 6

V.      PLAINTIFFS SATISFY THE TYPICALITY STANDARD. ............................... 10

VI.     PLAINTIFFS ARE ADEQUATE............................................................................ 11

VII.    PLAINTIFFS SATISFY PREDOMINANCE. ........................................................ 13

VIII.   PLAINTIFFS SATISFY SUPERIORITY. .............................................................. 15

IX.     CONCLUSION .......................................................................................................... 15

1510256.6

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455 (2013) ................................................................................................. 14

*Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.,*
  747 F.3d 489 (7th Cir. 2014) ...................................................................................... 3

*Barrera v. Guaranteed Rate, Inc.,*
  Case No. 17-cv-5668, 2017 WL 4837597 (N.D. Ill. Oct. 23, 2017) ..................... 5, 7

*Bell v. PNC Bank, Nat'l Ass'n,*
  800 F.3d 360 (7th Cir. 2015) ...................................................................................... 2

*Bernal v. NRA Grp., LLC,*
  318 F.R.D. 64 (N.D. Ill. 2016) ......................................................................... 8, 9, 10

*Birchmeier v. Caribbean Cruise Line, Inc.,*
  302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................ 10, 11

*Blow v. Bijora, Inc.,*
  855 F.3d 793 (7th Cir. 2017) ...................................................................................... 8

*Brodsky v. HumanaDental Ins. Co.,*
  269 F. Supp. 3d 841 (N.D. Ill. 2017) ....................................................................... 15

*Butler v. Sears, Roebuck and Co.,*
  727 F.3d 796 (7th Cir. 2013),
  *cert. denied*, 134 S. Ct. 1277 (2014) ........................................................... 1, 2, 13, 14

*CE Design Ltd. v. King Architectural Metals, Inc.,*
  637 F.3d 721 (7th Cir.2011) ..................................................................................... 10

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,*
  296 F.R.D. 299 (D.N.J. 2013) ................................................................................... 12

*Culver v. City of Milwaukee,*
  277 F.3d 908 (7th Cir. 2002) .................................................................................... 13

*Franklin v. Depaul Univ.,*
  No. 16 C 8612, 2017 WL 3219253 (N.D. Ill. July 28, 2017) .................................... 5

*Gehrich v. Chase Bank USA, N.A.,*
  316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................ 10, 11

*Green v. Serv. Master on Location Servs. Corp.,*
  07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) .......................................... 8

*Hinman v. M and M Rental Center,*
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................................. 11, 15

*Ira Holtzman, C.P.A. v. Turza,*
  728 F.3d 682 (7th Cir. 2013) ................................................................................. 1, 5

*Jamison v. First Credit Servs., Inc.,*
  290 F.R.D. 92 (N.D. Ill. 2013) ................................................................................... 4

*Kleen Prod. LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015), *aff'd*, 831 F.3d 919 (7th Cir. 2016) ...................................... 15

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ........................................................................................ 6

*Lujan v. Cabana Mgmt., Inc.*,
    284 F.R.D. 50 (E.D.N.Y. 2012) .................................................................................... 9

*Mauer v. Am. Intercontinental Univ., Inc.*,
    No. 16 C 1473, 2016 WL 4698665 (N.D. Ill. Sept. 8, 2016) ....................................... 15

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .................................................................................... 6, 9

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .................................................................................... 3, 4

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) .................................................................................. 10, 11

*Pace v. PetSmart Inc.*,
    No. SACV 13-00500, 2014 WL 2511297 (C.D. Cal. June 3, 2014) ............................ 14

*Pierre v. Midland Credit Mgmt., Inc.*,
    Case No. 16 C 2895, 2017 WL 1427070 (N.D. Ill. Apr. 21, 2017) ............................... 5

*Reliable Money Order, Inc. v. McKnight Sales Co.*,
    281 F.R.D. 327 (E.D. Wis. 2012),
    *aff'd*, 704 F.3d 489 (7th Cir. 2013) ........................................................................... 12

*Roberts v. Scott Fetzer Co.*,
    No. 4:07-CV-80 CDL, 2010 WL 3546499 (M.D. Ga. Sept. 7, 2010) ............................ 9

*Rosario v. Livaditis*,
    963 F.2d 1013 (N.D. Ill. 2016) ................................................................................... 10

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ...................................................................................... 7

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ........................................................................................ 14

*Snyder v. Ocwen Loan Servicing, LLC*,
    258 F. Supp. 3d 893 (N.D. Ill. 2017) ......................................................................... 13

