IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR., Individually and on Behalf of Others Similarly Situated, | |
| Plaintiffs, | Case No. 17 C 1307 |
| v. | Judge Harry D. Leinenweber |
| ALL WEB LEADS, INC., a Delaware Corporation, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Sullivan originally brought this lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), alleging deceptive marketing practices by Defendant All Web Leads, Inc. ("AWL"). Plaintiffs John Karpilovsky and Jimmie Criollo, Jr. have since stepped into Sullivan's shoes (*see,* Am. Compl., Dkt. 44), and they now move for certification of the proposed class. (Dkt. 75.) AWL contemporaneously moves to exclude Plaintiffs' expert report and testimony. (Dkt. 70.) For the reasons stated herein, the Court grants the Plaintiffs' Motion for Class Certification and denies AWL's motion to exclude.

# I.  BACKGROUND

As recited in this Court's denial of AWL's Motion to Dismiss, AWL offers services to insurance industry customers, typically insurance agents, by generating "leads." *See, Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *1 (N.D. Ill. June 1, 2017). Specifically, All Web places calls to potential purchasers of insurance coverage and then transfers those calls to its customers. (Am. Compl. ¶ 17, Dkt. 44.)  To identify "leads," All Web owns and operates various websites claiming to offer insurance quotes. (*Id.* ¶ 19.)  Upon visiting one of these websites, a consumer is directed to fill out a quote request form specific to the type of insurance of interest. (*Id.*)

The Plaintiffs maintain that they visited AWL's site and encountered the webpage now at center stage in this lawsuit. (*Id.* ¶¶ 20, 33, 40, 48.)  That webpage contained fields for the user to input personal information, including a cell phone number, and then presented a button at the bottom of the page that read "Submit." (*Id.* ¶¶ 21, 34, 41, 48.)  AWL's TCPA-required disclosure appeared in fine print below that Submit button.  (*Id.* ¶ 24.)  After entering their information into these fields and clicking Submit, Karpilovksy, Criollo, and

the other would-be Plaintiffs they seek to represent all allegedly received phone calls from AWL. (*Id.* ¶¶ 35, 43, 48.) The Plaintiffs collectively assert that by clicking Submit, they did not consent to the AWL disclosure. (*Id.* ¶¶ 25-28, 38, 46, 48.)

Two motions are now before the Court: first, a *Daubert* motion, in which Defendants seek to exclude the expert report of Alexander Young; and second, Plaintiffs' Motion for Class Certification.

## II.  DISCUSSION

### A.  AWL's *Daubert* Motion

Plaintiffs have retained Alexander Young ("Young"), who provided an expert report and then deposition testimony on the subjects of web design and typical user behavior. These are his credentials: Young is a co-founder and the Chief Strategist at ePageCity, which he describes as a "market leading creative agency that has been engaged exclusively in website design services since 1999." (Young Report at 3, Dkt. 87-1.) From that time to present, ePageCity purports to have launched over 1,000 websites and to have conducted, through an associated business, digital marketing that includes user-experience testing. (*Id.*) Young also claims to have

personally authored over 3,000 webpages, and he holds a Bachelor's degree with a double major in Computer Science and Business Administration from the University of Stellenbosch in South Africa, as well as an unspecified Master's degree equivalency from the same institution. (*Id.* at 4.)

His expert report provides three opinions: the "unchanged website opinion"; the "same experience opinion"; and the "best practices opinion." (Young Rpt. at 3, Dkt. 87-1.) Although AWL moves to exclude Young's report and testimony in full, AWL never challenges his unchanged website opinion, which essentially states that the AWL website did not materially change during the class period. (*Accord* Leirer Dep. Tr. 52:25-53:11, Dkt. 76-2 (AWL's 30(b)(6) designee agreeing that the site has not materially changed since 2013).) Young's two other opinions are presented and considered in detail below.

