**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR., *individually and on behalf of all others similarly situated*, | Case No. 1: 17-cv-01307 |
| Plaintiffs, | Hon. Harry D. Leinenweber |
| v. | |
| ALL WEB LEADS, INC., a Delaware corporation, | |
| Defendant. | |

**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES,
<u>COSTS, AND SERVICE AWARDS, AND MEMORANDUM IN SUPPORT</u>**

1731517.2

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     PROCEDURAL BACKGROUND.............................................................................. 2

III.    THE SETTLEMENT .................................................................................................. 4

IV.     LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS ..................................... 5

V.      ARGUMENT ............................................................................................................. 7

        A.      Class Counsel's Requested Fee Award Is Reasonable. ........................................ 7

                1.      Seventh Circuit attorney fee analysis......................................................... 8

                2.      The risk associated with this litigation justifies the requested fee
                        award of 35% of the common fund............................................................ 9

                3.      The requested fee comports with the contract between Plaintiffs
                        and Class Counsel, and typical contingency fee agreements in this
                        Circuit. ................................................................................................... 12

                4.      The requested fee reflects the fees awarded in other settlements. ........... 13

                5.      The quality of performance and work invested support the fee
                        request. .................................................................................................. 14

                6.      The stakes of the case further support the fee request. ........................... 15

        B.      The Court Should Also Award Reasonable Reimbursement for Expenses......... 16

        C.      The Incentive Award to the Class Representatives Should Be Approved........... 16

VI.     CONCLUSION........................................................................................................ 18

# **TABLE OF AUTHORITIES**

Page

## Cases

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ................................................................. 10

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
    No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ......................... 11

*Beesley v. Int'l Paper Co.*,
    No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................... 16

*Benzion v. Vivint, Inc.*,
    No. 12-61826 (S.D. Fla. Feb. 23, 2015) .................................................. 18

*Bickel v. Sheriff of Whitley Cnty*,
    No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015).................... 14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    896 F.3d 792 (7th Cir. 2018) ................................................................. 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)....................................................................... 5, 8, 16

*Chapman v. First Index, Inc.*,
    No. 09-5555, 2014 WL 840565 (N.D. Ill. March 4, 2014), *aff'd in part, vacated in part,*
    *remanded*, 796 F.3d 783 (7th Cir. 2015) ............................................... 10

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ............................................................... 17

*Desai v. ADT Security Servs., Inc.*,
    No. 11-1925 (N.D. Ill. Feb. 27, 2013) ................................................... 18

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................................. 6, 7

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ................................................................. 12

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) *aff'd*, 160 F.3d 361 (7th Cir. 1998) ...................... 6

*Golan v. Veritas Entm't, LLC*,
    No. 14- 69, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ....................... 11

*Heekin v. Anthem, Inc.*,
    No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................. 18

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................... 6, 9, 13

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................... 6

## TABLE OF AUTHORITIES
(continued)

Page

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   No. 10-4038, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) .................................................... 17

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................... 15

*In re Synthroid Mkt. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ......................................................................................... passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 7
   24 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................................... 6

*Karpilovsky v. All Web Leads, Inc.*,
   No. 17-1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ...................................................... 3

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ............................................................................................ 9, 12

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) .................................................................................. 9, 13, 14

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................................ 12

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) .............................................................................................. 10

*Martin v. JTH Tax, Inc.*,
   No. 13-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) .................................................................. 9, 13

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ......................................................................................... passim

*Pinkus v. Sirius XM Radio, Inc.*,
   319 F. Supp. 3d 927 (N.D. Ill. 2018) .................................................................................... 10

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) .................................................................................................. 6

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................... 12

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) .................................................................................................. 9

*Spicer v. Chi. Bd. Options Exch., Inc.*,
   844 F. Supp. 1226 (N.D. Ill. 1993) ....................................................................................... 16

*Sullivan v. All Web Leads, Inc.*,
   No. 17-1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017) ........................................................ 2

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ......................................................................................... 6, 9, 14

**TABLE OF AUTHORITIES**
(continued)

Page

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................................................. 12, 13

