**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN KARPILOVSKY and JIMMIE CRIOLLO, JR., *individually and on behalf of all others similarly situated*, | Case No. 1: 17-cv-01307 |
| Plaintiffs, | Hon. Harry D. Leinenweber |
| v. | |
| ALL WEB LEADS, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................. 1

II.    STATEMENT OF THE FACTS .................................................... 2

    A.    Procedural History ........................................................... 2

    B.    The Terms of the Settlement ............................................ 4

        1.    The Settlement Class........................................... 4

        2.    Limited Fund Settlement..................................... 5

        3.    Monetary Relief for Settlement Class Members......................................................... 5

        4.    Injunctive Relief and Practice Changes ............. 6

        5.    Settlement Cooperation....................................... 6

        6.    Class Release ...................................................... 7

        7.    Class Representative Service Awards ................. 7

        8.    Attorneys' Fees and Costs .................................. 7

        9.    Settlement Administration .................................. 8

        10.    Class Notice For Settlement Purposes Only ................................................. 8

III.    CLASS NOTICE WAS DISSEMINATED TO THE ENTIRE CLASS, NO OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO SUBMITTED A CLAIM WILL RECEIVE PAYMENTS ............................................. 8

    A.    Direct Individual Notice Was Disseminated via E-Mail and, Where Applicable, U.S. Mail ...................................................... 9

    B.    CAFA Notice .................................................................... 10

    C.    Zero Objections, Limited Exclusions and a Reasonable Claims Rate................. 11

IV.    FINAL APPROVAL IS WARRANTED................................... 12

    A.    The Settlement Approval Process ..................................... 12

    B.    The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved........................................................... 15

        1.    The Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case......................... 16

            a.    Diverse and substantial legal and factual risks weigh in favor of settlement. ................................... 16

            b.    The monetary terms of this Settlement are extraordinary compared to other TCPA class action settlements....................... 18

        2.    There Is No Opposition to the Settlement................................ 21

## TABLE OF CONTENTS
(continued)

**Page**

3.     Continued Litigation is Likely to be Complex, Lengthy, and Expensive ........................................... 21

4.     Class Counsel Strongly Endorse the Settlement ..................................... 22

5.     The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval ............................. 22

6.     The Settlement is Reasonable in Light of the Requested Attorneys' Fees.    23

C.    The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved ................................................................. 26

D.    The Settlement Class Should be Finally Certified. ............................................ 26

V.    CONCLUSION ........................................................................ 27

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.*,
   No. 15-cv-03562, Dkts. 85, 85-1 (N.D. Ga.) .......................................... 19

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .............................. 19

*Aranda v. Caribbean Cruise Line*, Inc.,
   No. 12 C 4069, 2017 WL 1369741, 9 (N.D. Ill. Apr. 10, 2017) ........................... 24

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ...................................................... 12, 13, 15

*Arthur v. SLM Corp.*,
   No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012) ........................................ 11

*Bayat v. Bank of the W.*,
   No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...................... 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................ 23

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................. 25, 26

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   No. 11-cv04462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........................ 24, 26

*Cullan & Cullan LLC v. M-Qube, Inc.*,
   No. 8:13CV172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016) ........................... 10

*Davenport v. Discover Financial Services*, *et al.*,
   No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) ................................ 11

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ............... 18

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*,
   No. CV 15-0590-KD-B, 2016 WL 6573981 (S.D. Ala. Nov. 4, 2016) ................... 10

*Garret, et al. v. Sharps Compliance, Inc.*,
   No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ....................... 19

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ................................................ 18

*Golan v. Veritas Entm't*, LLC,
   No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) *aff'd sub nom. Golan v.*
   *FreeEats.com, Inc.*, No. 17-3156, 2019 WL 3118582 (8th Cir. July 16, 2019) ...................... 20

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Grady v. de Ville Motor Hotel, Inc.*,
   415 F.2d 449 (10th Cir. 1969) .............................................. 18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................... 18

*Heekin v. Anthem, Inc.*,
   No. 05-cv01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .......................... 26

*Holmes v. Roadview, Inc.*,
   No. 15-CV-4-JDP, 2016 WL 1466582 (W.D. Wis. Apr. 14, 2016) ......................... 15

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................... 10, 13, 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) .......................................... 13, 16

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................... 18, 24

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .............................................. 24

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..................................... 22

*In re Northfield Labs., Inc. Sec. Litig.*,
   No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ............................ 13, 14

*In re Sw. Airlines Voucher Litig.*,
   No. 110CV-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)............................. 26

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .............................................. 24, 25

*In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).................................. 15

*International v. FCC*,
   885 F.3d 687 (D.C. Cir. 2018) ............................................. 16

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .............................................. 12, 15

*Karpilovsky v. All Web Leads, Inc.*,
   2018 WL 3108884 (N.D. Ill. June 25, 2018) ..................................... 3, 25

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)........................................... 13

*Martin v. JTH Tax, Inc.*,
   No. 13-cv-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) .................................. 25