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ....................................................................................... 6

*Sullivan v. All Web Leads, Inc.*,
    No. 17 C 1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017) ........................... 2, 4, 7, 14

*Toney v. Quality Res., Inc.*,
    No. 13 C 42, 2018 WL 844424 (N.D. Ill. Feb. 12, 2018) ................................... passim

*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) ................................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 1, 6, 14

1510256.6

*Winner v. Kohl's Dep't Stores, Inc.*,
   No. CV 16-1541, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ................................ 6

**Rules**

47 C.F.R. § 64.1200(f)(3) ................................................................................ 7

47 C.F.R. § 64.1200(f)(8)(i) ............................................................................ 7

Fed. R. Civ. P. 23(a)(2) ................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ................................................................................. 11

Fed. R. Civ. P. 23(a)(4) ................................................................................. 11

Fed. R. Civ. P. 23(b)(3) ............................................................... 1, 4, 14, 15

**Other Authorities**

Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2015) ............................................ 14

*In the Matter of Rules & Regulations Implementing*
   *the Tel. Consumer Prot. Act of 1991,*
   23 F.C.C. Rcd. 559 (2008) ........................................................................ 8

*In the Matter of Rules & Regulations Implementing*
   *the Tel. Consumer Prot. Act of 1991,*
   27 F.C.C. Rcd. 15391 (2012) .................................................................... 8

Newberg on Class Actions § 3:29 (5th ed.) ................................................ 11

1510256.6

## I.     INTRODUCTION

All Web Leads, Inc. ("AWL") ignores this Circuit's dictate: "Class certification is normal in litigation under § 227, because the main questions . . . are common to all recipients." *See, e.g.*, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).  This is the "normal" TCPA case warranting certification.  It involves an identifiable group, all duped into entering their cellphone numbers on AWL's uniform website, and all harmed in the same way by AWL's automated calls from a single autodialer.  AWL does not, and cannot, dispute these core facts.

Instead, AWL focuses almost entirely on its affirmative defense on the merits, prior express consent.  That defense *supports* class certification because it relies upon *common evidence*—specifically, the fine-print language on AWL's website.  This proves too much: if AWL is right, it is "an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate [it]—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment." *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 799 (7th Cir. 2013) (reversing district court denial of Rule 23(b)(3) class), *cert. denied*, 134 S. Ct. 1277 (2014) ("*Butler II*").  Alternatively, AWL relies on pure conjecture, supported by literally no evidence in the record.  Such hypotheticals have no bearing on class certification.  *See, e.g.*, *Toney v. Quality Res., Inc.*, No. 13 C 42, 2018 WL 844424, at *16-*17 (N.D. Ill. Feb. 12, 2018) (Castillo, J.) ("issues of consent do not defeat predominance" where defendants present mere speculation, not specific evidence).

Plaintiffs' and all Class members' claims succeed or fail together, ensuring that class litigation will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (emphasis in original).  So, too, AWL's affirmative defense.  While AWL's contention that it obtained effective prior express written consent from "a vast majority, if not all class members" is demonstrably wrong, Dkt. 92 (AWL Opposition)

("Opp.") at 22, AWL will establish it or not as to all Class members; the answer will not, cannot, vary among or between Class members.  Because proof, or disproof, of this central issue— whether AWL had prior consent to call Class members—"can be resolved 'in one stroke,'" *Butler II*, 727 F.3d at 801 (citation omitted), it is a perfect candidate for class certification.

## II.    AWL MARSHALS NO EVIDENCE.

Class certification is a fact-bound inquiry, requiring a rigorous analysis of the record.  *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015) (requiring resolution of "material factual disputes that bear on the requirements for class certification") (citation omitted).  Yet, AWL marshals none.  In contrast, Plaintiffs adduced all of the requisite— common—evidence to certify a TCPA class: AWL's call records; company testimony and documents regarding AWL's autodialer; company testimony and documents regarding AWL's website; and expert testimony further confirming AWL's own corporate testimony.  In opposition, AWL relies upon various third parties' website articles (Opp. at 18-20) and relitigates legal arguments the Court already rejected.  Opp. at 8-9 (arguing that AWL made "health care" calls); *Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *5 (N.D. Ill. June 1, 2017) (rejecting that argument).  The articles are not evidence, nor has AWL bothered to seek judicial notice of them.  The Court should disregard them in favor of the actual evidence.  Dkt. 78 (Pls.' Mot. to Certify Class) at 6-12 (citing common evidence of AWL's calls, knowledge of its potential TCPA liability, and lack of prior express written consent).