To lift Young's report over AWL's challenge, the Plaintiffs must show that the testimony "is the product of reliable principles and methods," which is "based on sufficient facts and data," and that Young "has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(b)-(d). In determining whether Plaintiffs

have met this standard, the Court may consider such factors as: (1) whether the methods that Young employs can be (and have been) tested, (2) whether they have been subjected to peer review and publication, (3) whether the techniques command widespread acceptance within the relevant scientific community, (4) whether there are "standards controlling the technique's operation," and (5) the "known or potential rate of error" of the methods. *See, Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993); *cf.* FED. R. EVID. 702, Advisory Committee's Notes (listing additional factors that courts have found "relevant in determining whether expert testimony is sufficiently reliable"). However, as the Supreme Court has explained, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination," and accordingly "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (emphasis in original). Further, "the test for reliability for nonscientific experts is 'flexible.'" *United States v.*

*Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (quoting *Kumho Tire*,
526 U.S. at 150).

### 1. *"Same Experience Opinion"*

In this opinion, Young recites that:

> For the entire Class Period, users of the Website
> had the same online experience, i.e. users who
> visited AWL's Website would have experienced the
> same consent procedure in which the contested
> language was placed beneath the "Submit" button
> (without alerting the users that legal disclosures
> appeared below the "Submit" button) and was
> therefore not visible to the users unless they
> scrolled down to view it.

(Young Rpt. at 3, Dkt. 87-1.)

Defendants object to the reliability of this opinion,
claiming that it is neither testable nor actually put to any
testing here. But Young did conduct testing—albeit limited—
before offering this correspondingly limited opinion. Young
began by identifying the market shares of top-performing web
browsers at the start and the end of the class period. (*Id.*
at 6.) For each of those periods, Young reports accounting
for the browsers used in 93-94% of all web visits (to any
website). (*Id.*) Next, Young sought to verify the consistency
of the user experience across these different browsers. To do
so, Young used an emulator called Browserstack, which he
describes as "an industry leading tool for emulating how

different browsers would render a webpage." (*Id.* at 9.)
Young relates that his non-litigation-related clients have
hired him to run emulations on this same program. He further
relates that companies such as Microsoft, Twitter, and AirBnB
routinely use Browserstack to test the display of their
webpages on different browsers and devices. (*Id.*) According
to Young's report, he used Browserstack to test the AWL
webpage on each of the browsers he identified as in popular
use during the relevant time periods. As the screenshots
contained within Young's report show, all of the results are
substantially similar. (*Id.* at 10-15.)

Young's methodology suffices, under the liberal
admissibility standard applied to expert testimony, to clear
the hurdle for reliability. *See, Krist v. Eli Lilly & Co.*,
897 F.2d 293, 298 (7th Cir. 1990) ("[T]he rule on expert
testimony [is] notably liberal."). Personal observation of
the kind Young made here is often deemed to be the most
reliable source of information. *Loeffel Steel Prod., Inc. v.
Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1116 (N.D. Ill.
2005) (citing *Daubert*, 509 U.S. at 590 n. 9). "Experts of all
kinds tie observations to conclusions through the use of what
Judge Learned Hand called 'general truths derived from . . .

specialized experience.'" *Kumho Tire*, 526 U.S. at 148 (citation omitted). Such observations are the basis of Young's "same experience" opinion, and they could have been empirically validated or refuted by additional testing on Defendants' part if they thought it necessary. *See, Clark v. Takata*, 192 F.3d 750, 758 (7th Cir. 1999) (opining that hands-on testing can be a reasonable methodology). AWL's gripe that Young could not have tested "every possible combination" of browsers and devices goes to weight, not reliability, and does not agitate for striking Young's report. (*Daubert* Reply at 4, Dkt. 95.)