*Vergara v. Uber Techs., Inc.*,
    No. 15–6942 (N.D. Ill. Feb 26, 2018) (Dkt. 111 at 3–4) ..................................... 9, 14

*Will v. Gen. Dynamics Corp.*,
    No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..................................... 18

**Statutes**

15 U.S.C. § 1692k(a) ............................................................................................... 12

47 C.F.R. § 64.1200(a)(1)(iii) ................................................................................... 2

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................... 2

47 U.S.C. § 227(b)(3) ..................................................................................... 11, 12, 15

5 U.S.C. § 1681n(a) .................................................................................................. 12

Telephone Consumer Protection Act
    47 U.S.C. § 227 ..................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 16

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 10

1731517.2

## I.    <u>INTRODUCTION</u>

On April 9, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiffs John Karpilovsky and Jimmie Criollo, Jr. ("Plaintiffs") and Defendant All Web Leads, Inc. ("AWL"). Dkt. 157. Class Counsel's efforts created a $6,500,000, non-reversionary common fund for the benefit of approximately 534,852 persons who received an automated call to their cell phone from AWL between February 21, 2013 and April 9, 2019. Valid claimants are expected to receive at least $70 each. In addition, the settlement includes substantial non-monetary components in the form of injunctive relief and cooperation, which will allow Class Counsel to pursue other potential violations of the TCPA on behalf of settlement class members.

Class Counsel have zealously prosecuted Plaintiffs' claims over the past two years, achieving the settlement only after defeating AWL's Motion to Dismiss Plaintiff's Complaint and to Strike Plaintiff's Proposed Class (Dkt. 24); obtaining a protective order quashing AWL's subpoena to a former plaintiff and absent class member (Dkt. 60); conducting extensive discovery; twice compelling AWL to produce relevant classwide discovery (Dkt. 60, 65); defeating AWL's motion to exclude expert testimony (Dkt. 103); obtaining class certification (Dkt. 103); defeating AWL's motion to stay (Dkt. 130); preparing for summary judgment and trial; participating in two all-day mediations with a retired federal judge, and spending months of subsequent negotiations finalizing a Settlement Agreement.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $2,275,000, which represents 35% of the Settlement Fund. Class Counsel additionally seek reimbursement of their out-of-pocket costs of $221,310.14 incurred in prosecuting the case. This request should be approved because (1) it represents the market rate for this type of settlement, and (2) represents a

reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for an award of $10,000 to Plaintiffs for their work on behalf of the Class.[1]

## II.    PROCEDURAL BACKGROUND

This class action lawsuit was initiated on February 21, 2017.  Dkt. 1. The complaint alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any non-emergency call to a cell phone number using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice, without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

On March 22, 2017, AWL moved to dismiss the case and to strike the proposed class allegations.  Dkt. 7; *see also* Dkt. 10, 12, 17, & 19-1.  Following full briefing, the Court denied AWL's motion in its entirety.  *Sullivan v. All Web Leads, Inc.,* No. 17-1307, 2017 WL 2378079, at *7 (N.D. Ill. June 1, 2017) (Dkt. 24).

Plaintiffs thereafter vigorously pursued discovery from AWL both on the underlying merits and class certification issues.  Discovery was contested and hard-fought at all points.  For example, AWL served a subpoena seeking extensive discovery from a former plaintiff and absent class member.  Plaintiffs moved for a protective order and to quash the subpoena, which the Court granted.  Dkt. 51, 52, 58, 60.  Plaintiffs also filed two motions to compel AWL to

---

[1] Class Counsel have filed this brief well in advance of the August 8, 2019 final approval hearing so that it can be made available to Class Members prior to the objection and claims deadline.  A copy of this brief will be uploaded to the settlement website, https://www.awllawsuit.com, within 24 hours.

produce classwide discovery essential to Plaintiffs' claims.  Dkt. 54. 55, 62, 64.  The Court granted both motions.

Class counsel obtained and analyzed over 9,000 pages of responsive documents and data, including AWL's call list (the cell phone numbers, names and email addresses of each person called) and call data (related data and documents from AWL's databases regarding each person on the call list).  Hutchinson Decl. ¶ 33. Using that evidence, Class counsel conducted a series of depositions and worked closely with experts Alex Young and Jeffrey Hansen to secure expert reports analyzing AWL's website files and call data, respectively.  *Id.* ¶ 34; *see also* Dkt. 76-7, 76-8.