**TABLE OF AUTHORITIES**
(continued)

*McKinnie v. JP Morgan Chase Bank, N.A.,*
    678 F. Supp. 2d 806 (E.D. Wis. 2009)...................................................................... 22

*Mendez v. C-Two Grp., Inc.*,
    No. 13-CV-05914-HSG, 2017 WL 2861118 (N.D. Cal. July 5, 2017) ..................... 10

*Mohamed v. Off Lease Only, Inc.*,
    No. 15-CV-23352-CIV, 2018 WL 398326 (S.D. Fla. Jan. 12, 2018)........................ 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................................. 10

*Palma v. Metropcs Wireless, Inc*.,
    No. 8:13-CV-698-T-33MAP, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014)............. 10

*Pearson v. NBTY, Inc*.,
    772 F.3d 778 (7th Cir. 2014) .................................................................................. 25

*Perez v. Asurion Corp*.,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................... 11

*Pinkus v. Sirius XM Radio, Inc.*,
    319 F. Supp. 3d 927 (N.D. Ill. 2018) ...................................................................... 16

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015).......................................................................... 11

*Pozo v. Stellar Recovery Collection Agency, Inc.*,
    2016 WL 7851415 (M.D. Fla. Sept. 2, 2016)........................................................... 16

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ............................................................................ 23, 25

*Rose v. Bank of Am. Corp.*,
    Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ....... 19

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................... 21

*Stuven v. Texas De Brazil (Tampa) Corp*.,
    No. 8:12–cv–1283–T–24TGW, 2013 WL 610651 (M.D. Fla. Feb. 19, 2013)......... 10

*Sullivan v. All Web Leads, Inc.*,
    2017 WL 2378079 (N.D. Ill. June 1, 2017) ......................................................... 2, 17

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .................................................................................... 11

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ................................................................................... 24

*Synfuel Techs, Inc. v. DHL Express (USA), Inc*.,
    463 F.3d 646 (7th Cir. 2006) ................................................................................... 16

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Watson v. Jimmy John's, LLC*,
   No. 15 C 6010, 2016 WL 106333 (N.D. Ill. Jan. 5, 2016) ...................................................... 10

*Wilkins v. HSBC Bank Nev., N.A.*,
   2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................................................. 18

*Wright v. Nationstar Mortg. LLC*,
   No. 14 C 1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016) ................................................. 24

**Statutes**

28 U.S.C. § 1715 ............................................................................................................................ 10

47 U.S.C. § 227 ................................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23(c)(2)(A) ............................................................................................................ 10

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................................................ 13

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................................ 14

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 14, 15

**Treatises**

Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* (4th ed. 2002) .............................................................. 12, 14, 18

*Manual for Complex Litigation* (4th ed. 2004) .............................................................. 10, 13, 14

# I.    <u>INTRODUCTION</u>

After more than 2.5 years of adversarial, hotly contested litigation, including exhaustive discovery and motion practice, Plaintiffs John Karpilovsky and Jimmie Criollo, Jr. (together, "Plaintiffs") reached a proposed class settlement with Defendant All Web Leads, Inc. ("AWL") to resolve all claims in this class action lawsuit alleging that AWL unlawfully placed telemarketing calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227

The Settlement, which was preliminarily approved by this Court on April 9, 2019, requires AWL to pay a total of $6,500,000 in cash into a Settlement Fund, which will be dispersed pro rata to each of the Settlement Class Members with a Valid Claim. Not a single penny of the Settlement Fund will revert to AWL. In addition, the Settlement includes two important non-monetary provisions in the form of injunctive relief and cooperation, which has allowed Class Counsel to investigate other potential violations of the TCPA, including against Settlement Class Members. This is an excellent Settlement, considering the risks, uncertainties, burden, and expense associated with continued litigation – including the substantial risk of non-payment based on AWL's financial condition.

After the Court granted preliminary approval, Notice was issued via e-mail to all Settlement Class Members using contact information obtained in discovery. For Settlement Class Member to whom e-mail notice was undeliverable, Notice was also issued via U.S. Mail. The Notice Program was highly successful by any measure, reaching 99.58% of Settlement Class Members with individual direct notice. Each Settlement Class Members who submitted a Valid Claim will receive an estimated payment of at least $500.00—an excellent result that is well-above the range of prior TCPA settlements. Perhaps unsurprisingly, therefore, after receiving

thousands of calls and hits to the Settlement website, *zero* Settlement Class Members objected to the Settlement.

Plaintiffs respectfully submit that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct. Plaintiffs now seek final approval of the Settlement and final certification of a nationwide settlement class. Plaintiffs submit that this Settlement is an excellent result for the Class, and satisfies all criteria for final settlement approval under Seventh Circuit law. Plaintiffs therefore respectfully request that the Court grant their motion.