## III.    PLAINTIFFS SATISFY ASCERTAINABILITY, AND THEY HAVE STANDING.[1]

### A.    The Proposed Class Is Ascertainable

Rule 23 merely requires that classes be defined clearly and based on objective criteria.

---

[1] AWL concedes numerosity.

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659, 660 (7th Cir. 2015) (an ascertainable class is "a particular group, harmed during a particular time frame, in a particular location, in a particular way"). Here, the class consists of people: (1) who received a "connected call" from AWL's autodialer; (2) to a cellphone; (3) after their contact information was submitted on AWL's insurance quote form. It is both clearly defined and based on objective criteria: indeed, each of the approximately 2 million Class members has *already been identified*. Dkt. 78 at 6-7.

Yet AWL hypothesizes—without evidence or explanation—that the class "*could* include thousands of individuals who consented to receive calls on their cell phones." Opp. at 11 (emphasis added). The caselaw is clear: AWL cannot defeat ascertainability with such speculation. *See Toney*, 2018 WL 844424, at *10 (holding that a defendant does not challenge ascertainability by making "only legal arguments" about prior express consent without providing "specific evidence showing that a significant percentage of the putative class consented to receiving calls"); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2018) ("*Chapman I*"), *leave to appeal denied*, 747 F.3d 489 (7th Cir. 2014) ("*Chapman II*") (Posner, J.) ("[T]he mere possibility that 'some of the proposed class members may have independently consented does not warrant denial of class certification.'"); *The Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013) (defendant failed to offer specific evidence of consent); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) ("in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer"). Indeed, a defendant cannot defeat class certification "merely because there is a theoretical possibility that dialing lists selected through automatic processes might sometimes include individuals who, by happenstance, have previously consented to receiving marketing text messages." *Lee v.*

*Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013).[2]

*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 109 (N.D. Ill. 2013) does not support AWL's position. It is of dubious persuasive value, and clearly distinguishable. First, *Jamison* was decided before *Mullins* and "consequently, is not persuasive on the issue of the proposed class' ascertainability." *See Toney*, 2018 WL 844424, at *10 n.11 and accompanying text (noting also that *Jamison* incorrectly applied a "clear and convincing" burden of proof). Second, the *Jamison* defendants presented "specific evidence" demonstrating that a sizable percentage of the proposed class consented to receiving calls on their cell phones. *See id.* AWL has made no such showing; it argues instead that *all* Class members consented.[3]

## B.   Plaintiffs Allege an Injury-In-Fact

AWL challenges standing because "the TCPA-compliant consent language was present on [AWL's] website for the named Plaintiffs and all proposed Class members," and "Plaintiffs have provided no evidence of a violation of their privacy interests, and therefore an injury-in-fact" as a result of AWL's calls. Opp. at 13. AWL's argument—a variant of its prior express consent defense, again lacking any evidence to support it—is easily refuted.

A violation of the TCPA is a concrete injury. *Barrera v. Guaranteed Rate, Inc.*, Case No.

---

[2] Even if there were evidence that a limited number of Class members provided prior express consent (which there is not), the Seventh Circuit has expressly rejected a "heightened" ascertainability requirement. *Mullins*, which AWL also cites, expressly cautioned against conflating concerns about the process and accuracy of determining a class list with the proper ascertainability analysis. Questions of whether a class list can be generated without "extensive and individualized fact-finding or mini-trials" are properly evaluated in terms of Rule 23(b)(3) superiority, not ascertainability. 795 F.3d at 663. This distinction prevents the technical details of putting together a list from disproportionately dominating the Rule 23 analysis. Under this analysis, Plaintiffs easily satisfy the ascertainability standard.

[3] *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011), too, pre-dates *Mullins*, and its ascertainability analysis violated *Mullins*' prohibition on testing the class list and considering administrative feasibility under the guise of ascertainability. *See id.* at 235-36. The *Vigus* plaintiff did not dispute that consumers provided their cell phone numbers "knowing that, as a consequence, they would receive telephone advertisements from the defendant." *Id.* Here, in contrast, AWL's website promised online health insurance quotes but dialed consumers' cell phones without legally effective consent. Finally, as this Court found, the *Vigus* defendant provided specific evidence of consumers' "individualized consent." *Sullivan*, 2017 WL 2378079, at *9. AWL makes no such showing here.