### *2. "Best Practices Opinion"*

In this opinion, Young recites that: "The format for the Website did not comply with industry 'best practices' . . . [for] [e]nsuring that users have notice of the terms." (Young Rpt. at 3, 18, Dkt. 87-1.) Young goes on to recite what these "best practices" are, according to his knowledge and experience. He represents, among other things, that consent language must be conspicuous, explicit, and clearly visible, which Young explains may be accomplished either by making the terms "visible ahead of the Submit button" or else by requiring users to click a box signifying their recognition

and acknowledgment of the terms prior to clicking Submit. (*Id.* at 18.)

Clearly, then, the basis of Young's opinion is not bolstered by empirically tested data. But expert testimony "is not unreliable simply because it is founded on [a witness's] experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting FED. R. EVID. 702) (emphasis in original). Yet AWL raises other objections as well. First, AWL complains that Young's opinion nowhere cites to the best practices for presenting consent language *in the TCPA context*. But Young does not profess to recite such specific practices; indeed, Young forthrightly admitted in his deposition that he is not aware of TCPA-specific consent standards. (*See,* Young Dep. Tr. 235:24-236:21, Dkt. 70-2.) If AWL believes that lack of specificity renders Young's opinion less persuasive or less relevant, it may argue as much; but these contentions do no heavy lifting for AWL now, where the issue is the report's reliability. Next, Defendants point out that when Young identifies two websites as support for his characterization of

"best practices," Young fails to explain why those websites, particularly, are worthy of recognition or the practices they espouse meritorious. At his deposition, Young explained that choosing these sites over alternatives made no difference because "[t]hey all have the same story." (*Id.* 242:17-243:2.) According to Young, then, these websites accord with what all others of their ilk will demonstrate: The best practices for ensuring a user is aware of a site's terms comport with the practices recited in Young's opinion. If AWL was incredulous, it could have produced its own, competing expert—which it did not—or it may challenge Young's conclusions and thus the weight the finder of fact should afford them. But AWL's objection to Young's exemplars does not sufficiently undermine the reliability of his opinion, given the breadth of professional experience Young has in website design.

One note further on Young's opinions: Defendants also object, though not in so many words, to what the Court will refer to as Young's "typical user opinion." Though this opinion does not appear as a discrete conclusion in his report, Young testified at his deposition that a typical user of a generic website will "stop scrolling" once she sees the Submit button. (*Id.* 107:22-109:2.) The reasonable

implication of this testimony is that because AWL's terms only appear below the Submit button, a typical AWL website user would stop scrolling down before reaching the AWL terms. As with Young's "best practices opinion" described above, the basis for the "typical user opinion" is Young's considerable experience in the website design industry. He admits he conducted no empirical testing of how typical users *of AWL's site* actually behaved. But again, Young may present expert opinions predicated upon his years of experience in web design. *See, Metavante Corp.*, 619 F.3d at 761. AWL's objections to Young's method once more go to weight and not admissibility. *Cf. Fletcher v. Doig*, 196 F. Supp. 3d 817, 824 (N.D. Ill. 2016).

For these reasons, Defendants' Motion to exclude Young's expert report and testimony is denied.

### B. Plaintiffs' Motion for Class Certification

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citation omitted). Rule 23(a) requires Plaintiffs to prove numerosity, typicality, commonality, and adequacy of

representation. *Id.* Plaintiffs in this case seek certification under Rule 23(b)(3), which also requires them to prove that: (1) the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods of resolving the controversy. *Id.* In conducting the class certification analysis, the Court need only consider the evidence submitted by the parties and determine whether Plaintiffs have proven each of Rule 23's elements by a preponderance of the evidence. *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) (citing *Messner*, 669 F.3d at 811), *aff'd sub nom.*, *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016). Finally, Plaintiffs must prove their proposed class is "ascertainable," meaning the class is clearly defined and its parameters based on objective criteria. *See, Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

Plaintiffs seek certification for the class of all individuals defined as:

> All persons within the United States who filled out and submitted an insurance quote form on Defendant's website www.affordable-health-insurance-plans.org and then received a non-emergency telephone call from All Web Leads, or any party acting on its behalf, to a cellular telephone through the use of

an automated telephone dialing system or an
artificial or prerecorded voice.