On January 12, 2018, Plaintiffs filed their Motion for Class Certification.  Dkt. 75, 76, 77, & 78.  AWL opposed the Motion and also sought to exclude the expert opinions of Mr. Young.  Dkt. 70, 92.  The parties fully briefed both issues.  Dkt. 70, 75, 76, 77, 78, 87, 92, 95, 96.  On June 25, 2018, the Court entered its Memorandum Opinion and Order denying AWL's motion to exclude Plaintiffs' expert witness and granting Plaintiffs' motion for class certification.  *See Karpilovsky v. All Web Leads, Inc.*, No. 17-1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018) (Dkt. 103).

On July 10, 2018, AWL retained new counsel.  Dkt. 106.  AWL's new counsel moved to stay this matter and vigorously opposed Plaintiffs' Class Notice Plan.  Dkt. 118, 119; *see also* Dkt. 123, 124, 129.  On October 3, 2018, the Court denied AWL's motion to stay.  Dkt. 130.  Class counsel thereafter prepared to move for summary judgment and for a class trial.  Hutchinson Decl. ¶ 39.

While Class Counsel was preparing for trial, the parties agreed to mediate with the Hon.  Wayne R. Andersen (Ret.) of JAMS in Chicago.  Hutchinson Decl. ¶ 40.  Prior to the mediation,

Plaintiffs and AWL submitted detailed mediation briefs to Judge Andersen, setting forth their respective views on the strengths of their cases. *Id.* ¶ 41. In addition, AWL provided Plaintiffs with informal discovery regarding its financial health and ability to fund a settlement. *Id.* The initial daylong mediation on August 21, 2018 did not result in settlement. *Id.* ¶ 42. The parties continued to exchange correspondence and information, including AWL's updated financial statements, loan documents, and financial forecasts. *Id.* ¶ 43.

On February 11, 2019, the parties held a second day-long mediation. Hutchinson Decl. ¶ 44. With the assistance of a mediator's proposal from Judge Andersen, the parties reached a settlement in principle. *Id.* ¶¶ 44-47.

## III.  THE SETTLEMENT

The Settlement requires AWL to pay $6,500,000 for the benefit of a Settlement Class comprised of approximately 534,852 persons who received one or more non-emergency telephone calls from All Web Leads, Inc., or any party acting on its behalf, from February 21, 2013, through April 9, 2019. Agr. ¶ 2.29.

Each Class Member will be entitled to submit a claim for a pro rata share of the Settlement Fund less the cost of Settlement Administration Expenses, Class Counsel's fees and expenses, and any Incentive Award the Court may award. Agr. ¶ 4.4. The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. Agr. ¶¶ 4.3. Notice and administration through Postlethwaite & Netterville is expected to cost less than $300,000. Hutchinson Decl. ¶ 48. Valid and timely claimants are expected to receive Cash Benefits of at least $70 00 and likely much more. *Id.* ¶ 49.

In addition to the cash benefits, Settlement Class Members will receive prospective relief, as well: AWL will ensure that changed business practices remain implemented for the duration of this Agreement, including foremost changes to the method of obtaining user consent on the AWL website www.affordablehealth-insurance-plans.org that was the subject of this Action. Agr. ¶ 4.1. AWL has also provided Class Counsel with information sufficient to investigate potential violations of the TCPA, including against Settlement Class Members, in the form of call data and sworn written testimony. Agr. ¶ 4.2.

## IV.     LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a

reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored for consumer class actions in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class; "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should

not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

## V.      ARGUMENT

Plaintiffs respectfully requests that the Court approve attorneys' fees of $2,275,000, costs of $221,310.14, and $10,000 incentive awards for Plaintiffs. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other TCPA cases and should be approved.