## II.     STATEMENT OF THE FACTS[1]

### A.     Procedural History

This class action lawsuit was initiated on February 21, 2017. Dkt. 1. AWL subsequently filed a motion to dismiss the case arguing primarily that Plaintiff provided his prior express consent to receive the phone calls at issue when he provided his personal information on AWL's health insurance website, www.affordable-health-insurance-plans.org (the "Website"). Dkt. 12. The Court denied AWL's Motion in its entirety. Dkt. 24. The Court held that Plaintiff plausibly alleged the Website's consent language, which AWL claimed gave it authorization to place millions of autodialed calls to class members, was legally unenforceable. *See Sullivan v. All Web Leads, Inc.,* No. 17-cv-1307, 2017 WL 2378079, at *7 (N.D. Ill. June 1, 2017) (Leinenweber, J.) (denying motion to dismiss).

Following the Court's denial of AWL's motion to dismiss, Plaintiffs vigorously pursued discovery from AWL both on the underlying merits and class certification issues. *See* Doc. 155-

---

[1] Sections of this brief discussing issues that have not changed since Plaintiffs filed their motion for preliminary approval were adapted from Plaintiffs' memorandum of law in support of preliminary approval.

3 (hereafter "Hutchinson Decl.") ¶ 3.  Plaintiffs served interrogatories and document requests and deposed two Fed. R. Civ. P. 30(b)(6) corporate representatives from AWL.  *Id.*  Plaintiffs also filed two motions to compel against AWL that were granted in their entirety, culminating in the production of over 9,000 pages of responsive documents, including AWL's call list, (the cell phone numbers, names and email addresses of each person called) and call data (related data and documents from AWL's databases regarding each person on the call list).  *Id.*

On December 1, Plaintiffs disclosed the expert reports of Alex Young and Jeffrey Hansen.[2]  Thereafter, Plaintiffs filed their Motion for Class Certification on January 12, 2018.  Dkts. 75-78.  AWL opposed the Motion and also sought to exclude the opinions of Plaintiffs' expert witness Alex Young.  Dkts. 70, 92.  On June 25, 2018, the Court entered its Memorandum Opinion and Order denying AWL's motion to exclude Plaintiffs' expert witness and granting Plaintiffs' motion for class certification.  *See Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018) (Leinenweber, J.).

Following the Court's Order, the Court held a status hearing with the parties on July 11, 2018.  Dkt. 108.  At that hearing, the parties informed the Court they had agreed to a mediation date with the Hon. Wayne R. Andersen (Ret.) of JAMS in Chicago.  Hutchinson Decl., ¶ 5.  Prior to the mediation, Plaintiffs and AWL submitted detailed mediation briefs to Judge Andersen, setting forth their respective views on the strengths of their cases.  *Id.* at ¶ 6.  In addition, AWL provided Plaintiffs with informal discovery regarding its financial health and ability to fund a settlement.  *Id.*  Although the initial daylong mediation conference did not result in settlement, the parties continued to exchange correspondence information with each other and the mediator regarding the possibility of settlement, which resulted in a second daylong mediation on

---

[2] Messrs. Young's and Hansen's opinions can be found at Dkts. 76-7, 76-8.

February 11, 2019. *Id.* at ¶¶ 8-9. In particular, prior to that second mediation, AWL produced additional informal discovery regarding AWL's finances and ability to fund a settlement. *Id.* at ¶ 8. AWL then furnished to Plaintiffs' counsel updated financial statements, loan documents and financial forecasts to allow Plaintiffs' counsel to further evaluate the case. *Id.*

After a second day-long meditation, and with the assistance of Judge Andersen, the parties were able to reach a settlement in principle. *Id.* at ¶¶ 9-10.

Thereafter, on April 9, 2019, the Court entered an Order granting preliminary approval to the proposed Settlement. Doc. 157.

### B. The Terms of the Settlement

The Settlement's details are contained in the Settlement Agreement ("Agreement") signed by the parties. *See* Doc. 155 at Ex. 1. The Agreement's key terms are summarized below:

#### 1. The Settlement Class

The Settlement Class is defined as follows:

> All persons listed in Exhibit 1,[3] which comprises persons within the United States who received one or more non-emergency telephone calls from All Web Leads, Inc., or any party acting on its behalf.

Agr. ¶ 2.29. The Settlement Class is comprised of approximately 534,852 individuals who received one or more calls from AWL during the Class Period. The "Class Period" is defined as February 21, 2013, through the date of Preliminary Approval. *Id.* at ¶ 2.10. Pursuant to the Court's preliminary approval Order, Settlement Class Members were given Notice by the

---

[3] Due to its size, Exhibit 1 to the Settlement Agreement has been submitted manually to the Court with an ECF cover page so indicating.

settlement administrator via email or first-class mail, and a designated settlement website. *Id.* at ¶¶ 8.2-8.3.