17-cv-5668, 2017 WL 4837597, at *3 (N.D. Ill. Oct. 23, 2017); *see also Pierre v. Midland Credit Mgmt., Inc.*, Case No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) (Leinenweber, J.) (statutory violation was sufficient injury to meet standing requirement for class certification).  At deposition, both Plaintiffs identified an injury-in-fact stemming from AWL's unlawful conduct—loss of time caused by the automated calls that invaded their privacy.  Ex. E[4] (Criollo Dep.) at 18:18-19:25, 93:23-94:16 (testifying that calls frustrated and annoyed him, tied up his phone line, used his minutes, and interrupted him while he administered medicine to his daughter fighting cancer); Ex. F (Karpilovsky Dep.) at 140:24-142:13 (testifying that the calls he received cost him phone minutes and caused him inconvenience).  This is all the Seventh Circuit requires to confer TCPA standing.  *See Turza*, 728 F.3d at 684 ("[Every] recipient . . .  suffers some loss: the value of the time.") (citations omitted).

AWL does not challenge this evidence or the evidence detailing years of complaints about AWL's abusive calling practices from consumers, business partners, and numerous attorneys general around the country.  Dkt. 78 at 7-9, 11 (describing AWL's history of consumer complaints).  Instead, AWL attempts to twist its prior express consent defense into an Article III challenge, speculating that "most, if not all, putative Class members saw the consent language on [its] website, provided their prior express written consent to receive calls from AWL, and thus have not suffered an Article III injury."  Opp. at 11.  This is a defense, not an argument against standing (much less class certification).  Plaintiffs were injured when they received the calls.  *See Franklin v. Depaul Univ.*, No. 16 C 8612, 2017 WL 3219253, at *3 (N.D. Ill. July 28, 2017).

AWL again provides *no evidence* to support its assertion.  And even if AWL could show that some Class members provided valid prior express consent—it has not—"such a possibility

---

[4] References to an exhibit identified by a letter are to exhibits filed in support of Plaintiffs' Motion for Class Certification (Dkt. 78).  Plaintiffs cite and attach three numbered exhibits to this brief.

or indeed inevitability does not preclude class certification[.]" *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). "While it is true 'a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant,' Defendant[] fail[s] to submit evidence showing that the proposed class members were not harmed by Defendant['s] conduct." *Toney*, 2018 WL 844424, at *11 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (citation omitted)).[5]

## IV.    PLAINTIFFS SATISFY COMMONALITY.

Undisputed evidence shows AWL's uniform practice of making automated calls to cellphones. Dkt. 78 at 4-7. Such a practice makes class certification "the norm" in TCPA cases. *Chapman I*, 2014 WL 540250, at *15, n. 11; *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.").

AWL's prior express written consent defense is similarly well-suited for classwide resolution. "[E]ach putative class member [here] gave the same consent; the ability of All Web to invoke consent as an affirmative defense to each class member is uniform; and determining the legal efficacy of this consent under the TCPA 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sullivan*, 2017 WL 2378079, at *9 (quoting *Dukes*, 564 U.S. at 350). AWL's own records and Plaintiffs' expert analysis both confirmed that AWL's website used the *same* Lilliputian language, displayed the same way (hidden beneath

---

[5] AWL's contention that Plaintiffs "solicited" and "expected to receive" autodialed calls from AWL, Opp. at 13, is contradicted by the evidence. *See* Dkt. 78 at 4-5, 12-13 (explaining that AWL's website gives consumers the expectation that they will receive online insurance quotes, and that Plaintiffs Criollo and Karpilovsky expected to receive online quotes, not calls). Similarly, AWL's reliance on *Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *5 (E.D. Pa. Aug. 17, 2017) is misplaced: there, consumers signed up for a text message marketing program and "admit[ted] . . . that they consented to receiving the messages[.]" Plaintiffs here did not consent to calls and contend that AWL's purported consent language is legally ineffective prior express consent as to all Class members.

the "Submit" button), for *every* Class member. *See* Ex. B (Leirer Dep.) at 45:21-23; Ex. G (Young Rept.) at 8 (confirming that AWL's internal changelog was consistent with Ms. Leirer's testimony and "no changes affected the placement of the contested language below the 'Submit' button"). Either AWL's hidden language constituted "clear and conspicuous" prior express written consent and complied with the TCPA as to all Class members, or to none.