(Am. Compl. ¶ 51, Dkt. 44.)

## 1. *Threshold Issues*

In its opposition to class certification, AWL mainly
wields a single weapon: consent. It contends again and again
that because some or most of the proposed class might have
consented to receive calls from AWL, AWL cannot be on the hook
for many of the alleged TCPA violations, and the Court will
have to muddle through a cumbersome and individualized inquiry
to sort out which class members, if any, actually have a good
claim. This is not AWL's first go-round with this argument;
it raised the same thing in its earlier Motion to Dismiss,
arguing that the Court should strike the proposed class even
then. The Court refused to do so at that early stage, and
observed:

> [The proposed class comprises] individuals each of
> whom engaged in the same consent procedure . . .
> filling out the quote form, clicking "Submit," and
> then receiving an autodialed cell phone call. Thus,
> absent some other interface with All Web, each
> putative class member gave the same consent; the
> ability of All Web to invoke consent as an
> affirmative defense to each class member is uniform;
> and determining the legal efficacy of this consent
> under the TCPA "will resolve an issue that is
> central to the validity of each one of the claims in
> one stroke."

*Sullivan*, 2017 WL 2378079, at *9 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). AWL thus learned of the Court's perspective on this question back in June 2017, and yet in the wake of that opinion, AWL took no steps to shore up its argument. The Plaintiffs, however, retained an expert, Young, who testified that the AWL website was not materially changed during the class period and, for that reason, all members of the proposed class experienced the same information-submission and click-through procedure when they used AWL's website. (*See, supra,* at Parts II-A, II.A.1.) AWL did not retain a rebuttal expert nor in any other fashion produce evidence showing that any member of the class actually consented to the AWL terms.

That shortcoming matters. Consider Rule 23(b)(3)'s predominance requirement: "While it is plaintiff's burden to meet the predominance test," opposition to predominance "based on theory, not evidence, is not a weighty objection." *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016). Thus, where the defendant's objection to class certification fails to set forth specific evidence "and instead only makes vague assertions about consent," individualized issues regarding consent will not predominate

over common questions of law or fact." *Toney v. Quality Res.,
Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) (citation omitted).
Rather than produce any specific evidence, AWL serves up a
banquet of lawyerly free association:  AWL asserts, without
evidence, that Young's typical user opinion—again, which
states that typical users do not scroll below "Submit"
buttons—does not much matter because some users might have
used screens large enough to display the entire webpage,
disclosure and all, without any need to scroll down.  AWL also
claims that contrary to Young's opinion, "research concludes
that consumers do, in fact, scroll." (Cl. Cert. Resp. at 18,
Dkt. 87.)  AWL fortifies this opinion with two from-the-blue
citations to online articles which purportedly suggest
consumers "know to scroll to navigate a webpage's content."
(*Id.* at 19.)  There is more.  AWL next claims that because 2.3
percent of the U.S. population is visually impaired, the class
definition fails to account for a not-insignificant portion of
the class that uses "screen readers," which presumably read
aloud the content on a webpage. (*Id.* at 20.)  AWL does not
bother to include within this purely legal conjecture what
proportion of the visually-impaired population actually uses
screen readers nor any explanation for how these readers work,

*i.e.,* whether they automatically read the fine print on every web page, or not.

As detailed further below, AWL swings its consent defense as a cudgel against nearly all of the Rule 23 requirements. But for this defense to have any traction at the class certification phase, the defendant asserting it must produce specific evidence showing that a significant percentage of the proposed class provided consent. *See, e.g.*, *Toney*, 323 F.R.D. at 587 (remarking that without specific evidence, consent defenses cannot defeat Rule 23 predominance); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013) (St. Eve, J.) (rejecting defendant's consent objection to class definition because defendant failed to offer specific evidence of consent). "Mere speculation," which is all AWL has offered here, will not suffice. *Toney*, 323 F.R.D. at 587.