### A.      Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *See Florin*, 34 F.3d at 566. Class Counsel's and Plaintiffs' efforts have resulted in a $6,500,000 non-reversionary Settlement Fund and prospective relief that provides substantial, actual value to the Settlement Class. Class Members will have the opportunity to submit a claim for a Cash award estimated at $70 or more, and the Class will further benefit from changes to AWL's practices aimed at ensuring TCPA compliance in the future. In addition, Class Counsel obtained valuable information in the form of call and/or lead generation data for nine other companies that used leads developed by AWL, which may permit Class Members to receive additional compensation from subsequent litigation against those other companies. Agr. ¶ 4.2; Hutchinson Decl. ¶ 50.

Class Counsel seek attorneys' fees of 35% of the Settlement Fund, or $2,275,000, plus out-of-pocket costs of $221,310.14. Given the result obtained for the Class, and the fact that the fee request is set at the "market range," the requested fee award is presumptively reasonable. Further, the requested fee award of 35% of the total Settlement Fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in other TCPA class

cases, considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

### 1. Seventh Circuit attorney fee analysis

"Reversionary" or "claims made" settlements, where the defendant takes back any amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit. Here, however, there is a non-reversionary, "true" lump-sum cash fund of $6,500,000. *Pearson*'s discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference:

> [I]n [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id.* at 480 n.5. The class members [in *Boeing*] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id.* at 480-81. [Unlike in *Boeing*,] … [t]here is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, 772 F.3d at 782.

Here, the $6,500,000, non-reversionary common Settlement Fund presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*. Further, each Class Member has "an undisputed and mathematically ascertainable claim" to his or her share of a lump-sum judgment. And while, in a reversionary settlement like the one addressed in *Pearson*, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims," *id.*, the notice plan in *this* case (i.e., direct email and mail notice supplemented with a dedicated settlement website) presents no such issue because no money will revert to Defendant.

Here, Class Counsel's requested fee award easily satisfies the *Pearson* presumption of reasonableness: It is approximately 36.8% of the total of requested attorneys' fees plus

anticipated Settlement Class benefits—well under the 50% high-mark referenced as presumptively reasonable in *Pearson*.[2]

Class Counsel submit that this fee request is reasonable, consistent with market rates, and should be approved. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (awarding 36% of common fund in fees for the first $10,000,000 of TCPA settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in TCPA case); *Martin v. JTH Tax, Inc.*, No. 13-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund in TCPA case); *Vergara v. Uber Techs., Inc.*, No. 15–6942 (N.D. Ill. Feb 26, 2018) (Dkt. 111 at 3–4) (awarding 36% of first $10 million of net fund in TCPA case).

### 2. The risk associated with this litigation justifies the requested fee award of 35% of the common fund.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ...

---

[2] $2,275,000 Fee Award ÷ ($6,500,000 Settlement Fund - $300,000 Estimated Settlement Administration Expenses - $20,000 Incentive Awards) = approximately 0.368.

[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

This case presented unique difficulties for class certification, summary judgment, and trial, which support the fee request. For example, Defendant's consent defense to the calls at issue presented a hurdle to Plaintiff's ability to certify a Fed. R. Civ. P. 23(b)(3) class. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc*., No. 09-5555, 2014 WL 840565, at \*2 (N.D. Ill. March 4, 2014) (citing cases), *aff'd in part, vacated in part, remanded*, 796 F.3d 783 (7th Cir. 2015). While Plaintiffs prevailed on these issues, the risk was ever-present and the issues were highly contested.

Further, the law governing the calls at issue has been in a state of flux. While this action was pending, the D.C. Circuit vacated part of an FCC declaratory ruling affecting calls to wrong numbers, and which undid the FCC's prior ruling on what constituted an automatic telephone dialing system ("ATDS" or "autodialer") under the TCPA. *ACA Int'l v. FCC*, 885 F.3d 687, 695 & 706 (D.C. Cir. 2018). Some courts in this District have interpreted this ruling to effectively preclude much of what has traditionally been considered an autodialer in the industry and under longstanding TCPA precedent. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (adopting restrictive Third Circuit interpretation of what constitutes an ATDS); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (rejecting restrictive ATDS interpretation by the Third Circuit post-*ACA Int'l*). The risk presented by this uncertainty in the law was not hypothetical: Defendant moved to stay this matter based on a purportedly forthcoming FCC rulemaking regarding what constitutes an "automatic telephone

dialing system" under the TCPA, Dkt. 119, thus raising the very real possibility that this Court might rule adversely to Plaintiffs' and the Class' interests and eviscerate their TCPA claims.