### 2. Limited Fund Settlement

AWL has submitted evidence to Class Counsel to establish the appropriateness of a limited fund class action under Rule 23(b)(1)(b) of the Federal Rules of Civil Procedure. *See* Hutchinson Decl., ¶¶ 2, 7; *see also* Doc. 155-1 at 23-24. In particular, AWL has submitted financial information that establishes that the total of the aggregated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all claims; and that the whole of the inadequate fund should therefore be devoted to the overwhelming claims. *Id.*

### 3. Monetary Relief for Settlement Class Members

The settlement calls for AWL to create a non-reversionary cash settlement fund of $6,500,000. Agr. ¶ 2.32. Because AWL does not currently possess the financial resources to pay $6,500,000 now, *see* Agr. ¶ 4.5, AWL will pay the Settlement Fund to the Claims Administrator according to the following schedule over time:

      a.    $1,500,000, less any amounts paid to the Claims Administrator pursuant to section 7.3 of the Settlement Agreement, on the Initial Funding Date;

      b.    $2,000,000 by no later than January 7, 2021;

      c.    $1,000,000 by no later than January 9, 2023; and

      d.    $2,000,000 by no later than January 7, 2025.

This structure will allow AWL to fund the Settlement Fund fully without in any way prohibiting or restricting AWL from continuing to pay operating expenses or its obligations to its lender group. Agr. ¶ 4.5.

The Settlement Fund will be allocated as follows: After the Initial Funding Date, the

Claims Administrator will distribute payments of settlement costs approved by the Court, which include the costs of notice and claims administration, payment to Class Counsel of their first *pro rata* payment of any attorneys' fees and expenses that this Court may approve, and any incentive awards to Class Representatives that this Court may approve.  Agr. ¶ 7.4. With the remaining funds from the Initial Funding Date, Cash Awards will be distributed equally on a *pro rata* basis to all Settlement Class Members who submit a Valid Claim.[4]  *Id.* Thereafter, following each subsequent payment by AWL into the Settlement Fund as set forth in (b)-(d) above, the Claims Administrator will pay to Class Counsel their expenses and the *pro rata* share of attorneys' fees ordered by the Court, reimburse itself for any unreimbursed Settlement Administration costs and then distribute Cash Awards equally on a *pro rata* basis to all Settlement Class Members who submit a Valid Claim.  *Id*.  If any checks remain uncashed after 180 days after the additional distribution(s), the final uncashed amounts will be paid to Doctors Without Borders, St. Jude Children's Research Hospital, and/or another mutually agreeable non-profit organization approved by the Court in which the Parties represent that they do not have any financial interest or otherwise have a relationship that could create any conflict of interest.  *Id*.

### 4.      **Injunctive Relief and Practice Changes**

AWL will also ensure that changed business practices remain implemented for the duration of this Agreement, including foremost changes to the method of obtaining user consent on the AWL website www.affordablehealth-insurance-plans.org that was the subject of this Action.  Agr. ¶ 4.1.

### 5.      **Settlement Cooperation**

AWL has provided Class Counsel with non-public information sufficient to investigate

---

[4] A Settlement Class Member may receive additional *pro rata* distributions arising from checks that were not cashed within 180 days of issuance.

potential violations of the TCPA, including against Settlement Class Members. Such information includes call and/or lead generation data and sworn written testimony from AWL, including but not limited to, calling platforms it used to place the calls during the Class Period. Agr. ¶ 4.2. Class counsel have analyzed this information and found it to be valuable in their investigation of potential TCPA violations against Settlement Class Members.

### 6. Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release, as to the Released Parties, any and all federal, state, or common law claims "that arise out of or relate in any way to this Action or the facts that give rise to this Action." Agr. ¶ 13.1.

### 7. Class Representative Service Awards

The Class Representatives ask the Court to award them service awards of $10,000 each in light of the time and effort they have personally invested in this Action in order to pursue class claims. AWL does not object to such incentive payments. The Settlement is not contingent on the Court's granting of such an award. Agr. ¶ 5.2.

### 8. Attorneys' Fees and Costs

Class Counsel seek an award of attorneys' fees of no more than 35% of the common fund and costs. As addressed in Class Counsel's motion for attorneys' fees (Doc. 162), Seventh Circuit courts commonly award even higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in litigating this action. The Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Agr. ¶ 5.1.

9.    **Settlement Administration**

All costs of notice and claims administration will be paid from the Settlement Fund.  The Court has appointed Postlethwaite & Netterville to administer the Settlement. Agr. ¶ 2.6.

10.    **Class Notice For Settlement Purposes Only**

Per the Agreement, within thirty (30) days of entry of the Preliminary Approval Order, the Claims Administrator issued Class Notice via email to all Settlement Class Members in the Notice Database.  Agr. ¶ 8.1.  For any email Notice for which the Claims Administrator received a "bounce back" or other automated notification that the email was not delivered, the Claims Administrator used best efforts to determine the last known address of the Settlement Class member, as set forth in AWL's records, and subject to confirmation or updating as follows: (i) the Claims Administrator checked each address against the United States Post Office National Change of Address Database, (ii) for each mailing returned as undeliverable and with no forwarding address provided, the Claims Administrator conducted a skip trace search, utilizing a third-party vendor database such as LexisNexis, using the corresponding telephone number in AWL's records, and, provided a reasonable match was found showing a new address, updated the address accordingly, (iii) the Claims Administrator updated addresses based on any forwarding information received from the United States Post Office, and (iv) the Claims Administrator updated addresses based on verified requests received from persons in the Settlement Class.  The Claims Administrator promptly re-mailed the Notices to the updated addresses provided under scenarios ii, iii, and iv above.  Further, the Claims Administrator established and maintained a Settlement Website.  *Id.* at ¶ 8.2.