AWL does not dispute that its calling practices are *uniform* and established by common evidence, nor that its prior express written consent defense is based on AWL displaying the *same* purported consent language in the *same* location (relative to the "Submit" button) on its website. Opp. at 15-17. Rather, it claims that the effectiveness of its prior express consent defense turns on "whether the consent language was viewed by each class member." *Id.* at 18. From this premise, AWL lists a series of purported variables (scrolling habits, screen size, viewing configuration, device used, browser used), *id.* at 15-17, that it insists will "necessitate[] a fact-based, individualized review." *Id.* at 18. This argument fails for three reasons.

First, AWL's purported variables are irrelevant. This Court already found—and AWL does not dispute—that AWL's ability to prevail on its prior express consent defense will depend upon whether its disclosure was "clear and conspicuous." *Sullivan*, 2017 WL 2378079, at *7 (citing 47 C.F.R. § 64.1200(f)(8)(i)). This is ***not measured subjectively on a consumer-by-consumer basis***—but according to a "reasonable consumer" standard. *See id.* (citing 47 C.F.R. § 64.1200(f)(3) ("The term ***clear and conspicuous*** means a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures.") (emphasis in original)).[6] Any "individual inquiry" into "whether consent was

_____

[6] *Accord Barrera*, 2017 WL 4837597, at *2 (adopting same standard in a similar case); *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) (finding "clear and conspicuous" disclosure language under TILA, measured according to "reasonable consumer" standard, is a question of law).

provided by each class member" would be legally pointless; the relevant inquiry is whether AWL's purported disclosure "would be apparent to the reasonable consumer"—a classwide analysis particularly susceptible to common evidence. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017) (rejecting argument that determining whether each plaintiff had given prior express consent requires "a series of mini-trials") (citation omitted).

Second, AWL's argument about individualized internet viewing practices is entirely speculative and unsupported by any admissible evidence. The burden falls on AWL to demonstrate that it obtained prior express consent of the called party. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15398 (2012); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008). Yet, AWL has provided *no* evidence that even a single consumer saw its purported disclosure, or that different consumers viewed it differently. Because discovery is now closed, there is no possibility of such evidence; AWL's speculative argument should be rejected. *See, e.g.*, *Toney*, 2018 WL 844424, at *16 ("Defendants . . . do not provide any evidence showing that the . . . online order form was understood differently among the proposed class members[.]").[7]

Faced with actual evidence in the form of its own witnesses' testimony and expert testimony, AWL cites what it calls "evidence and common sense"—apparently the results of some online searches by its counsel—in a belated attempt to rebut the testimony of Plaintiffs' website design and online marketing expert, Alexander Young. Opp. at 18-20 (citing online

---

[7] *See also Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 74 (N.D. Ill. 2016) (even crediting defendant's "entirely speculative assertion" that some Class members expressly authorized its conduct, commonality was satisfied because "'Rule 23(a)(2) does not demand that every member of the class have an identical claim,' and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified") (citation omitted); *Green v. Serv. Master on Location Servs. Corp.*, 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (observing that "the possibility that some class members may have consented is not sufficient to defeat class certification" under the TCPA).

articles about scrolling habits, internet browser displays, and screen readers for the visually impaired); *see generally* Dkt. 87 (Pl.' Opp. to AWL's Mot. to Exclude Expert Testimony).[8]  But this is not evidence: it was never produced in fact discovery, which closed on November 10, 2017, or expert discovery, which closed on December 15, 2017 (without any expert testimony from AWL).  *See* Dkt. 61, 65.  As such, it should be disregarded if not stricken.  *See, e.g.*, *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) (striking information relied upon in opposition to class certification that was not disclosed in discovery process); *Roberts v. Scott Fetzer Co.*, No. 4:07-CV-80 CDL, 2010 WL 3546499, at *9 (M.D. Ga. Sept. 7, 2010) (same).