Further, AWL not only failed to pony up specific evidence of consent, its fact-intensive speculations miss the mark entirely. TCPA disclosures must be "clear and conspicuous." 47 C.F.R. § 64.1200(f)(8)(i). That standard is not a user-dependent inquiry, but rather asks whether a notice would be "apparent to the *reasonable consumer*." *Sullivan*, 2017 WL

2378079, at *7 (citing 47 C.F.R. § 64.1200(f)(3) (emphasis added)). As such, AWL can spin its wheels about screen sizes and hearing aids all it likes, but those unsupported suppositions do not help their class certification rejoinder one whit.

In short: AWL could have strengthened its position by providing specific evidence of consent or introducing an expert report of its own that contradicted Young's conclusions. Having done neither, AWL now tries to fashion an escape hatch for itself from little more than legal brainstorming. That will not do. Consent remains a common issue and the claims of the whole class might well rise or fall with that determination. *See, Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016) (citation omitted); *see also, Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013). But without more from AWL, their consent-oriented musings pose little rebuttal to Plaintiffs' Motion for Class Certification.

One other threshold issue worth addressing: AWL also molds their consent defense into an attack on standing. If most proposed class members consented, AWL reasons, then most members have no TCPA claim and thus no cognizable injury this

Court may redress. True, a class "should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (citation omitted). But nothing is "apparent" here, where these proposed members' consent is purely hypothetical. Congress designed the TCPA to provide a private right of action and statutory damages to individuals who receive unsolicited telephonic advertisements. *See, Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013). Those are exactly the injuries alleged here, and they suffice to confer standing on the Plaintiffs.

### 2. *Rule 23(a)*

#### a. *Numerosity*

The proposed class contains approximately two million members. Likely recognizing that a class of this size is "so numerous that joinder of all members is impracticable," AWL wisely does not contest numerosity. Clearly, the class is sufficiently numerous. *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of forty was "a sufficiently large group to satisfy Rule 23(a)"), *abrogated on other grounds as*

*recognized in Krieger v. Gast*, No. 98 C 3182, 1998 WL 677161, at *6-7 (N.D. Ill. Sept. 22, 1998)).

### b. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," *Dukes*, 564 U.S. at 349-50 (internal quotation marks omitted), and that their "claims 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 551 (7th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350). Here, all of the allegedly TCPA-violative calls were made by AWL's autodialers to cell phone numbers obtained after each Plaintiff clicked through the same procedure on the AWL website. Still, AWL strenuously objects, arguing that a highly individualized inquiry will prove necessary to determine consent. *See, e.g., Kljajic v. Whirlpool Corp.*, No. 15-cv-05980, 2017 WL 1862640, at *22 (N.D. Ill. May 9, 2017) (holding that plaintiffs failed to show commonality where there was no common method of proof to facilitate a "once-and-for-all" decision for all would-be class claims).

There cannot be a common method of proof here, says AWL, because consent will turn upon whether any given user had to scroll down on her particular screen to reveal the consent disclosure and, if so, whether that user actually scrolled down. AWL is correct to say that courts "determine whether issues of individual consent defeat commonality . . . in TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." (Cl. Cert. Resp. at 16, Dkt. 92 (citing *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16-cv-02513, 2018 WL 488257, at *9 (N.D. Ill. Jan. 18, 2018).) But where, as here, the defendant does not produce any specific evidence of consent, the Court has no basis to evaluate whether that unavailable evidence undermines commonality. Absent any such evidence, all that remains are the common contentions shared among class members that after each of them completed the same submit procedure on AWL's website, they each received unsolicited calls from AWL's autodialers. Thus, each Plaintiff's claim presents a common question: whether AWL's call violated the TCPA. Perhaps AWL has a consent defense to those claims, but without specific evidence now demonstrating the merit of that proposed defense, its adjudication will have to wait. The proposed class

satisfies the commonality requirement. *Cf. Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 74 (N.D. Ill. 2016) (citation omitted) ("[S]ome degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified.").