Indeed, Class Counsel pursued this litigation on a contingency basis despite knowing that, even if they were ultimately successful at trial, they would likely face a lengthy appeal process or even a reduction in the amount of recovery to the Class based on the extent of statutory damages, especially where some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Golan v. Veritas Entm't, LLC*, No. 14- 69, 2017 WL 3923162, *4 (E.D. Mo. Sept. 7, 2017) (reducing amount of damages in TCPA case).

This risk was particularly acute where, as here, there exists a limited fund that precluded AWL from providing anything more than the $6,500,000 obtained in settlement. Had AWL declared bankruptcy, Plaintiffs, Class Members, and Class Counsel very likely would have received nothing.  Instead, Class Counsel obtained a substantial recovery of $6,500,000 despite the myriad risks faced.

Class Counsel assumed the risk of this litigation, including the advancement of time, costs, and expenses necessary to prosecute this matter zealously on behalf of Plaintiffs and the Class. Hutchinson Decl. ¶¶ 51-58. Given the lack of fee shifting under the TCPA, 47 U.S.C. § 227(b)(3), the uncertainty surrounding relevant law under the TCPA, and the unknown variables

in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiffs' proposed class, and whether Plaintiffs would ultimately be successful on the merits of his claims, the risk Class Counsel assumed was significant. This factor supports the requested fee award.

### 3. The requested fee comports with the contract between Plaintiffs and Class Counsel, and typical contingency fee agreements in this Circuit.

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). This contingency range is further supported by the fact that the TCPA is not fee-shifting; as such, the attorney's fee model is more akin to personal injury matters than fee-shifting cases such as those brought under the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681n(a), or the Fair Debt Collection Practices Act, *see* 15 U.S.C. § 1692k(a). This absence of fee shifting increases the risk to counsel, especially where, as here, the underlying statute places a cap on the amount of statutory damages available per violation to $500 or, at most, $1,500 at the Court's discretion upon a finding of willfulness, *see* 47 U.S.C. § 227(b)(3)—an amount that, in the absence of an

exceptionally large number of calls or class-wide recovery, would be cost-prohibitive considering the fact that, for example, the extent of possible monetary relief under the TCPA for a single, non-willful violation barely covers the cost of filing suit.

In sum, the fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. Klinger Decl. ¶ 12. This factor supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante, and should be awarded.

### 4.    The requested fee reflects the fees awarded in other settlements.

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (citation omitted).

The reasonableness of Class Counsel's fee request here is further supported by the fact that awards of more than 35% of a settlement fund are commonplace. *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, inter alia, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same).[3]

Indeed, even if this Court were to consider Plaintiff's fee request as compared to the "net settlement fund" under the *Pearson* reasonableness ratio (i.e., fee as a percentage of the fee plus total in direct benefits to the class), that 36.8% figure likewise plainly falls within the range of reasonableness in this Circuit. *See, e.g., Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of TCPA class settlement fund exclusive of expenses, administration costs, and

---

[3] The same is true of non-TCPA cases. *See, e.g., Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund).

service award); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (36% of TCPA

class settlement fund exclusive of notice/admin costs and service award); *Vergara v. Uber*

*Techs., Inc.*, No. 15–6942 (N.D. Ill. Feb 26, 2018) (Dkt. 111 at 3–4) (awarding 36% of first $10

million of TCPA class settlement fund exclusive of expenses, administration costs, and service

award). Plaintiffs respectfully submit that the success Class Counsel secured on behalf of the

Class despite the considerable obstacles and risk faced in this litigation supports the requested

fee.

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in

non-TCPA cases in this Circuit. *See, e.g.*, *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015

WL 1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund).[4]

Consequently, the requested fee award falls in line with numerous other settlements

approved as reasonable in this Circuit and it, respectfully, should be approved.