III.    **CLASS NOTICE WAS DISSEMINATED TO THE ENTIRE CLASS, NO OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO SUBMITTED A CLAIM WILL RECEIVE PAYMENTS**

The Notice program previously approved by the Court (Dkt. No. 157) has been fully and

successfully implemented by the parties and the Court-approved Claims Administrator, Postlethwaite & Netterville, in accordance with the Court's direction. *See* Declaration of Dustin Mire ("Mire Decl.") attached hereto as Exhibit A. Within 30 days of the judgment becoming final, should the Court grant final approval to the Settlement, payments will be automatically issued to all Class Members who submitted Valid Claims in accordance with the Agreement.

### A. Direct Individual Notice Was Disseminated via E-Mail and, Where Applicable, U.S. Mail

Beginning on May 1, 2019, the Claims Administrator sent Notices via email and, where applicable, U.S. mail to all Class Members in accordance with the Agreement. *Id.* ¶¶ 5-10, 14. Class Member email and mailing addresses were ascertained with records provided by Defendant who, in turn, obtained the aforesaid information online web forms previously submitted by Class Members. *Id.*

The notice program was not just successful, it was extraordinary. Of the 534,852 of email Notices, 49,233 (9.20%) were returned as undeliverable. *Id.* ¶ 7. In accordance with Section 8 of the Settlement Agreement, the Claims Administrator used best efforts to determine the last known address of the Class Members whose Notice emails were undeliverable. *Id.* The Claims Administrator promptly re-mailed (via U.S. Mail) the Notices to the updated addresses for the Class Members. As of June 27, 2019, 532,616 email and postcard Notices were delivered to a valid email and mailing address—meaning 532,616 Class Members (99.58%) received notice of the Settlement.

On May 1, 2019, the Claims Administrator updated the dedicated Settlement website at https://www.awllawsuit.com/. *Id.* ¶ 11. The website provides visitors with a Long Form copy of the Class Notice, as well as answers to commonly asked questions, documents that have been filed with the Court, and information on important dates. *Id.*

The Claims Administrator also established a dedicated toll-free telephone number to field Settlement inquiries by Class Members. Through July 22,2019, the Claims Administrator received a total of 1,132 calls to the toll-free number. *Id.* ¶ 12.

By endeavoring to provide direct, individual Notice to the entire universe of Class Members by e-mail and, where applicable, U.S. mail—eventually reaching 99.58% of Class Members—and supplementing that Notice with a Settlement website and toll-free telephone number, the parties ensured that Notice comported with due process and protected all Class Members' rights. *See e.g., Watson v. Jimmy John's, LLC*, No. 15 C 6010, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016); *Palma v. Metropcs Wireless, Inc.*, No. 8:13-CV-698-T-33MAP, 2014 WL 235478, at *2 (M.D. Fla. Jan. 22, 2014); *Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, 2018 WL 398326, at *2 (S.D. Fla. Jan. 12, 2018); *Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. CV 15-0590-KD-B, 2016 WL 6573981, at *9 (S.D. Ala. Nov. 4, 2016); *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016); *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 2861118, at *4 (N.D. Cal. July 5, 2017); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 941 (N.D. Ill. 2011); *Stuven v. Texas De Brazil (Tampa) Corp.*, No. 8:12–cv–1283–T–24TGW, 2013 WL 610651 (M.D. Fla. Feb. 19, 2013); *Manual for Compl. Lit.* (Fourth) (2004) § 21.312; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) .[5]

## B.    CAFA Notice

On April 15, 2019, the Claims Administrator also sent a total of 57 notifications to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. §

---

[5] Given that the proposed Notice plan is sufficient to satisfy Rule 23(b)(3)'s heightened Notice requirements, this Court should find that the Notice plan easily satisfies the requirements of Rule 23(b)(1)(B), which gives the Court wide latitude in "direct[ing] appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

1715, to all 50 States, as well as all territories and to the U.S. Attorney General. Mire Decl. ¶¶ 15-17.

### C.     <u>Zero Objections, Limited Exclusions and a Reasonable Claims Rate</u>

After Class Notice was disseminated, the Claims Administrator received 21 requests for exclusion (approximately 0.004% of the Settlement Class) by the July 9, 2019 deadline set by the Court. *Id.* ¶ 20. More importantly, no objections to the Settlement or to Class Counsel's request for attorneys' fees, costs, and service awards for Class Representatives have been received by Class Counsel or docketed by the Clerk of Court.