Third, AWL cannot defeat commonality even if its evidence-free arguments are credited. Plaintiffs have marshalled documentary evidence, testimony from AWL's corporate representatives, and the analysis by Mr. Young establishing that (1) AWL uniformly called Class members who visited its website, (2) the website did not change materially during the class period, and (3) AWL's "consent" procedure did not comply with industry best practices.  Dkt. 78 at 5-6.  AWL's *own brief* cites common evidence to support its prior express consent defense. *See* Opp. at 22 (citing corporate testimony that the records AWL believes "reflect prior express written consent are the records that show whether someone came through the website"). Whether a consumer accessed the website on an iPad or iPhone does not erase these common questions, nor does speculation about "inherent variables" of computer use, such as "scrolling habits" and "browser configuration."  *Bernal*, 318 F.R.D. at 74 (observing that "some degree of factual variation will not defeat commonality").  All the more so when the only *evidence* is that (i) the viewing experience and consent procedure were the same for all class members regardless

---

[8] Plaintiffs submit that the Court can decide that class certification is appropriate without relying on Mr. Young's expert opinions, but respectfully request that the Court contemporaneously rule on AWL's motion to exclude Mr. Young's testimony if there is any question that his opinion is critical to the ruling. *See Messner*, 669 F.3d at 812 ("If a district court has doubts about whether an expert's opinions may be critical for a class certification decision, the court should make an explicit Daubert ruling.").

of the device or browser used (Ex. G at 10-18); and (ii) AWL's website had a mechanism that automatically modified the viewing settings on users' devices to render its website uniformly, regardless of the device used. Ex. 1 (Young Dep.) at 172:1-17, 198:3-200:16, 289:6-291:5.

Nor is AWL's assertion that the possibility that numbers have been reassigned is an "uncommon question that will generate atypical answers," Opp. at 16, persuasive. AWL again cites zero evidence to support this assertion, and it cannot defeat commonality by hypothesizing an individualized inquiry. *Chapman I*, 2014 WL 540250, at *5.[9]

## V. <u>PLAINTIFFS SATISFY THE TYPICALITY STANDARD.</u>

Plaintiffs' claims are "reasonably coextensive" with and "have the same essential characteristics as" those of the class because Plaintiffs were subjected to the same practice—automated calls to their cellphones without prior express consent. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (citation omitted). Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members," *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) ("*CE Design I*"). "[T]he fact that some class members . . . may have consented to the calls . . . does not vitiate the typicality of the class representatives' claims." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2016).[10] "To make a successful typicality challenge, the defendants must demonstrate, by a preponderance of the evidence, that the plaintiff's claim actually is atypical—not just that it might be." *Chapman I*, 2014 WL 540250, at *12. Factual distinctions between the representative parties' claims and the Class members' claims do not destroy typicality. *Savanna Grp.*, 2013 WL 66181, at *11

---

[9] AWL did not move to exclude, or even bother to depose, Plaintiffs' expert, Jeffrey A. Hansen, who analyzed AWL's calling data, or put forth its own expert on the issue. To the extent the answer to AWL's hypothetical question is "unknown," Opp. at 16, AWL failed to marshal *any* evidence to answer it.

[10] *Accord Bernal*, 318 F.R.D. at 74 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (N.D. Ill. 2016) ("[W]e look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)."))

(citation omitted).  Where, as here, the defendant engages "in a standardized course of conduct . . . and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met."  *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citation omitted).

Like each class member, each Plaintiff's cell phone number was in AWL's outgoing autodialer records.  AWL received each Plaintiff's information through its Website, then called him using an autodialer.  Rule 23(a)(3)'s "permissive standards" require nothing more.  Newberg on Class Actions § 3:29 (5th ed.) (Typicality is satisfied if "'the named representatives' claims share the same essential characteristics as the claims of the class at large.'") (citation omitted).

AWL again relies on its prior express consent defense—but a consent defense against individual Class members does not defeat typicality.  *Gehrich*, 316 F.R.D. at 225.  AWL's contention that the named Plaintiffs are atypical because "a vast majority, if not all, of the proposed class members" consented to receive calls is merely a conclusory assertion that cites a conclusory assertion as evidence.  Opp. at 22 (citing AWL's corporate representative's testimony that the records he believes "reflect prior express written consent are the records that show whether someone came through the website").  Typicality is not thwarted by AWL's naked assertion that maybe everyone but the Plaintiffs consented.  *See Toney*, 2018, WL 844424, at *13 (plaintiff who received a call from defendant to her cell phone marketing a product, like the other proposed Class members, satisfied typicality, notwithstanding defendant's consent defense).

## VI.   PLAINTIFFS ARE ADEQUATE.

AWL's attacks on Plaintiffs' adequacy are as irrelevant as they are ungenerous.  "Rule 23(a)(4) requires that the named plaintiffs and class counsel 'will fairly and adequately protect the interests of the class.'"  *Birchmeier,* 302 F.R.D. at 252 (quoting the Rule).  "The requirement that the class representative be adequate is relatively modest and will generally be satisfied if the plaintiff does not have interests that are antagonistic to those of the other class members."