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.*

Once again, AWL contends that because many of the class members consented to receive AWL's call, the class is chock-full of people without valid TCPA claims and no class should be certified "if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (citation omitted). But typicality "should be determined with reference to [the defendant's]

actions, not with respect to particularized defenses [the defendant] might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). The named Plaintiffs allegedly engaged in the same conduct as the proposed class members and then received substantially similar calls from AWL; this clears the typicality hurdle.

### d.  Adequacy

Adequacy involves two inquiries: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citation omitted). A proposed class representative is inadequate if his interests are "antagonistic or conflicting" with those of the absent class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), or if he is subject to a defense not applicable to the class as a whole, *see, CE Design*, 637 F.3d at 726.

First, AWL presents a repackaged version of the consent argument. The named Plaintiffs aver that they never actually

saw the consent disclosures, but other would-be class members might have. According to AWL, this possible distinction could subject the named Plaintiffs to "additional defenses" that do not necessarily apply to the rest of the class. (Cl. Cert. Resp. at 25, Dkt. 92.) To the extent these "additional defenses" contemplate the same consent defense already discussed at length in this opinion, AWL's argument again ignores that whether a TCPA disclosure is "clear and conspicuous" is an objective inquiry conducted from the perspective of a reasonable consumer. *See, Sullivan*, 2017 WL 2378079, at *7) (citing 47 C.F.R. § 64.1200(f)(3)). If AWL has an entirely different defense in mind, however, it should have articulated it. "The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995), *as amended*, (Apr. 7, 1995). This first argument fails.

AWL marshals two other arguments against the adequacy of the named representatives: (1) named Plaintiff Criollo is not seeking damages, so he is presumptively inadequate; and (2) Criollo does not understand the nuances of his case. These contentions are meritless. First, Defendants cite Criollo's deposition as evidence that he is not seeking damages, but

they wholly ignore the very next lines in the transcript, where Criollo confirms that he actually is. (*See,* Cl. Cert. Reply at 18, Dkt. 96 (citing Criollo Dep. Tr. 31:15-32:6).) Second, nowhere in Rule 23 or the case law applying it is there a requirement that named plaintiffs have a firm grasp of the legal intricacies of their cases. That is what adequate counsel is for. Criollo will not be faulted nor the proposed class penalized because the named Plaintiff does not happen to have a law degree. The named Plaintiffs do not have any interests antagonistic to the proposed class and there is no reason proposed by AWL or suggested anywhere else in the record to suspect that Plaintiffs' counsel are at odds with the proposed class's best interests.

As to the adequacy of counsel, Plaintiffs represent that their present counsel, Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and Kozonis & Associates Ltd. ("Kozonis"), are experienced class-action practitioners who have litigated dozens of TCPA cases, including several large settlements, and have been appointed to lead many such cases in this District. (*See, generally*, Selbin Decl., Dkt. 76; Klinger Decl., Dkt. 77.) AWL does not contest any of these assertions nor suggest a reason why LCHB and Kozonis fall short of being "qualified,

experienced, and generally able to conduct the proposed litigation," as required. *Wheeler v. Midland Funding LLC*, No. 15 C 11152, 2018 WL 1920254, at *4 (N.D. Ill. Apr. 24, 2018) (quoting *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977)). The Court agrees that these counsel are capable and that the requirements for adequacy are met in this case.