### 5. The quality of performance and work invested support the fee request.

The quality of Class Counsel's performance and time invested through substantial

discovery and adversarial negotiations to achieve a $6,500,000 Settlement Fund for the benefit of

the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In

addition to accepting considerable risk in litigating this action, Class Counsel committed their

time and resources to this case without any guarantee of compensation, whatsoever, only

achieving the Settlement after substantial litigation. Hutchinson Decl. ¶¶ 51-58. They conducted

a pre-suit investigation, defeated a motion to dismiss, propounded discovery, quashed a

subpoena and obtained a protective order, twice moved to compel, reviewed thousands of pages

---

[4] *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions but such information is "basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

of documents, took depositions, retained experts, moved for class certification, twice participated in an all-day mediation in Chicago preceded by the exchange of mediation briefs, spent months thereafter negotiating and finalizing the settlement and ancillary papers, and otherwise zealously prosecuted this action for the benefit of the Class. *Id.* ¶¶ 23-39.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *See* Hutchinson Decl. ¶¶ 5, 8-14; Klinger Decl. ¶¶ 3-7. And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the strength of the Settlement obtained for the Class, the extensive discovery and litigation, and the adversarial nature of the litigation and settlement discussions, Class Counsel respectfully submit that their experience and the quality and amount of work invested for the benefit of the Class supports the requested fee.

### 6. The stakes of the case further support the fee request.

The stakes of the case further support the requested fee award. This case involves approximately 534,852 Settlement Class Members who allegedly received nonconsensual robocalls from AWL. The amount each Settlement Class Member is individually eligible to recover is low—between $500 and $1,500 per violation, *see* 47 U.S.C. § 227(b)(3)—and thus individuals are unlikely to file individual lawsuits, especially because the TCPA does not provide for the recovery of attorneys' fees. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief.  In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

**B.**     **The Court Should Also Award Reasonable Reimbursement for Expenses.**

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

Here, Class Counsel have incurred $221,310.14 in reimbursable expenses related to (1) expert analysis of Defendant's call data, class member information, and website files; (2) deposition fees; (3) travel to court hearings, depositions, and mediation; (4) hard costs such as the mediator's fees, legal research through Westlaw and Federal Express, postage, and messengering fees; and (5) other costs such as printing, copying, and telephone charges. Hutchinson Decl. ¶¶ 59-60; Klinger Decl. ¶¶ 2, 10. These expenses were necessary to prosecute litigation of this size and complexity on behalf of the Settlement Class, and they are typical of expenses regularly awarded in large-scale class actions, based on counsel's experience. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $221,310.14.

**C.**     **The Incentive Award to the Class Representatives Should Be Approved.**

Class Counsel also respectfully request that the Court grant a service award of $10,000 to Plaintiffs for their efforts on behalf of the Class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d

1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").  Indeed, without Plaintiffs serving as Class Representatives, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-4038, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach … plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

The Class Representatives, John Karpilovsky and Jimmie Criollo, Jr., spent considerable time pursuing Class Members' claims. In addition to lending their names to this matter, and thus subjecting themselves to public attention, Plaintiffs were actively engaged in this Action. Among other things, they (1) provided information to Class Counsel for the complaint and other pleadings; (2) reviewed pleadings and other documents, including the complaint; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; (4) reviewed and approved the proposed settlement; and – most significantly – (5) submitted to extensive discovery, including the depositions.   Klinger Decl. ¶ 13.  Their dedication to this Action was notable, particularly given the relatively modest size of their personal financial stakes in this case.

Moreover, the amount requested here, $10,000, is comparable to or less than other awards approved by federal courts in this Circuit. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D.

Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (Dkt. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement).

## VI.  **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $2,275,000 in fees and $221,310.14 to reimburse their out-of-pocket costs. Class Counsel further request that the Court approve a service award to Plaintiffs in the amount of $10,000.

Dated: June 7, 2019

Respectfully submitted,

/s/ *Daniel M. Hutchinson*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

KOZONIS & KLINGER, LTD.
Gary M. Klinger
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt. Parties may access this filing through the Court's

electronic filing system.

/s/ *Daniel M. Hutchinson*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339