Further, Class Members submitted 7,780 Valid Claims by the Claim Deadline – approximately 1.45% of the Settlement Class. Such a claims rate falls perfectly in line with other consumer class action settlements, including TCPA settlements, in the Seventh Circuit and elsewhere. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA settlement with 2% claims rate); *Davenport v. Discover Financial Services, et al.*, No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) (approving settlement with 3% claims rate); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with approximately 1% claims rate); *Arthur v. SLM Corp.*, No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving 7.26 million-member settlement class when just 55,346 — less than 1% — filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 — approximately 1.1% — filed claims); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

What's more, it is expected these Class Members will receive an award in the range of

approximately $500.00, after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. As discussed further below, such an award is outstanding when compared to other TCPA settlements.

## IV.    FINAL APPROVAL IS WARRANTED

### A.    The Settlement Approval Process

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Indeed, as one Court in District previously observed:

-12-

> [T]he law recognizes class actions as a legitimate part of the U.S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011) (St. Eve, J.)). For these reasons, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility Wireless Data Services Sales Lit'n*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination. Specifically, counsel submit the proposed terms of settlement to the district court, along with

"information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002).

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed.R.Civ.P. 23(e)(1)(B) (2018).

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also Manual for Complex Litigation*, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members.").  As explained below, consideration of these factors supports preliminary approving the Settlement and issuing notice.

The first step in this process—which requires front-loaded scrutiny of the settlement— has occurred.  With this Motion, Plaintiffs respectfully request that the Court take the second and final step in the process by granting final approval of the Settlement.

###### B. The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  When making this determination at the final approval stage, courts in this Circuit consider the following factors:

> (1)  the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2)  the likely complexity, length, and expense of continued litigation;
>
> (3)  the amount of opposition to settlement among affected parties;
>
> (4)  the opinion of competent counsel; and
>
> (5)  the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *accord Holmes v. Roadview, Inc.*, No. 15-CV-4-JDP, 2016 WL 1466582, at *4 (W.D. Wis. Apr. 14, 2016).  In reviewing these factors, courts view the facts "in a light most favorable to the settlement."  *Isby*, 75 F.3d at 1199  In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants

and their counsel." *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (citing *Armstrong*, 616 F.2d at 315).

Application of these factors here confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

### a. Diverse and substantial legal and factual risks weigh in favor of settlement.

While Plaintiffs strongly believe in their claims, Plaintiffs understand that Defendant asserts a number of potentially case-dispositive defenses. Here, AWL maintained several defenses that, if successful, would have eliminated Plaintiffs' claims entirely.

*First*, AWL contended based on a recent decision from the D.C. Circuit in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), that it did not place the calls using an ATDS as that term is defined under the TCPA. Some other courts in TCPA cases, including courts in this district, have agreed with AWL and held based on the specific facts in those cases that the defendant did not use an ATDS. *See e.g., Pinkus v. Sirius XM Radio, Inc.,* 319 F. Supp. 3d 927, 929 (N.D. Ill. 2018) (dismissing class TCPA claims); *Pozo v. Stellar Recovery*

-16-

*Collection Agency, Inc.*, No. 8:15-CV-929-T-AEP, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016). *See also Wright*, 2016 WL 4505169, at *10 (approving TCPA settlement where "Plaintiffs would have faced uncertainty surrounding the definition of an "automatic telephone dialing system" had the case proceeded in litigation").

     *Second*, AWL further contended it obtained Plaintiffs and Class Members' consent to place the calls at issue. *Sullivan*, 2017 WL 2378079, at *4 ("prior express consent under the TCPA 'is an affirmative defense'"). AWL asserted that it is not known what proportion of the calls at issue were actually placed without consent. *See Wright*, 2016 WL 4505169, at *9 ("This consent defense would have posed a serious obstacle to class certification, because the defense would have presented manageability concerns.").

     *Third*, AWL also argued that Plaintiffs would not be able to maintain a certified class. In particular, AWL asserted that the Class is unascertainable, and that individual issues predominate over common questions of law and fact. AWL relies on decisions issued by various district courts to justify its reasoning.

     Plaintiffs dispute every one of these defenses. But Plaintiffs must unfortunately concede that their likelihood of success at trial was far from certain. "In light of the potential difficulties at class certification and on the merits due to the consent and autodialer issues, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

     Moreover, Plaintiffs also faced risks unrelated to the merits of their claims. Specifically, AWL produced to Plaintiffs – which has been submitted to the Court under seal – financial information establishing a limited fund under Rule 23(b)(1) of the Federal Rules of Civil

Procedure. Thus, Plaintiffs faced the very real prospect that any judgment in this Action would not be recoverable.

### b. The monetary terms of this Settlement are extraordinary compared to other TCPA class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise").

Here, the parties agreed to resolve this matter for a settlement fund of $6,500,000, which, the Claims Administrator advises will amount to $500 per class member.[6] This figure compares well with other TCPA class action settlements that courts, including the Northern District of Illinois, have approved. *See, e.g.*, *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566, at *7 (N.D. Ill. Feb. 27, 2015) (approving $93.22 recovery because "a settlement need not provide the plaintiffs a total victory, especially where the plaintiffs have suffered no actual damages and total victory would threaten the defendant's ability to continue on as a viable entity"); *In re Capital*

---

[6] *See* Mire Declaration at ¶ 19.