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 333 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013) (citation omitted)).  The adequacy requirement is not intended to test a lay plaintiff's knowledge on the fine points of a legal claim.  *See, e.g.*, *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 316 (D.N.J. 2013) (TCPA plaintiff was adequate even though he did not recollect the specific fax at issue and only had minimal knowledge about the case); *Reliable Money Order*, 281 F.R.D. at 334 (similar).

AWL's attempts to manufacture non-existent credibility issues, conflicts of interest, and so-called "discrepancies" in Plaintiffs' testimony fail.  Both Plaintiffs consistently testified that, immediately after clicking "Submit," they received a call from AWL, followed by numerous calls from unrecognized numbers around the country—calls they had not received before AWL captured and presumably resold their cellphone numbers.  Ex. E (Criollo Dep.) at 99:1-25, 111:10-112:16; Ex. F (Karpilovsky Dep.) at 20:3-23:8.  Their testimony and discovery responses are perfectly consistent: both Plaintiffs know the first call (or in Karpilovsky's case, two calls) came from AWL and cannot identify who placed the remaining calls—only that they did not happen before AWL acquired their phone numbers.

In each Plaintiff's deposition, AWL's counsel posed a series of wholly irrelevant "gotcha" questions most law students—and many practicing lawyers—would fail.[11]  Plaintiffs are consumers, not lawyers.[12]  They well-satisfy the adequacy requirement.[13]

---

[11] *See, e.g.*, Ex. 2 (Criollo Dep.) 70:5, 11:18-19, 42:9-18, 42:23-24  ("What do you mean by 'injunctive relief?'"; "Do you know what the acronym 'HIPAA' stands for, H-I-P-A-A?"; Do you know what the Class Action Fairness Act is? [. . .] Did you ever read it? [. . .] Do you think it's important to read it? [. . .] Why didn't you read it if it's important?"; "Have you ever read any [FCC] regulations?").

[12] See Ex. 2 (Criollo Dep.) at 19:17-20 (testifying that he is a van driver for the local transit system); Ex. 3 (Karpilovsky Dep.) at 13:15 (testifying that he is a lead application specialist at a health care company).

[13] See Ex. 2 (Criollo Dep.) at 30:18-31:6 (testifying that he reviewed the FAC before filing), 97:1-2 ("I reviewed everything my attorney sent me"), 33:22-23 (testifying that he understands his job is to "represent everybody and their interests the best that I can"), 25:17-24 (describing a conflict of interest in

*Footnote continued on next page*

AWL's argument that Plaintiffs are inadequate, either because they are not pursuing damages or do not know intricate details of their injunctive relief and damages claims, is likewise misguided. Plaintiffs are pursuing damages, as the First Amended Complaint ("FAC") makes clear. Dkt. 44 (FAC), ¶ 56. AWL's representation that Plaintiff Criollo "refuted that position and stated in his deposition that he is not seeking damages," Opp. at 24 (citing Opp. Ex. B at 31:15-32:2), is *flatly untrue*. AWL's misleading excerpt stops just before this exchange: "Q. Are you asking for money damages? [Counsel objects to the form of the question.] A. Yes." Ex. 2 (Criollo Dep.) at 32:3-6.[14] Likewise, both Plaintiffs knew the two lawyers with whom they routinely interact: Gary Klinger and John Spragens. Ex. 2 (Criollo Dep.) at 10:8-11:2; Ex. 3 (Karpilovsky Dep.) at 54:2-19. The fact that they were not familiar with other attorneys on the case who never personally worked with them has no bearing on their adequacy.

## VII.   PLAINTIFFS SATISFY PREDOMINANCE.

Common issues plainly predominate here, where Plaintiffs' and Class members' claims all arise from AWL's common course of conduct, and even AWL's primary defense is itself uniform to all Class members. AWL has identified no actually individual issues, nor marshalled any evidence of such. Even if it had, "predominance is [not] determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler II*, 727 F.3d at 801. "An issue 'central to the validity

---

*Footnote continued from previous page*

his own words); Ex. 3 (Karpilovsky Dep.) at 40:4-43:12 (explaining his review of documents in connection with the lawsuit and his duties as a class representative).