### 3. *Rule 23(b)(3) Requirements*

#### a. Predominance

Under Rule 23(b)(3), questions of law or fact common to the class members must predominate over any questions affecting only individual members. "[T]he requirement of predominance is not satisfied if 'individual questions . . . overwhelm questions common to the class.'" *Butler*, 727 F.3d at 801 (7th Cir. 2013) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)). Predominance fails where "affirmative defenses will require a person by person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Bernal*, 318 F.R.D. at 75 (quoting *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 Fed. App'x 818 (7th Cir. 2007)). But again, vague assertions about consent cannot elevate alleged individualized issues above common questions of law or

fact. *See, Toney*, 323 F.R.D. at 587 (citation omitted). Finally, the predominance inquiry turns upon whether common questions predominate, not whether those questions will or are likely to ultimately be answered in favor of the class. *See, Amgen*, 568 U.S. at 459.

The Court will not beat to death AWL's unsurprising rebuttal. As above, AWL contends consent issues predominate. The Court disagrees. Because AWL produced zero specific evidence showing that some proposed members consented, AWL's ability "to invoke consent as an affirmative defense to each class member is uniform," and that defense will likely prove meritorious or ineffective against the class in full. *See, Sullivan*, 2017 WL 2378079, at *9. The key question in this case is whether the proposed class members consented by submitting their information on AWL's website. Despite AWL's inventive characterizations to the contrary, that question may be resolved in one stroke. *See, Butler*, 727 F.3d at 801 (citation omitted).

### b. Superiority

Rule 23(b)(3) also requires that a plaintiff demonstrate that a class action is superior to other available methods of adjudication. Class certification is usually considered a

superior method of adjudicating claims involving standardized conduct, and that is exactly what is at play here. *See, Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 838 (N.D. Ill. 2008). The proposed class represents two million basically identical lawsuits. Knocking them all out via a single, representative class would be an efficient use of judicial and party resources. *See, Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Class certification is a superior vehicle for advancing the claims at bar, and Rule 23(b)(3) is accordingly satisfied.

### *4. Ascertainability*

A Rule 23 class must be clearly defined and its parameters based on objective criteria. *See, Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The question here is not one of administrative feasibility, but rather definition: An ascertainable class is comprised of "a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660.

AWL argues the putative class is not ascertainable because it might contain a substantial number of people who consented to being called and thus have no claim under the

TCPA. *See, Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (noting that overbroad classes that contain members without valid claims fail for lack of ascertainability). AWL cites two cases in support of its position: *Jamison v. First Credit Services*, No. 12-cv-04415, 2013 WL 3872171, (N.D. Ill. July 29, 2013), and *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011) (both denying class certification on ascertainability grounds). These authorities do little to help AWL here. First, both were decided before the Seventh Circuit's opinion in *Mullins,* which expressly rejected the "heightened" ascertainability standard requiring consideration of administrative feasibility and an evaluation of the validity of the proposed members' claims. 795 F.3d at 657-58; *see, Toney*, 323 F.R.D. at 582 & n.11 (remarking that *Jamison* inappropriately applied a clear and convincing standard as opposed to the preponderance standard and, being pre-*Mullins,* was not persuasive on the issue of ascertainability"). Second, the defendants in both *Jamison* and *Vigus* made a key move that AWL never did: They both provided specific evidence of consumers' individualized consent, elevating their consent defenses beyond mere legal conjecture. *See, Toney*, 323 F.R.D.

at 582 (characterizing *Jamison*); *Sullivan*, 2017 WL 2378079, at *9 (characterizing *Vigus*).

The Plaintiffs have satisfied the ascertainability requirement under the *Mullins* standard. Beyond simply setting forth a method of identifying the class members, as is required, the Plaintiffs have actually identified, using call data provided by AWL, the approximately two million individuals who comprise the class. This satisfies Rule 23. *Cf. Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 248 (N.D. Ill. 2014) (holding that list of 930,000 phone numbers established a "sufficiently ascertainable" TCPA class).

## IV.  CONCLUSION

For the reasons stated herein, AWL's *Daubert* Motion (Dkt. 70) is denied.  Plaintiffs' Motion to Certify Class (Dkt. 75) is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:    June 25, 2018