*One TCPA Litig*., 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ("Capital One") (granting final approval where each class member would be awarded $39.66); *Kolinek*, 311 F.R.D at 493–94 (granting final approval where class members each stood to receive $30); *Estrada v. iYogi, Inc*., No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10–11 (N.D. Cal. Aug. 29, 2014) (finally approving settlement where class members would receive between $20 and $40); *Adams v. AllianceOne Receivables Mgmt., Inc*., No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40 per claimant); *Garret, et al. v. Sharps Compliance, Inc*., No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51 per claimant).  On top of this, the Settlement Agreement includes substantial non-monetary components, including injunctive relief and cooperation to assist Class Counsel with investigating potential violations of the TCPA against Settlement Class Members.  *See supra* at 6-7.  In particular, AWL has agreed to change its business practices and methods of obtaining user consent to ensure that its calling practices comply with the TCPA.  *See id.*

In addition, the parties acknowledge that a complete victory for Plaintiffs and the Class at $500 or $1500 per class member, multiplied by the number of calls they received, would not be possible for Plaintiffs to collect.[7]  AWL has provided Plaintiffs with financial information sufficient to demonstrate that the Settlement Amount is the maximum amount of money it can afford to pay while continuing to pay operating expenses and its obligations to its lender group.  *See* Hutchinson Decl., ¶ 2.  Yet, despite the existence of a limited fund, the Settlement provides

---

[7] As set forth in Exhibit 1 to the Settlement Agreement, the Class comprises more than 500,000 class members.  Assuming only one violation per class member, AWL would owe more than $250 million, and more than $750 million if the jury found AWL's violations knowing or willful.

relief that exceeds TCPA settlements where no limited fund existed.  *See supra* footnote 9.  The

Settlement maximizes relief to Settlement Class Members by including multiple payments over

time rather than a single lump-sum payment.  That AWL will make payments into the Common

Fund over time is consistent with how other courts have dealt with a defendant's financial

inability to make a lump sum payment in a class settlement.  *See, e.g.*, *Abante Rooter &*

*Plumbing, Inc. v. Birch Communications, Inc.*, No. 15-cv-03562, Dkts. 85, 85-1 (N.D. Ga.)

(granting preliminary approval to TCPA class settlement requiring multiple payments over time).

      For these reasons, the parties' settlement falls within a range of reasonableness with

respect to similar TCPA class action settlements.  *See, e.g., Wright*, 2016 WL 4505169, at *8

(approving TCPA class settlement where class members received around $45 and proceeding to

trial could bankrupt the defendant leaving the class with nothing).

      The per-class member relief offered under this Settlement reflects even more favorably

when one considers *Golan v. Veritas Entm't*, LLC, No. 4:14CV00069 ERW, 2017 WL 3923162,

at *4 (E.D. Mo. Sept. 7, 2017) *aff'd sub nom. Golan v. FreeEats.com, Inc.*, No. 17-3156, 2019

WL 3118582 (8th Cir. July 16, 2019), where a district court recently reduced a TCPA jury award

of $500 per call to $10 per call.[8]

      In sum, the Settlement reached in this case requires AWL to pay $6.5 million into a non-

reversionary Settlement Fund.  In addition, the Settlement reached includes substantial non-

monetary components in the form of injunctive relief and cooperation, which will allow Class

Counsel to investigate other potential violations of the TCPA, including against Settlement Class

Members.  Given the significant risks Plaintiffs face in proving their claims on a class-wide

basis, a $500 cash award, which is extraordinarily high compared to other TCPA settlements,

---

[8] AWL's lead counsel represented the defendant in *Golan*.

along with injunctive relief and settlement cooperation, is an excellent result for the Settlement Class.

### 2. There Is No Opposition to the Settlement

None of the 534,852 Class Members objected to the Settlement and only 0.004% of the Settlement Class opted-out. "Such a remarkably low level of opposition supports the Settlement." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 965 (St. Eve, J.) (concluding that "tiny fraction" of opt-outs and objections supports approval).

### 3. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motion practice, including motions for summary judgment, and ultimately a trial on the merits. Further, it is likely to be late-2020 before the case would actually proceed to trial. And, any judgment in favor of Settlement Class Members could be further delayed by the appeal and certiorari petition process, which would likely include a Due Process challenge. What's more, AWL produced to Plaintiffs financial information establishing a limited fund under Rule 23(b)(1) of the Federal Rules of Civil Procedure. Thus, Plaintiffs faced the very real prospect that any judgment in this Action would not be recoverable. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

This factor favors settlement approval.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement. Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases); (2) Class Counsel engaged in extensive discovery, fully briefed the motion for class certification, and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after two in-person mediation sessions before the Hon. Wayne R. Andersen (Ret.) of JAMS in Chicago, a retired United States Magistrate Judge, with many additional weeks of contentious negotiations between the parties. Hutchinson Decl., ¶¶ 5-10. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval"); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval.

The Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case. Counsel's judgment was based upon extensive discovery—including call data and testimony from AWL, along with expert analysis—and Class Counsel's legal analysis was refined through the adversarial process of briefing Plaintiffs' Motion for Class Certification as well as a *Daubert* challenge to one of Plaintiffs' experts. Class Counsel possess the discovery necessary to confirm that the Settlement is fair, reasonable, and adequate. Hutchinson. Decl. ¶¶

3-10; *see also* Doc. 155-1 at 9-12.

Class discovery spanned approximately 12 months and was exhaustive, including the production and review of 9,000 pages of responsive documents, including AWL's call list, (the cell phone numbers, names and email addresses of each person called) and call data (related data and documents from AWL's databases regarding each person on the call list). Discovery also included several depositions (both fact and expert) and the disclosure of two expert reports only after intensive analysis of AWL's computer systems and call data. Discovery was also contentious: over the course of the litigation, at least four discovery motions were filed, including motions to quash, compel production, and exclude expert testimony. *See* Docs. 51, 54, 62, 70. Without a doubt, this Settlement was reached only after the parties tested and refined their positions through contentious discovery, motion practice, and ultimately, a fully briefed motion for class certification.

Settlement negotiations, likewise, were prolonged and hard-fought, spanning many months. They included multiple mediation sessions before the Hon. Wayne R. Andersen (Ret.) of JAMS in Chicago. The settlement was negotiated at arm's length by vigorous advocates, and there has been no fraud or collusion. Doc. 155-1 at 12-13.

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through discovery, briefing, and numerous, contentious arm's-length negotiations. This factor thus supports approval of the Settlement. *See Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

      **6.**     **The Settlement is Reasonable in Light of the Requested Attorneys' Fees.**

When determining whether a proposed settlement is reasonable, the Seventh Circuit has

instructed district courts to "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members."  *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

As Counsel describe in their fee petition (Doc. 162), federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in TCPA class action settlements. *Aranda v. Caribbean Cruise Line*, Inc., No. 12 C 4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14 C 1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc*., No. 11-cv04462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiff to "negotiate[] a fee arrangement based on a percentage of

the recovery." *Capital One*, 80 F. Supp. 3d at 795 (applying percentage-of-the-fund method in TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek*, 311 F.R.D. at 493–94 (using percentage-of-the-fund method in TCPA class action).

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman*, 768 F.3d 622, 630 (7th Cir. 2014)).

Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631. Here, Plaintiffs' counsel have requested an award of 35%. This amount falls squarely in line with other approved TCPA class settlements. *E.g., Kolinek*, 311 F.R.D. at 501 (awarding 36% of net settlement fund in TCPA case); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund in TCPA case).

Plaintiffs' counsel achieved an excellent result for the Class after undertaking substantial risk in prosecuting this action on a pure contingency basis, and they should be fairly compensated.[9] Thus, the Settlement is reasonable in light of this factor.

---

[9] Indeed, Plaintiffs' counsel defeated Defendant's *Daubert* challenge to their expert witness and obtained an Order granting their hotly contested Motion for Class Certification. *See Karpilovsky*, 2018 WL 3108884, at * 1.

### C.      **The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved.**

Incentive awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested incentive awards of $10,000 each for named Plaintiffs John Karpilovsky and Jimmie Criollo, Jr. are reasonable. Plaintiffs worked with Counsel to investigate the case, responded to written discovery requests, were kept abreast of the proceedings, reviewed and approved the proposed settlement, and sat for depositions. Moreover, the amount requested is reasonable, particularly when compared to other awards approved by courts in this District and elsewhere. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-cv01908-TWP-TAB, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

### D.      **The Settlement Class Should be Finally Certified.**

In the Preliminary Approval Order, the Court conditionally approved certification of the Settlement Calss. *See* Doc. 157. For all the reasons set forth in Plaintiffs' preliminary approval briefing (Doc. 155) and the Preliminary Approval Order, the Court should finally certify the Settlement Class.

V.      **CONCLUSION**

The Settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiffs

respectfully request that the Court grant final approval to the Settlement.

Dated: July 25, 2019                    Respectfully submitted,

                                        /s/ *Daniel M. Hutchinson*

                                        LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP
                                        Daniel M. Hutchinson
                                        Email: dhutchinson@lchb.com
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111-3339
                                        Telephone:  (415) 956-1000
                                        Facsimile:   (415) 956-1008

                                        LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP
                                        Jonathan D. Selbin
                                        Email: jselbin@lchb.com
                                        250 Hudson Street, 8th Floor
                                        New York, NY  10013
                                        Telephone:  (212) 355-9500
                                        Facsimile:  (212) 355-9592

                                        KOZONIS & KLINGER, LTD.
                                        Gary M. Klinger
                                        4849 N. Milwaukee Ave., Ste. 300
                                        Chicago, Illinois 60630
                                        Phone: 312.283.3814
                                        Fax: 773.496.8617
                                        gklinger@kozonislaw.com

                                        *Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2019, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all Counsel of record.


By:  /s/ *Gary M. Klinger*
       Gary M. Klinger