[14] *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002), does not support AWL: the Supreme Court has said "that the mere fact that a named plaintiff's claim is moot does not prevent a finding that he is an adequate representative of the class." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 904–05 (N.D. Ill. 2017) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)). *Snyder* further distinguished *Culver* because the latter "noted that once the claim of the named plaintiff in that case became moot, he subsequently lost any material stake in prosecuting that particular suit." *Id.* (citing *Culver*, 277 F.3d at 912). "That is not the case here, where both [named plaintiffs] maintain interests in pursuing statutory damages under the TCPA and therefore remain highly incentivized to pursue their claims." *Id.*

of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (quoting *Dukes*, U.S. 564 at 350); *accord Chicago Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 444 (7th Cir. 2015); *Sullivan*, 2017 WL 2378079, at *9.

As with commonality, AWL suggests that its prior express consent defense "requires individualized inquiries." Opp. at 27. But it cites no evidence for this contention and, because discovery has closed, there is none. AWL argues again that fact-specific determinations will be required to determine whether each consumer actually saw its purported consent language—but as this Court already found, whether AWL's prior express consent defense is valid will be determined by the *objective* standard of whether a "reasonable consumer" would find it clear and conspicuous. *Sullivan*, 2017 WL 2378079, at *7; *see supra* Sec. IV.

Even if AWL had shown that any individualized inquiries are necessary—it has not—that alone does not defeat predominance unless "'individual questions . . . overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (citation omitted); *see also Suchanek*, 764 F.3d 750, 759 (7th Cir. 2014) ("a rule requiring 100% commonality would eviscerate" consumer class actions). "Courts have traditionally been reluctant to deny class action status as failing the predominance requirement of Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Pace v. PetSmart Inc.*, No. SACV 13-00500, 2014 WL 2511297, at * 9 (C.D. Cal. June 3, 2014) (internal quotation marks omitted). Affirmative defenses are generally not a basis for denying class status.[15]

AWL's reliance on *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL

---

[15] *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) ("[W]here common issues otherwise predominated, courts have usually certified rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses."); 7AA Wright et al., Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2015) ("[T]he action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (footnotes omitted)

4698665 (N.D. Ill. Sept. 8, 2016) and *Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841

(N.D. Ill. 2017) is misplaced.  Here, unlike those cases, Plaintiffs identified "a method by which

to ascertain consent on a class-wide basis," *Mauer*, 2016 WL 4698665, at *4—specifically

AWL's purported consent language, which was uniform as to all Class members—while AWL

produced no evidence demonstrating that consent is somehow individualized.  *Cf. Brodsky*, 269

F. Supp. 3d at 846 (decertifying a junk fax class where defendant provided "specific evidence"

demonstrating that individual contracts raised agency issues requiring individual inquiries).

## VIII.    PLAINTIFFS SATISFY SUPERIORITY.

AWL's argument against superiority due to "the individualized nature of its defenses,"

fails for the same reasons—namely, that AWL fails to show that individual inquiries are relevant

to its "reasonable consumer" prior express consent defense.  *See supra* Sec. IV.  Its argument

that Congress intended for consumers to file individual actions under the TCPA ignores that

TCPA class actions are routinely certified.[16]  Here, "the overarching liability and impact issues

are common to the class and can 'be resolved in one stroke,'" *Kleen Prod. LLC v. Int'l Paper*,

306 F.R.D. 585, 605-06 (N.D. Ill. 2015), *aff'd*, 831 F.3d 919 (7th Cir. 2016) (Leinenweber, J.)

(citation omitted).  In light of "the breadth and importance of the common issues, 'the superiority

requirement . . . poses no serious obstacle to class certification here.'"  *Id.* (citation omitted).

## IX.    CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to certify the Class.

---

[16] *See, e.g.*, *Hinman*, 545 F. Supp. 2d at 807 ("It also appears that resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

Dated:  February 23, 2018

Respectfully submitted,

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP


By:  */s/ Jonathan D. Selbin*

Jonathan D. Selbin
(admitted to the N.D. Ill. general bar)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Daniel M. Hutchinson
(admitted to the N.D. Ill. general bar)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

John T. Spragens
(admitted to the N.D. Ill. general bar)
Email:  jspragens@lchb.com
222 2nd Avenue South, Suite 1640
Nashville, TN  37210
Telephone:  (615) 313-9000
Facsimile:   (615) 313-1973

Gary M. Klinger (ARDC # 6303726)
Ryan F. Sullivan (ARDC # 6314103)
KOZONIS LAW, LTD.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com
rsullivan@kozonislaw.com

*Counsel for Plaintiffs and the Proposed Class*

1510256.6

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 23, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/John T. Spragens*

1510256.6